IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GINA CRISCIONE**, *et al.*,<br>　　　　　　*Plaintiffs,*<br>v.<br>**LAURA DIVINCENZO**, *et al.*,<br>　　　　　　*Defendants.* | Case No.: 1:24-cv-01446-PAB<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge James E. Grimes Jr. |
| **GINA CRISCIONE AND ESTATE OF DOROTHY MANDANICI'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** ||

　　　　Plaintiffs Gina Criscione and Estate of Dorothy Mandanici respectfully oppose Defendants' motions to dismiss.

**SUMMARY OF ARGUMENT**

　　　　As Defendants note, this case arises out of Ms. Mandanici's stay at the East Park Care Center, where she was supposed to be treated for dementia but was instead neglected until her health spiraled out of control, leading to her untimely death.[1] When Ms. Criscione complained about East Park to her friends on Facebook, its managers conspired with the City of Brook Park to have her imprisoned, criminally charging her with telecommunications harassment and menacing for "posting multiple negative messages to a website in regards to the Administrator of the East Park Nursing Home Care Center."[2] Recognizing such activities as protected by the First Amendment, the Berea Municipal Court noted that the allegations in the criminal complaints against her "fail to establish probable cause" and dismissed the entire case.[3]

---

[1] Complaint, ¶¶ 33–55.
[2] ECF #1-1.
[3] ECF #1-3.

Ms. Criscione now brings civil claims against East Park and Brook Park to recover the tens of thousands of dollars she was forced to spend defending herself from those criminal charges. Although the procedural history is admittedly more complex than any of the parties would have cared for—the Cuyahoga County Court of Common Pleas has twice dismissed the entire case without prejudice on strictly procedural grounds—the issues presented here at the Rule 12 stage are relatively straightforward.

As laid out below, Ms. Criscione's claims against all Defendants remain viable despite the passage of time since the underlying events. The East Park Defendants rely primarily on Ohio Rev. Code § 2305.113's one-year statute of limitations for "medical claims," but that statute has no effect here, where the vast majority of the allegations involve conduct that falls outside that term's definition. Meanwhile, the Brook Park Defendants argue that the claims against them are precluded by *res judicata*, but that doctrine has no effect here, where the interlocutory order granting judgment in their favor was subsequently wiped out by a final judgment dismissing the entire case without prejudice.

## LAW & ARGUMENT

I. **Because *Clawson*'s bar on vicarious liability has no application to this case, the Court should not dismiss Claims 1 or 2.**

Ohio generally adheres to the standard rule of respondeat superior, permitting an injured person to recover against either a principal or her agent. "For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against either the master or the servant, or against both." *Losito v. Kruse*, 136 Ohio St. 183, 187 (1940).

As East Park notes, Ohio courts have narrowed this rule in the context of professional-malpractice claims. For instance, because it cannot practice law itself, a law firm cannot be directly liable for legal malpractice; instead it "may be vicariously liable for legal malpractice

only when one or more of its principals or associates are liable for legal malpractice." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St. 3d 594, ¶ 26 (2009). That rule "applies equally to claims of vicarious liability for medical malpractice." *Clawson v. Heights Chiropractic Physicians, L.L.C.*, 170 Ohio St. 3d 451, 461 (2022).

To the best of Plaintiff's knowledge, however, that rule has never been extended any further, and Ohio's courts of appeals are generally in agreement that this rule has no application to claims other than professional malpractice, even if the plaintiff raises "medical claims" under Ohio Rev. Code § 2305.113.

The Eighth District addressed this question just four months ago in *Orac v. Montefiore Found.*, ___ N.E. 3d. ___ (8th Dist. 2024), where the estate of a nursing-home patient sued the home—but none of its employees—for negligence and violations of the Nursing Home Bill of Rights, based on allegations that it failed to treat pressure ulcers, leading to sepsis and then death. After the statute of limitations on claims against the employees expired, the trial court granted summary judgment for the home, holding that *Clawson* precluded any liability against the home itself. But the Eighth District reversed, holding that (a) given its rationale, *Clawson* could not be contorted to upend longstanding precedents like *Losito*, which would be the necessary result of a holding that employers generally cannot be held liable in the absence of a judgment against their employees; and (b) even if there were no respondeat superior liability, summary judgment was inappropriate because the facts might still demonstrate that the nursing home was *directly* liable.

The facts here are no different. Like in *Orac*, Ms. Criscione has brought claims that East Park—among other acts of neglect—failed to treat her mother's pressure ulcers,[4] that its neglect

---

[4] Complaint, ¶ 28(d).

led to her mother's early death,[5] and that it violated her mother's rights under the Nursing Home Bill of Rights.

Despite these parallels to *Orac*, East Park is attempting to resurrect the same arguments that the Eighth District expressly rejected in that case, arguing that under *Wuerth* and *Clawson*, Ms. Criscione's decision not to pursue any individual nurses means "there is no agent for liability to 'flow through' to hold these Defendants vicariously liable for the alleged medical claims."[6] But that is exactly the opposite of the actual rule:

> "*Wuerth* and *Clawson* do not preclude appellant's suit against [a nursing home] for the negligence of its nonphysician employees. There being no dispute that appellant's complaint was timely filed against [the nursing home] within the statute of limitations period applicable to their employees or agents, a suit against [the nursing home] under a theory of respondeat superior may proceed."

*Orac*, ¶ 42.

Applying *Orac* to this case would likewise be consistent with the federal courts' application of *Wuerth*. *See, e.g.*, *Scott Elliot Smith, LPA v. Travelers Cas. Ins. Co. of Am.*, No. 2:12-CV-00065, 2012 WL 1758398, at *4 (S.D. Ohio May 16, 2012), ("Ohio courts, as well as this Court, have interpreted *Wuerth* narrowly and rejected contentions that, outside of the malpractice setting, agents or employees must be named as defendants for claims of vicarious liability to succeed.").

Because Ms. Criscione's claims—even if they are "medical claims"—are not claims for "medical malpractice," *Wuerth* and *Clawson* have no bearing on her eligibility for relief; she remains free to rely on standard agency-law principals that permit her to pursue the master, the servant or both. Likewise, because the Nursing Home Bill of Rights establishes *direct liability*

---

[5] Complaint, ¶ 93–98.
[6] East Park Mot. to Dismiss, 7.

Page 4 of 13

for nursing homes, she has an alternative route to relief even if *Clawson* did apply here. The Court should therefore deny the motion to dismiss Claims 1 and 2.

**II.     Because Claims 1, 3, and 4 rely on allegations outside the definition of a "medical claim," they are not governed by Ohio Rev. Code § 2305.113's one-year statute of limitations.**

In general, "medical claims," as defined under Ohio Rev. Code § 2305.113 must be filed within one year of accrual. While that statute defines the term broadly, "not all care that occurs in a medical facility constitutes 'medical care' within the meaning of R.C. 2305.113(E)(3)." *Lerner v. Broadview NH, LLC*, 2017-Ohio-8001, ¶ 14 (10th Dist).

"To differentiate between medical care and general care, courts look to whether the act or omission at issue was part of a medical test, procedure, or treatment; whether a medical professional had ordered the provision of the care that was being given (or withheld) at the time of the injury; and whether the care provided (or withheld) required any medical expertise or professional skill." *Id.*

For instance, in *Lerner*, the estate of a nursing-home patient brought negligence claims against the home arising out of the patient's death. The trial court dismissed the entire action, holding that because it was filed more than a year after the patient's death, it was untimely under Section 2305.113. But the Tenth District reversed, holding that while allegations that the home had improperly deployed a medical device, treated bedsores, and administered prescriptions clearly formed the basis of a medical claim, there were others—such as allegations about basic hygiene, sanitary conditions, frequency of visits, and communication with family members—that could not be classified as medical at the pleading stage:

> [T]he amended complaint includes theories of recovery that the trial court did not consider in determining that Lerner asserted only medical claims. … When considering these theories, we are obliged to construe the allegations in the amended complaint in Lerner's favor. … Doing that, we conclude that the

amended complaint does not contain sufficient factual detail to characterize the claims arising from those allegations as medical claims.

*Lerner*, ¶ 19.

East Park argues that Ms. Criscione's survivorship claim, breach-of-contract claim, and Nursing Home Bill of Rights claim must be dismissed because they are all "medical claims" originally filed outside the one-year statute of limitations. But all of these claims rely on numerous allegations of negligence that do not necessarily touch on medical care. *Lerner*, ¶ 19. Claim 1, for instance, relies on facts just like those in *Lerner*, referring back to allegations that:

- East Park failed to provide Ms. Mandanici with adequate personal care and treatment, outfitting her room with an air conditioner that blew mold onto her bed; leaving her sitting in puddles of urine, failing to dry her after showers, and failing to provide her water.[7]
- East Park failed to provide clean sheets and sanitary living conditions, leaving fecal matter on sheets, toilet lids, and other surfaces.[8]
- East Park did not adequately address concerns raised by Ms. Mandanici's family about her care.[9]
- East Park failed to provide appropriate information to Ms. Mandanici's family, refusing to put through calls from her daughter and likewise instructing staff not to take her daughter's calls.[10]

Claim 3 for breach of contract does the same, relying on both those allegations and other facts showing that East Park breached its contract with Ms. Mandanici with respect to terms that fall outside the definition of a medical claim, such as the "failure to provide adequate assistance with her activities of daily living" and the "failure to provide adequate assistance with her social

---

[7] Complaint, ¶ 28.
[8] Complaint, ¶ 28.
[9] Complaint, ¶ 81.
[10] Complaint, ¶¶ 36–40.

needs."[11] And it goes further, incorporating by reference other allegations that have nothing to do with her medical care, such as its failure to produce copies of her medical records,[12] its interference with her communications with her daughter,[13] and its theft of her property.[14]

And Claim 4 does the same, explicitly invoking the violation of non-medical rights, such as Ms. Mandanici's rights to "a safe and clean living environment, unrestricted communications with family, and unrestricted access to property."[15] Beyond those explicitly mentioned rights, East Park also violated several others, such as "the right to be treated at all times with courtesy, respect, and full recognition of dignity and individuality," "the right to have all reasonable requests and inquiries responded to promptly," "the right to have clothes and bed sheets changed as the need arises," "the right to communicate with the physician and employees of the home," "the right to be free from physical or chemical restraints," "the right to educational, vocational, social, recreational, and habilitation programs," "the right to private and unrestricted communications with the resident's family," "the right to a telephone for private communications,"  and the right to "private visits at any reasonable hour." Ohio Rev. Code § 3721.13.

Because they all rely on allegations of negligence or intentional misconduct that fall outside the definition of a "medical claim," Claims 1, 3, and 4 are not governed by Ohio Rev. Code § 2305.113's one-year statute of limitations and were timely filed.

---

[11] Complaint, ¶ 104.
[12] Complaint, ¶ 42.
[13] Complaint, ¶¶ 36–40.
[14] Complaint, ¶ 145.
[15] Complaint, ¶ 108.

**III.   Because the criminal charges against Ms. Criscione were dismissed without prejudice, Claim 10 for malicious prosecution did not accrue until the criminal statute of limitations barred the City from refiling them.**

To prevent "collateral attacks on criminal judgments through civil litigation," civil claims for malicious prosecution do not accrue until the defendant has secured a "favorable termination of his prosecution." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019).

For instance, in *Mann v. Genoa Twp.*, 2002-Ohio-727 (5th Dist.), a woman charged with theft in office secured a dismissal without prejudice and promptly filed a malicious prosecution complaint against public employees who had participated in the investigation and prosecution. The trial court dismissed the malicious-prosecution claim, and the Fifth District affirmed, holding that because the charges were dismissed *without prejudice*, her claim had not even accrued yet: "[T]he criminal prosecution was dismissed without prejudice and subject to representation to the grand jury. We find there has been no 'termination of the prosecution in favor of the accused' which indicates the accused is innocent." *Mann at *10*.

Here, the trial court likewise dismissed the charges against Ms. Criscione *without prejudice* in March 2021,[16] and the City of Brook Park continued to hold open the possibility of refiling.[17] Ms. Criscione did not secure a favorable termination of those charges and could not have filed a malicious-prosecution claim until October 15, 2022, when the statute of limitations expired on those misdemeanor charges. Ohio Rev. Code § 2901.13(A)(1)(b). Consistent with *Mann,* Ms. Criscione's malicious prosecution claim therefore accrued on October 15, 2022, and her complaint was filed on March 10, 2023—less than five months later.

---

[16] Complaint, ¶ 79.
[17] Complaint, ¶ 80.

Claim 10 was therefore timely filed and the Court may not dismiss Claim 5 for failing to satisfy the statute of limitations.

IV. **Because Ohio Rev. Code § 2307.60 allows a private cause of action for damages from criminal acts, the Court should not dismiss Claim 10 for interference with civil rights.**

The East Park Defendants ask for dismissal of Claim 10 because "[t]here is no private cause of action for interference with civil rights." This argument is false, frivolous, and a violation of Ohio Prof. Cond. R. 3.3:

- **False** because Ohio Rev. Code § 2307.60 expressly creates a civil cause of actions for damages from criminal acts.
- **Frivolous** because the Ohio Supreme Court endorsed the application of this statute to claims for interference with civil rights in *Buddenberg v. Weisdack*, 161 Ohio St. 3d 160 (2020).
- **A violation of Rule 3.3** because East Park failed to disclose these directly adverse authorities to the Court despite having known about them at least since May 18, 2023, when Ms. Criscione relied on them to oppose its motion making the exact same argument in state court.

Because Ohio Rev. Code § 2307.60 provides the private cause of action whose existence East Park falsely denies, the Court should not dismiss Claim 10.

V. **Because Ms. Criscione's claims were subsequently dismissed *without prejudice*, the interlocutory dismissal with prejudice has no preclusive effect.**

The Brook Park Defendants argue for dismissal of all claims against them on the grounds that they are barred by *res judicata*. Their main argument relies on many factual assertions and legal propositions that Ms. Criscione is not disputing for purposes of this motion. Her opposition to Brook Park's motion centers almost entirely on the final paragraph of its argument, which relies on *Denham v. New Carlisle*, 86 Ohio St. 3d 594 (1999) to argue that that there was a final judgment on the claims against the Brook Park Defendants.

In *Denham*, a woman brought a wrongful-death action alleging that city paramedics provided inadequate emergency care to her husband. After the trial court dismissed claims against the city on immunity grounds, the plaintiff voluntarily dismissed her claims against "the remaining defendants" and appealed the immunity decision. The Second District dismissed the appeal, holding that it lacked jurisdiction because the immunity decision was an interlocutory order, but the Ohio Supreme Court reversed, holding that "a trial court's decision granting summary judgment based on immunity for one of several defendants in a civil action becomes a final appealable order when the plaintiff voluntarily dismisses the remaining parties to the suit pursuant to Civ.R. 41(A)(1)":

> Because we hold that a voluntary dismissal pursuant to Civ.R. 41(A) renders the parties as if no suit had ever been filed against only the dismissed parties, the trial court's summary judgment decision meets the requirements of Civ.R. 54(B). Therefore, the trial court's summary judgment decision is a final appealable order.

Based on this holding, Brook Park argues that the interlocutory dismissal with prejudice of the claims against it in state court was actually a final judgment because afterward, "a voluntary dismissal makes any prior interlocutory decision a final appealable Order that should be appealed if the losing party had an issue with the same."[18] While that quote is a fair enough description of *Denham*'s holding, it has little application here, where all the key facts are different:

1. First, the trial court's interlocutory decision dismissing the City with prejudice was not based on political-subdivision immunity from suit, an issue whose resolution Ohio courts expedite because the "manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions." *Hubbell v. City of Xenia*, 115 Ohio St. 3d 77, 81 (2007).

2. Second, the state-court case did not come to an end with a "voluntary dismissal" under Rule 41(A)(1); it ended with an *involuntary* dismissal under Rule 41(B). To the

---

[18] Brook Park Mot. to Dismiss, 12–13.

    best of Plaintiffs' knowledge, no Ohio court has held that involuntary dismissals without prejudice trigger the same finality effects described in *Denham*.

3. Third, the involuntary dismissal under Rule 41(B) was not a dismissal of "the remaining parties," as it was in *Denham*. Although the City characterizes it as a dismissal of "the remainder of that lawsuit,"[19] it was in fact a dismissal of the entire "case" that rendered "all motions … moot."

This final distinction is the most important, because it places this case in line with cases rejecting the supposed finality effects that Brook Park is attempting to hide behind. For instance, in *Myers v. State Farm Ins.*, 2003-Ohio-174 (8th Dist.), the plaintiff sued her driver and several insurance companies for injuries she sustained in a motor-vehicle accident. On cross-motions for summary judgment, the trial court granted judgment for one insurer, and months later it dismissed the entire case. The driver appealed the summary-judgment decisions, but the Eighth District dismissed the appeal, holding that "the court's order of dismissal superseded the partial summary judgment":

> The court did not determine that there was no just reason for delay in entering final judgment for Nationwide, so the orders were "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Civ.R. 54(B). In fact, the court here did revise the judgment when it dismissed the "case" "as to all parties" with prejudice. The only reasonable construction of this language is that the court dismissed all claims against all parties, including those parties as to whom interlocutory judgments had been entered. For this reason, this case is not analogous to *Denham*.

*Myers*, ¶¶ 11–12.[20]

---

[19] Brook Park Mot. to Dismiss, 5.

[20] *See also*, *Toledo Heart Surgeons v. The Toledo Hosp.*, 2002-Ohio-3577, ¶ 35 ("We hold that an order which grants a motion for summary judgment or a dismissal for failure to state a claim upon which relief can be granted to a party while claims against other parties are still pending, and which does not contain Civ.R. 54(B) language that there is no just reason for delay, is not appealable when the entire action is later dismissed without prejudice pursuant to Civ.R. 41(A). Rather, such order is dissolved and has no res judicata effect."); *Fairchilds v. Miami Valley Hosp., Inc.*, 160 Ohio App. 3d 363, 375 (6th Dist. 2005); *Gruenspan v. Thompson*, No. 77276, 2000 WL 1514357, at *2 (8th Dist. Oct. 12, 2000).

The facts here are therefore more closely analogous to *Myers*, as neither involves an interlocutory decision on immunity grounds, neither involves a subsequent Rule 41(A)(1) dismissal, and both involve final orders disposing of the entire "case" rather than "the remaining parties." Brook Park may try to distinguish itself by noting that *Myers* involved a final involuntary dismissal *with prejudice*, but that does nothing to change the Eighth District's holding that the final order wiped out the earlier partial judgment by dismissing the "case," just as the state court did here.

Or Brook Park may note that the state court's final order said it was dismissing the "case" without prejudice, but not "as to all parties," as was the case in *Myers*. While that is correct, it only begs the question of what the state court meant when it said it was dismissing the entire "case." The answer is that unless the journal entry specifies that a dismissal applies only to specific claims or parties, it applies to the entire action. *Hutchinson v. Beazer E., Inc.*, 2006-Ohio-6761, ¶ 29 (8th Dist.).

Because the state-court judgment therefore has no preclusive effects, Ms. Criscione and Brook Park are left in the classic position following a dismissal without prejudice, "as if no action had been brought at all" and giving her "the right to state a new case, if [she] can." *De Ville Photography, Inc. v. Bowers*, 169 Ohio St. 267, 272 (1959). The court should therefore deny Brook Park's motion to dismiss.

## CONCLUSION

Because Ms. Criscione originally filed all her claims timely and because no one has obtained a final judgment precluding further litigation of those claims, the Court should deny both motions to dismiss.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

## CERTIFICATE OF SERVICE

I certify that on February 21, 2025, this document was served on opposing counsel as provided by Fed. R. Civ. P. 5(b)(1).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*