**Motion No.** <u>5086076</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION TO DISMISS**
**April 26, 2023 13:59**

By: MICHAEL L. MORGAN 0087565

Confirmation Nbr. 2840826

GINA CRISCIONE, ET AL.                     CV 23 976445

        vs.

LAURA DIVINCENZO, ET AL.          **Judge:** NANCY MARGARET RUSSO

**Pages Filed:** 33

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| GINA CRISCIONE AND ESTATE OF DOROTHY MANDANICI, | ) ) ) | CASE NO.: 23CV976445 |
| | ) | JUDGE:  Nancy Margaret Russo |
| Plaintiffs. | ) ) | |
| v. | ) ) | **Defendants' Motion to Dismiss** |
| LAURA DIVINCENZO; SARA THURMER; EAST PARK CARE CENTER; CITY OF BROOK PARK; GEORGE SAKELLAKIS; HAROLD DUNCAN; RYAN WALSH; THOMAS SENSEL, | ) ) ) ) ) | |
| Defendants. | | |

## DEFENDANTS' MOTION TO DISMISS UNDER CIVIL RULE 12

COME NOW Defendants City of Brook Park, Sakellakis, Duncan, Walsh and Sensel (hereinafter the "Brook Park defendants") and move this Honorable Court for relief under Civil Rule 12(B)(6) and respectfully show the Court as follows:

## ARGUMENT AND CITATION OF AUTHORITY

"A motion to dismiss for failure to state a claim upon which relief can be granted * * * tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). A motion made pursuant to Civ.R. 12(B)(6) determines whether the pleader's allegations set forth an actionable claim. *Pyle v. Ledex, Inc.*, 49 Ohio App.3d 139, 143 (12th Dist.1988). "In order for a Complaint to be dismissed under Civ.R. 12(B)(6) * * * it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him

to relief." *Cincinnati v. Berretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 5. In construing a Complaint upon a motion to dismiss for failure to state a claim, a Court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).

A party may assert a statute of limitations defense through a Civ.R. 12(B)(6) motion to dismiss if the defense is apparent from the body of the Complaint. *Charles v. Conrad*, 2005-Ohio-6106, ¶24; *Stuller v. Price*, 2003-Ohio-583, ¶27. Here, there are statute of limitations defenses apparent on the face of Plaintiffs' Complaint.

As against these Defendants, the Amended Complaint alleges multiple causes of action based upon a police investigation in September and October 2020 with a written citation of criminal charges provided to Plaintiff Criscione on October 15, 2020 and with criminal charges dismissed on March 11, 2021.

Plaintiffs filed their initial Complaint in this lawsuit on March 10, 2023. This is a refiling of a previous Complaint against the other defendants (collectively the "East Park defendants") – CV-22-964883. The Brook Park defendants were not parties to that prior litigation. After this filing, these Defendants filed a Motion for More Definite Statement that was granted by this Court. Plaintiff then filed an Amended Complaint. This Motion to Dismiss is directed at the "Claims" (Counts) of the Amended Complaint.

It is undisputed that City of Brook Park is a political subdivision within the definition of R.C. 2744.01(F) and this is even alleged by Plaintiffs in Paragraph 9 of the Amended Complaint. Defendants Sakellakis, Duncan, Walsh and Sensel are police officers with the Brook Park Police Department (as alleged in Paragraph 10 of the Amended Complaint). For the purposes of this motion, in some places the city and officers are collectively referred to as the "Brook Park

defendants". No factual allegations regarding the Brook Park defendants are made in the

Amended Complaint until Paragraph 63 and after the death of Ms. Mandanici.

## The Court Should Dismiss State Law Intentional Tort Claims Against Defendant City of Brook Park

Plaintiffs assert state law tort claims against Defendant City of Brook Park for malicious

prosecution (Claim 4 made against all defendants), abuse of process (Claim 5 made against all

defendants), and intentional infliction of emotional distress (Claim 12 made against all

defendants).

{¶ 19}There is a three-tiered analysis to determine whether a political subdivision is immune from liability under R.C. 2744.02.'" *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.,* 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 8, quoting *Cater v. Cleveland,* 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998).

{¶ 20} R.C. 2744.02(A)(1) divides the functions of a political subdivision into two types, governmental functions and proprietary functions. Under the first tier, if a defendant is determined to be a political subdivision, it is immune from liability for its governmental and proprietary functions "in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision * * *." R.C. 2744.02(A)(1).

{¶ 21} Under the second tier, the immunity conferred under R.C. 2744.02(A)(1) '"is not absolute, but is * * * subject to the five exceptions to immunity listed in * * * RC. 2744.02(B)."' *Hortman v. Miamisburg,* 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 12, quoting *Cater* at 28.

{¶ 22} The third tier of political subdivision immunity analysis comes into operation if it is determined that one of the exceptions to immunity under R.C. 2744.02(B)(1) through (5) applies. Under the third-tier, immunity can be reinstated if the political subdivision can demonstrate that one of the defenses under R.C. 2744.03 applies. *Id.*

*Garmback v. City of Cleveland*, 2022-Ohio-1490 (Eighth District, 2022)

Political subdivisions in Ohio are immune under O.R.C. 2744.02 from liability for

intentional tort claims which include malicious prosecution and intentional infliction of emotional

distress. *McGee v. Goodyear Atomic Corp.,* 103 Ohio App.3d 236, 249, 659 N.E.2d 317 (1995);

*Wilson v. Stark County Department of Human Services,* 70 Ohio St.3d 450, 452, 639 N.E.2d 105

(1994); *Price v. Austintown Local School Dist. Bd.*, 897 N.E.2d 700, 178 Ohio App.3d 256, 2008 Ohio 4514 (Ohio App. 2008).  Abuse of process, malicious prosecution, defamation, and false imprisonment do not fall within any one of the five exceptions to statutory immunity listed in O.R.C. 2744.02(B).  *Armbruster v. W. Unity Police Dept.*, 127 Ohio App.3d 478, 713 N.E.2d 436 (6th Dist. 1998)

The Court in the *Price* case wrote:

The board contends that appellee's claims of defamation and malicious prosecution are intentional torts and are not based on principles of negligence. The board submits that since neither cause of action involves proof of mere negligence, none of the remaining exceptions in R.C. 2744.02(B) can apply.

The board is correct that political subdivisions are immune from liability from intentional-tort claims. *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105. The tort of malicious prosecution is an intentional tort, given that malice is one of the elements of the tort: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus. Since there is no exception to governmental immunity for intentional torts in R.C. 2744.02(B), it is apparent from the pleadings that the board is immune from prosecution for malicious prosecution.

*Kevin Williams vs. City of Cleveland*, et al., United States District Court Northern District of Ohio Eastern Division, Case No. 1:09 CV 1310, also held that sovereign immunity applies to a malicious prosecution claim.

Further, the statute of limitations in Ohio for a state-based claim of malicious prosecution is one year which runs from the date the criminal charges were dismissed.  O.R.C. 2305.11. Malicious prosecution claims accrue when the criminal proceedings terminate in favor of the accused. *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 290-291, 871 N.E.2d 1159, 1163-64 (Ohio 2007).  Plaintiffs' Amended Complaint alleges the criminal charges against Plaintiff Criscione were dismissed on March 11, 2021.   The claim for this tort must have been brought by March 11, 2022 but was not brought until this filing on March 10, 2023.  The malicious prosecution claim is barred by the applicable statute of limitations.

Further, while the Complaint alleges in Paragraphs 89 and 91 that there is liability as Director Carol Horvath and Assistant Law Director and Prosecutor Peter Sackett may have directed police officers and Horvath ratified Sackett's prosecution of Plaintiff Criscione, neither Horvath or Sackett were sued in this Amended Complaint and, as to any state-law liability of City of Brook Park, both would have immunity pursuant to O.R.C. 2744.03 (A)(7) which reinstates any immunity for, "The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code."

Therefore, due to immunity and statute of limitations grounds, these three claims (4, 5 and 12) should be dismissed as against Defendant City of Brook Park.

### The Court Should Dismiss State Law Claims Against the Defendant Officers

Employees of a political subdivision, such as the four police officers sued, are immune from liability under R.C. 2744.03(6). An employee is immune ("official immunity") unless the alleged acts of omissions were manifestly outside the scope of employment or the employee's official responsibilities or were made with malicious purpose, in bad faith, or in a wanton or reckless manner. *Cramer v. Auglaize Acres*, 2007-Ohio-1946, at par. 17. A police officer cannot be held liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established. *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1st District 1985). There is no factual allegation in the Amended Complaint that the four officers acted manifestly outside the scope of employment or the employee's official responsibilities. On the face of the Complaint, the basis of Plaintiff Crisciones's claims for malicious prosecution, abuse of process and intentional infliction of emotional distress are that

she was investigated, issued a citation and the criminal charges were terminated in her favor.

Even assuming that is true, the mere fact that a criminal charge was later dismissed by a trial

court does not make an arrest unlawful, nor is it enough to transfer a police officer's conduct into

action which was malicious, wanton, reckless, or in bad faith.  *Cook,* at 91.  And if the officers

were simply negligent in their duties, that does not remove immunity for liability.  *Cook,* at 91.

When a plaintiff fails to sufficiently allege malicious or wanton conduct by a defendant police

officer the claim should be dismissed as a matter of law. *Fabrey v. McDonald Village Police

Dept.*, 70 Ohio St.3d 351, 356-57, 1994-Ohio-368.  Further, the facts paragraphs of Plaintiffs'

Amended Complaint even allege the conduct of the Brook Park defendants was due to

information provided to Brook Park – even alleging that some of the information provided was

false. (Paragraphs 64, 66, 68, 69, 70, 71, 72, 130 and 133).

By definition, the immunity statute does not remove immunity for employees of political

subdivisions for intentional tort claims such as malicious prosecution, abuse of process and

intentional infliction of emotional distress.  As shown in the citations above as to the City,  these

are intentional torts.  Claims of this sort are not proper as there is immunity and the only cause of

action even close that would set forth an arguable case for an exception to immunity would be an

allegation of a negligence-based tort with an added heightened conduct allegation referenced in

the immunity statute.  *David v. Matter*, 2017-Ohio-7351 (6th District), at par. 17. Plaintiffs'

Amended Complaint (in facts provided in paragraphs 1-91 and these Claims 4, 5 and 12) does

not allege the officers acted negligently and with malicious purpose, in bad faith, or in a wanton

or reckless manner.  Negligence is never pled.  Plaintiffs have not alleged in the Amended

Complaint viable state law causes of action against the police officers due to an exception to

immunity.

There are no facts in the Amended Complaint that the actions of one officer ratified the conduct or actions of another.  In a case out of Summit County, the Ninth District held, "As for his ratification claim, Piro has provided no authority supporting his argument that an employee's political subdivision immunity may be abrogated by ratification of a subordinate employee's acts. The trial court did not err in finding that Fuchs was protected by political subdivision immunity." *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 656 N.E.2d 1035 (9th Dist. 1995).

Further, "[a] trial court may dismiss a claim for intentional infliction of emotional distress, pursuant to Civ.R. 12(B)(6), where the alleged conduct does not, as a matter of law, reach the level of 'extreme and outrageous' conduct." *Morrow v. Reminger & Reminger Co., LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶48 (10th Dist. Franklin). "Parties cannot generally be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform." *Id.* at 49. Even if the Court gives deference to and all inferences to Plaintiffs, they have not alleged any conduct as to the Defendant officers that could reasonably be construed as 'extreme and outrageous."  These Defendant officers performed acts that they, as police officers, are legally entitled to perform – conducting an investigation and charging a citizen with crimes.

Therefore, the state law tort claims (4, 5 and 12) against these four individual officers should be dismissed.

### Claim 6 should be Dismissed Against the Brook Park Defendants

In Claim 6, Plaintiffs have sued the Brook Park defendants for "whistleblower retaliation" under O.R.C. 3721.24.  On its face, the facts of the Amended Complaint do not allege any involvement of the Brook Park defendants until after Ms. Mandanici was transferred from East Park and after Ms. Mandanici had died.  That subject statute reads:

(B)(1) No person or government entity shall retaliate against a resident who reports or causes to be reported suspected abuse, neglect, exploitation, or misappropriation; indicates an intention to make such a report; provides information during an investigation of alleged abuse, neglect, exploitation, or misappropriation conducted by the director; or participates in a hearing under section 3721.23 of the Revised Code or in any other administrative or judicial proceeding pertaining to the suspected abuse, neglect, exploitation, or misappropriation; or on whose behalf any other person or government entity takes any of those actions.

(2) No person or government entity shall retaliate against a resident whose family member, guardian, sponsor, or personal representative reports or causes to be reported suspected abuse, neglect, exploitation, or misappropriation; indicates an intention to make such a report; provides information during an investigation of alleged abuse, neglect, exploitation, or misappropriation conducted by the director; or participates in a hearing under section 3721.23 of the Revised Code or in any other administrative or judicial proceeding pertaining to the suspected abuse, neglect, exploitation, or misappropriation; or on whose behalf any other person or government entity takes any of those actions.

The statute is clear that the actor must retaliate against the resident – in this case, Ms. Mandanici.  As the Brook Park defendants were not involved until after Ms. Mandanici left the facility and had died, they could not have retaliated against Ms. Mandanici.  Paragraph 52 of the Amended Complaint alleges that East Park initiated eviction proceedings.  For this reason alone, Claim 6 should be dismissed as against the Brook Park defendants.  Further, even if this statute was violated by the Brook Park defendants, none of the five exceptions in O.R.C. 2744.02 to political subdivision immunity apply.  The closest exception that might apply is:

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

However, the statute cited by Plaintiff does not impose civil liability upon a political subdivision and does not even arise to those standards where "Civil liability shall not be construed to exist…"  And there is no allegation of any individual officer's actions in this regard

and no allegations to set aside official immunity that the officers acted with malicious purpose, in bad faith, or in a wanton or reckless manner related to "whistle blower" liability due to retaliation against Ms. Mandanici while a resident at East Park.  Therefore, Claim 6 should be dismissed as to the Brook Park defendants.

## Claim 7 Should be Dismissed Against the Brook Park Defendants

This statute deals with retaliation by a nursing home against a resident for installing and using an electronic monitoring device.  The facts allege that this was an activity that took place while Ms. Mandanici was at East Park and before the Brook Park defendants were even involved.  The facts due not support the claim against these defendants.  Again, even if this statute was violated by the Brook Park defendants, none of the five exceptions in O.R.C. 2744.02 to political subdivision immunity apply.  The closest exception that might apply is the one referenced above at to Claim 6.

However, the statute cited by Plaintiff does not impose civil liability upon a political subdivision and does not even arise to those standards where "Civil liability shall not be construed to exist…"  And there is no allegation of any individual officer's actions in this regard and no allegations to set aside official immunity that the officers acted with malicious purpose, in bad faith, or in a wanton or reckless manner relative to retaliation for use of an electronic monitoring devise in a nursing home.  Therefore, Claim 7 should be dismissed as to the Brook Park defendants.

## Claims 8 and 9 Should be Dismissed as to the Brook Park Defendants

On their face, these Claims do not read as even asserting causes of action against the Brook Park defendants despite Plaintiffs claiming that they do.  These are just verbatim restatement of claims from the Complaint filed in CV-22-964883 against only the East Park defendants.

As to Claim 8, it alleges that, "Defendants knowingly made false statements <u>to public officials at….the City of Brook Park</u> during an official proceeding with purpose to mislead them in performing their official functions". (emphasis added)  It is incoherent that Brook Park made false statements to Brook Park to mislead Brook Park in performing Brook Parks' official functions.  None of the facts in the Amended Complaint even allege that.

As to Claim 9, it alleges that, "Defendants knowingly used a materially false or fraudulent writing with malice, bad faith, wantonness or recklessness in an attempt <u>to influence the public servants at….the City of Brook Park in the discharge of its duties</u>."  (emphasis added)  Again, it is incoherent that Brook Park knowingly used a materially false or fraudulent writing in an attempt to influence the public servants at Brook Park in the discharge of Brook Park's duties.  None of the facts in the Complaint even allege that.  The facts allege the East Park defendants did these things.  For the purposes of this motion, the Court must only look at the Amended Complaint as written and not what Plaintiffs might attempt to explain what they meant in response to this motion.   For these reasons, the claims should be dismissed.  However, again, if the Brook Park defendants did these things knowingly then the acts were intentional, and the Brook Park defendants have immunity for these intentional acts per the law cited above.   And again, even if the two referenced statutes (O.R.C. 2921.13 and O.R.C. 2921.03) were violated by the Brook Park defendants, none of the five exceptions in O.R.C. 2744.02 to political subdivision immunity apply.  The closest exception is the one referenced above as to Claims 6 and 7.  However, the two statutes cited by Plaintiffs do not impose civil liability upon a political subdivision and do not even arise to those standards where "Civil liability shall not be construed to exist…"  Therefore, Claims 8 and 9 should be dismissed as to the Brook Park defendants.

**Claim 10 for Interference with Civil Rights Should be Dismissed Against the Brook Park Defendants**

Like other claims referenced above, Plaintiffs made this exact same claim, factually and verbatim, against only the East Park defendants in the prior litigation (CV-22-964883).  Plaintiffs just restated the allegations from the first action's Complaint against the East Park defendants and included a "(Against All Defendants)" designation in this action.  The paragraphs in this Claim deal with the actions of the East Park defendants – "their request that the City of Brook Park and its officers criminally charge Ms. Criscione for criticism and asking the Ohio Department of Health to approve the eviction of Ms. Mandanici" (Paragraph 138 of the Amended Complaint); "participating in the City's investigation and prosecution" (Paragraph 139 of Amended Complaint); "coordinating with the City in its efforts to investigate and prosecute her and by coordinating with the Ohio Department of Health to evict Ms. Mandanici." (Paragraph 140 of the Amended Complaint); "causing the Ohio Department of Health to approve a retaliatory eviction and by causing the Berea Municipal Court to bring her up on charges".  As with its inclusion in the Complaint in the prior case, this Claim reads as being against the East Park defendants.  The facts in the Amended Complaint do not support this claim as against the Brook Park defendants which would require its dismissal as to them.

Also, the Claim appears to state a claim for a violation of the Ohio Constitution (Paragraph 135 of the Amended Complaint).  In *Provens v. Stark Cty. Bd. of Mental Retardation*, the Ohio Supreme Court determined that there is no private cause of action for torts allegedly arising under the Ohio constitution. 64 Ohio St.3d 252, 261, 594 N.E.2d 959, 966 (1992).  Relying on *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the court declined to create new "constitutional torts." *Provens*, at 256-7. Ultimately, the Ohio Supreme Court concluded: [T]here [is] no private constitutional remedy for the plaintiff-appellant's claims

in that the Ohio Constitution itself does not provide for a civil damage remedy. Further, in that there are rather extensive legislative and regulatory schemes providing for the bringing of complaints and charges emanating from civil rights violations, ... the plaintiff has sufficiently broad and inclusive remedies for her alleged wrongs. *Provens*, at 261. Any state Constitutional claim should be dismissed.

As to the reference to O.R.C. 2921.45, Defendants maintain that said Ohio law does not permit Plaintiffs to bring a civil claim under a criminal statute. O.R.C. 2921.45 is a criminal statute with no civil remedy. Plaintiffs have also made a claim under the criminal statute for Complicity, O.R.C. 2923.03. That criminal statute provides no civil remedy. Ohio law is well-settled, however, that civil actions may not be solely predicated upon an alleged violation of a criminal statute. See *Biomedical Innovations, Inc. v. McLaughlin*, 658 N.E.2d 1084, 1086, 103 Ohio App.3d 122, 126; *Brunson v. City of Dayton*, 163 F.Supp.2d 919 (S.D. Ohio 2001); and *Culberson v. Doan*, 125 F.Supp.2d 252, 279-80 (S.D. Ohio 2000). Finding that a civil action cannot be predicated upon a violation of a criminal statute, the *Biomedical Innovations* court stated: "criminal violations are brought not in the name of an individual party but rather by, and on behalf of, the state of Ohio or its political subdivisions." *Biomedical Innovations, Inc.*, 658 N.E.2d at 1086, 103 Ohio App., at 126.

Plaintiffs might argue that they are attempting to state a claim under O.R.C. 2307.60 related to civil actions for damages for a criminal act. However, nowhere in the Amended Complaint do Plaintiffs plead this avenue of recovery or that they are proceeding under that statute. Further, the statute of limitations for actions under O.R.C. 2307.60 is one year. Per the Amended Complaint, Plaintiff Criscione's last involvement with the Brook Park defendants was March 10, 2021 when the criminal charges were dismissed. Any claims under O.R.C. 2307.60

filed after March 10, 2022 are time barred by the statute of limitations.  Specifically, in *Steinbrick v. Cleveland Elec. Illum. Co.*, 8th Dist. No. 66035, 1994 Ohio App. LEXIS 3756 (Aug. 25, 1994), the Eighth District, citing the language in R.C. 2307.60 permitting a plaintiff to collect "punitive or exemplary damages," determined that "because R.C. 2307.60 contemplates a penalty, * * * R.C. 2305.11(A) is the applicable statute of limitations." *Id.* at *5. Following its decision in *Steinbrick*, the Eighth District reaffirmed that "R.C. 2307.60 contemplates a penalty, therefore it is subject to the one-year statute of limitations in R.C. 2305.11(A)." *State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Corporate Real Estate, LLC*, 8th Dist. No. CA-16-104157, 2017-Ohio-7727, at ¶ 131. The Southern District of Ohio also applied *Steinbrick's* conclusion that R.C. 2307.60(A)(1) is a penalty statute to which the one-year statute of limitations in R.C. 2305.11(A) applies.  See also,  *Duffy v. Pope*, S.D. No. 2:11- cv-16, 2012 U.S. Dist. LEXIS 137471 (Sept. 25, 2012); *Ettayem v. H.E.R., Inc.*, 5th Dist. No. 19 CAE 12 0070, 2020- Ohio-4647, ¶ 24, 26; *Sampson v. Cleveland*, N.D. Ohio No. 1:20 CV 741, 2020 U.S. Dist. LEXIS 150851, at *9 (Aug. 20, 2020); *Marquardt v. Carlton*, N.D. Ohio No. 1:18-CV 333, 2019 U.S. Dist. LEXIS 58402, at *6-8 (Apr. 2, 2019), rev'd on other grounds, *Marquardt v. Carlton*, 971 F.3d 546, 2020 U.S. App. LEXIS 26355 (6th Cir.2020); *Roarty-Nugent v. Cuyahoga Cty.*, N.D. Ohio No. 1:20 CV 1025, 2020 U.S. Dist. LEXIS 168934, at *18 (Sept. 15, 2020); and *Brack v. Budish*, 539 F.Supp.3d 794, (N.D.Ohio 2021).

And again, if the Brook Park defendants did these criminal acts knowingly then the acts were intentional, and the Brook Park defendants have immunity for these intentional acts per the law cited above.   And again, even if the two referenced statutes were violated by the Brook Park defendants, none of the five exceptions in O.R.C. 2744.02 to political subdivision immunity apply.  The closest exception is the one referenced as to multiple Claims above. However, the

two criminal statutes cited by Plaintiffs do not impose civil liability upon a political subdivision and does not even arise to those standards where "Civil liability shall not be construed to exist…"

Accordingly, Plaintiffs' Claim 10 based upon the state Constitution and criminal statutes imposing criminal penalties must be dismissed as to the Brook Park defendants as such claims are not permitted under Ohio law, the facts do not support claims against these defendants, the statute of limitations bars the same and the defendants have immunity for the claims.

## 42 U.S.C §1983 Claims

## Claims Against the Brook Park Defendant Police Officers

Plaintiff has sued four Brook Park Defendant police officers. Even under Ohio's notice pleading standard, Plaintiffs have not, even after filing a more definite statement in the form of an Amended Complaint, stated if they are suing the officers in their official or individual capacities for the purposes of the federal claims. The capacity in which a "person" is sued affects not only the damages and defenses available, but also the elements a plaintiff must plead and prove. *McCurdy v. Sheriff*, 128 F.3d 1144, 1145 (7th Cir. 1997). Courts will look to the designation made in the complaint. *Kolar v. County of Sangamon*, 756 F.2d 564, 568-69 (7th Cir. 1985) The full caption of the initial Complaint in this matter does not designate if the officers are sued in their individual or official capacities. Reference to a defendant's office in a complaint suggests the plaintiff is suing the defendant in his official capacity and if the plaintiff intends to sue a defendant in both capacities or in his individual capacity, he must say so in his pleading. *Kolar,* at 568-570. In Paragraph 10 of the Amended Complaint, Plaintiffs reference that the individuals are "officers of the Brook Park Police Department". Further, in the "Prayers" of the Amended Complaint, Plaintiffs seek injunctive relief amongst other relief. Injunctive relief is

normally sought through an official capacity suit.  *Akins v. Board of Governors*, 840 F.2d 1371

(7th Cir. 1988); *Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993).  On the face of the

Amended Complaint, the only allegations made against the Defendant officers are for acts made

in their official capacity as police officers relative to a criminal investigation and criminal

charges being brought.  Therefore, the federal claims against the four Brook Park police officers

should be designated as being against them only in their "official capacities".

Official claims are considered an action against the "office" which employs the

defendant, not the individual defendant himself. It is simply another way of suing a

governmental entity. Therefore, the pleading elements of an official capacity claim against an

individual defendant are the same as the elements of a claim against the municipality itself.

*Monell v. New York Dep't of Social Servs.*, 436 U.S. 658 (1978); *Kentucky v. Graham*, 473 U.S.

159 (1985)  The claims would then follow the requirements of establishing a *Monell* claim

against a municipality.   If a municipality or a local unit of government is a named defendant in a

lawsuit, an official capacity claim against the employee may be redundant since the official

capacity claim is deemed to be an action against the office employing the person and not the

individual.  *Chandler v. Board of Educ.*, 92 F. Supp.2d 760, 764 (N.D. Ill. 2000). "[A]n official-

capacity suit is, in all respects other than name, to be treated as a suit against the entity."

*Kentucky*, at 166. The courts have recognized that, where an entity is named as a defendant,

official capacity claims against employees of the entity are redundant. *Foster v. Michigan*, 573 F.

App'x 377, 390 (6th Cir. 2014) (finding official-capacity suits against defendant agency's

employees superfluous where the state and agency were also named as defendants); *Faith Baptist

Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford

Township, the entity for which Bedell was an agent, the suit against Bedell in his official

capacity was superfluous.") (citing *Foster*); *Petty v. Cty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007).

Because bringing a claim against these four police officers in their official capacities is equivalent to bringing a claim against the City of Brook Park as a governmental entity, the § 1983 claims against the police officers in their official capacities are duplicative with the claims brought against City of Brook Park and should be dismissed as duplicative and redundant. *Skellett v. Washington*, 1:19-cv-703, U.S. District Court, Western District of Michigan, ECF No. 9 - Opinion, 12/20/19.

### 42 U.S.C. § 1983 Claims Against Defendant City of Brook Park

Plaintiffs assert various claims under 42 U.S.C. §1983 against Defendant City of Brook Park and the officers in their official capacities (Counts 13, 14, 15, 16 and 17). Political subdivisions may only be liable under §1983 when a deprivation of federal rights results specifically from a policy or custom of the entity. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.E.2d 611 (1978); *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 89-90, 658 N.E.2d 814 (1st District 1985).

A municipality only incurs liability under §1983 where its policy or custom causes the Constitutional violation in question. *Monell*, 436 U.S. at 694. This is because "Congress did not intend municipalities to be liable unless action pursuant to official municipal policy of some nature caused a Constitutional tort." *Id.* at 691. Thus, there are only three bases for municipal liability under §1983: (a) when an express policy causes a Constitutional violation; (b) when a widespread practice or custom is so common that it has the effect of a written policy; or (c) when the Constitutional injury is caused by a person with final policymaking authority. *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994). To establish municipal liability based on an

unwritten practice or custom, the custom "must be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. Consequently, the Sixth Circuit has held that such a policy or custom cannot be established based on a single incident of potential misconduct of a city employee. See, *Thomas v. City of Chattanooga*, 398 F.3d 426, 430-31 (6th Cir. 2005). In rejecting an argument that §1983 municipal liability can be based upon a solitary incident, the Sixth Circuit cogently stated:

> The danger in appellants' argument is that they are attempting to infer a municipal wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simply respondeat superior standard. This path to municipal liability has been forbidden by the Supreme Court.

*Id.* at 432-33.

In *Thomas v. City of Chattanooga, supra,* the Sixth Circuit held that the claim against the city was subject to dismissal because there was no clear and persistent pattern that the city had a custom or policy condoning excessive force. In *Miller v. Calhoun County*, 408 F.3d 803, 815-16 (6th Cir. 2005), the Court dismissed a claim because the plaintiff failed to make the threshold showing of a clear and persistent pattern of the mistreatment of detainees. Case law is clear that vague and conclusory allegations of a deficient policy or procedure, like those in this case, are insufficient to state a claim. In *Williams v. City of Cleveland*, 2009 U.S. Dist. LEXIS 61346 (N.D. Ohio July 16, 2009), the court dismissed claims against a municipality with prejudice because the amended complaint was lacking:

Plaintiff's amended complaint recites the critical element of a §1983 claim against a municipality - a policy or custom - but does so in a conclusory manner. Plaintiff makes no factual allegations that can support the conclusion that the City has a policy or custom of ignoring exculpatory evidence and continuing with prosecutions. To merely state that the City has a policy or custom is not enough; Plaintiff must allege facts, which if true, demonstrate the City's policy, such as examples of past situations where law enforcement officials have been instructed to ignore evidence. Here, while Plaintiff has alleged facts sufficient to demonstrate that exculpatory evidence was ignored in his case, he has not alleged facts from which it can be inferred that this

conduct is recurring or that what happened in his case was due to City policy. Accordingly, the amended complaint would not state a claim cognizable under federal law.

Id. at *12. See, also, *Leaks v. City of Shaker Heights*, No. 1:15-cv-02060 (N.D. Ohio Oct. 16, 2015) (granting a motion to dismiss of the City of Shaker Heights, noting that the complaint was "merely a threadbare recitation of the element of a *Monell* cause of action." *Id.* at p. 5. There were no facts – just conclusions – that the municipality inadequately trained or supervised its officers or had a custom of tolerating violations of federal rights. Further, case law shows that a plaintiff must point to a specific policy that is allegedly deficient to satisfy the first avenue of relief. *Jackson v. City of Highland Park*, 2015 U.S. Dist. LEXIS 68115 (E.D. Mich. May 27, 2015) ("Defendants argue that, because Plaintiff fails to identify a specific policy or custom that he claims caused his alleged constitutional violations, his § 1983 claims of municipal liability are subject to dismissal under Rule 12(b)(6). This Court agrees."); *Mallin v. City of Eastlake*, 755 F. Supp. 2d 819 (N.D. Ohio 2010) (dismissing a defendant municipality because "Mallin failed to identify a specific policy or practice….").

Plaintiffs fail to identify any specific custom or policy that is deficient, or any other instances of wrongdoing showing a pattern or practice. The Amended Complaint alleges only one instance of wrongdoing against Ms. Criscione, which is insufficient to state a proper §1983 claim.  Even one or two prior acts or similar incidents do not suffice to establish a custom or practice. Rather, what is required is a widespread action by various municipal employees that is long-standing and well-settled in nature. *Jett v. Dallas Indep. Schl. Dist.*, 491 U.S. 701, 737 (1989). See also *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117 (1997); *Latuszkin v City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001).

Even after filing a more definite statement, no factual allegations to support such a policy or custom is alleged in the Amended Complaint.  Plaintiffs do not reference any specific policy

or custom violated or prior/similar incidents to establish a custom or practice.  Further, in Plaintiffs' "Equal Protection" claim, Plaintiff Criscone alleges she was treated differently than the way everyone is treated – eliminating a custom or practice.  Paragraph 88 of the Amended Complaint makes a general cursory reference to the prosecution of Plaintiff being "the result of City policies or customs made by employees whose edicts or acts represent official policy." Plaintiffs are not simply allowed to allege a policy or custom and then go on a fishing expedition to try and find one later.  It is only alleged in the Amended Complaint that the cause of action arose from Plaintiff Criscone being charged and prosecuted; that police were directed to prepare criminal charges based upon the complaints of other third-party citizens (Paragraph 89 of the Complaint) and that there was a decision to charge (Paragraph 90 of the Complaint).  Claims 13 through 17 that set out the §1983 claims make no reference at all to deprivations caused by policies or customs – only singular claims of action involving Plaintiff Criscone as per below.

Claim 13 implies a violation of the First Amendment due to singular acts of subjecting Plaintiff Criscone to criminal prosecution, seeking a restraining order, preventing her from speaking further, and attempting to have her imprisoned.  Claim 14 alleges violations of the First and Fourteenth Amendments for the singular act of criminally prosecuting Plaintiff Criscone. Claim 15 does not allege a violation of any Constitutional Amendment at all but makes a claim for the singular act of initiating criminal charges against Plaintiff Criscone.  Claim 16 alleges a violation of the First Amendment for the singular act of arresting Plaintiff Criscone.  Claim 17 alleges a violation of the First Amendment for the singular act of criminally prosecuting Plaintiff Criscone.

Further, § 1983 does not impose liability upon a municipality based on *respondeat superior* or vicarious liability theories as to employees which in this case would be the individual

police officers, the Law Director Horvath and Assistant Law Director Sackett.  *City of Canton v. Harris*, 489 U.S. 378, 375 (1989).  No allegations are made anywhere in the Amended Complaint as to actions of a "final policy maker".  For these reasons alone, all of Plaintiff's § 1983 claims should be dismissed as to Defendant City of Brook Park (which includes any claims against the officers in their official capacity).  If that is not enough to support dismissal, as to each of the individual federal claims:

Claim 13 is a civil action for deprivation of rights for 42 U.S.C §1983 for "Retaliatory Arrest".  Claim 16 is a Civil Action for Deprivation of Rights under 42 U.S.C. §1983 for "False Arrest".  As a factual matter, at no point in the facts of the Amended Complaint is it shown that Plaintiff Criscione was actually arrested.  There are no factual allegations that she was arrested, detained, held in custody, seized, held against her will, restrained, or "booked".  Paragraph 77 of the Amended Complaint stated that she went to the station house, "where they would issue her a citation" on October 15, 2020.  Ohio Criminal Rule 4(A)(2) states that, "In misdemeanor cases where a warrant has been issued to a law enforcement officer, the officer, unless the issuing authority includes a prohibition against it in the warrant, may issue a summons <u>in lieu of executing the warrant by arrest</u>, when issuance of a summons appears reasonably calculated to ensure the defendant's appearance."  (emphasis added) Ms. Criscione describes receiving a summons in lieu of…warrant by arrest.  Without an actual, factual arrest there can be no retaliatory or false arrest.

Further, these two claims are time barred by the applicable statute of limitations.  42 U.S.C. § 1983 does not have a statute of limitations. Instead, the Court must refer to an analogous state claim. Courts generally apply a state's personal injury statute of limitations to claims under §1983. *Hawkins v. Spitters*, 79 F. App'x 168, 169 (6th Cir. 2003) (citing *Wilson v.*

*Garcia*, 471 US 261 (1985)); see also *Owens v. Okure*, 488 US 235, 236 (1989) (holding that the general personal injury statute of limitations applies to a § 1983 action).  Case law is clear that courts apply a state's personal injury statute of limitations for §1983 claims. In Ohio, the statute of limitations for personal injury claims is two years. *Gates v. Precision Post Co.*, 659 N.E.2d 1241, 1241 (Ohio 1996). Therefore, treating the §1983 claim as a personal injury claim for statute of limitations purposes, the §1983 claim has a two year statute of limitations. *Browning v. Pendleton*, 869 F.2d 989, 989 (6th Cir. 1989) (*en banc*) (holding that the statute of limitations for §1983 claims in Ohio is two years).  *North v. County of Cuyahoga*, Case 1:15-cv-01124-DAP, U.S. Dist. Court, Northern District of Ohio, 7/19/17.

The statute of limitations for a §1983 false arrest claim runs from the date of the arrest. *Wallace v. Kato*, 549 U.S. 384, 397 (2007); *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009); *Wilson v Giesen*, 956 F.2d 738, 741 (7th Cir. 1992).  Plaintiff Criscione alleges she was "arrested" on October 15, 2020 when the summons was issued (Paragraph 77 of Amended Complaint).  That means she would have needed to file her claims for both retaliatory and false arrest by October 15, 2022.  This lawsuit was filed on March 10, 2023 meaning that these claims are time barred by the two-year statute of limitations.

Claim 14 is a civil action for deprivation of rights for 42 U.S.C §1983 for "Malicious Prosecution".  Though vague and ambiguous, in it Plaintiffs seem to allege that the Brook Park defendants criminally prosecuted Plaintiff Criscione without probable cause – presumably for her "speech".  The Claim on its face is confusing.  It references both the First and Fourteenth Amendments.  Under the First Amendment, the claim would be for retaliatory prosecution which is not even referenced.  Under the Fourteenth Amendment, the claim would be for malicious prosecution.

If the attempt was to make a First Amendment claim, the U.S. Supreme Court stated in *Packingham v North Carolina*, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (U.S. 2017): "Specific criminal acts are not protected speech even if speech is the means for their commission. *See Brandenburg v. Ohio*, 395 U.S. 444, 447-449 (1969) (*per curiam*)." *Id.* at p. 1737. *See, also, Employment Div. Dept. of Human Res. v. Smith*, 110 S.Ct. 1595, 1600 (1990).  In *Princeton Educ. Assoc. v. Princeton Bd. of Educ.*, 480 F.Supp. 962, 969 (S.D.Ohio 1979), the federal district court recognized that "content-neutral restrictions on matters such as the time and manner of speech may be imposed at public meetings, to enable public bodies to conduct the business of government without undue interruption or distraction." *Kirkland v. Luken*, 536 F. Supp. 2d 857, 874 (S.D. Ohio 2008). "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.' " *Id.*  Here, the Amended Complaint shows that Plaintiff was not investigated and issued a citation because Defendants took offense to the content of the speech, but rather because of what was reported to them by the East Park Defendants.  The facts paragraphs of Plaintiffs' Amended Complaint even allege the conduct of the Brook Park defendants was due to information provided to Brook Park – even alleging that some of the information provided was false. (Paragraphs 64, 66, 68, 69, 70, 71, 72, 130 and 133).  Further, Plaintiff also cannot prove the third prong of a First Amendment claim, that a retaliatory animus caused the injury, because (1) the complaint shows that the Officers' actions were not retaliatory, and (2) there was probable cause to bring the charge.

To show that an action was retaliatory, a plaintiff must "show, by a preponderance of the evidence, that the substantial or motivating factor for the defendants' conduct was retaliation." *Libbra v. City of Litchfield, Ill.,* 893 F. Supp. 1370, 1385 (C.D. Ill. 1995); *Rakovich v. Wade,* 850 F.2d 1180, 1189 (7th Cir. 1988). In *Libbra* the court dismissed a First Amendment claim because there was no evidence the officers were trying to intimidate the plaintiff and their actions were only investigatory. *Id.* at 1385. In this case the Amended Complaint establishes that the actions of the Defendant Officers cannot be considered retaliatory. Nothing factual in the Amended Complaint alleges that. The Amended Complaint also establishes that there was probable cause in that it states that the Defendant Officers acted on false information provide to them by others. The inquiry as to whether probable cause existed is not tantamount to an inquiry into whether Plaintiff Criscione was in fact guilty. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. . . . [T]he establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. McClain,* 444 F.3d 556, 562-63 (6th Cir. 2005). "The quantum of proof required to establish probable cause is significantly lower than that required to establish guilt." *Criss v. City of Kent,* 867 F.2d 259, 262 n.1 (6th Cir. 1988). Therefore, any First Amendment argument in this claim must fail.

If Plaintiffs are trying to allege a Fourteenth Amendment claim, in *Sykes v. Anderson,* 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit set forth the elements of a §1983 malicious prosecution claim:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute.
> Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution[.]

Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.
Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Id.* at 308-09.

The Sixth Circuit recently drastically limited the parameters of a malicious prosecution claim against a police officer in *Sanders v. Jones*, 845 F.3d 721 (6th Cir. 2017), which held that an officer enjoys absolute immunity from malicious prosecution claims for grand jury testimony and that a claim based on false grand jury testimony must therefore fail.  In this case, Plaintiffs allege the Defendant Officers were provided false information.  The claim in this case fails the first prong, which requires that a defendant made, influenced, or participated in the decision to prosecute. *Powers v. Wallen*, E.D.Tenn. No. 3:12-CV-96, 2014 U.S. Dist. LEXIS 51595, at *14-15 (Apr. 15, 2014). The Sixth Circuit recently stated that "generally, 'prosecutors alone make the decision to prosecute….'" *Emanuel v. Cty. of Wayne*, 652 F.App'x 417, 427 (6th Cir.2016) (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) (dismissing the malicious prosecution claim against the defendant police officers holding that the plaintiff "failed to provide any evidence that the prosecutorial responsibility was usurped by the sheriff's office employees.")).  "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017) (emphasis added). There must be "some element of blameworthiness or culpability in the participation," as "truthful participation in the prosecution decision is not actionable." *Id.*   None of this is alleged in the Amended Complaint. The Amended Complaint states in Paragraph 89 that an employee of the City's Law Department directed the police to prepare charges against Ms. Criscione.  The obviates the police officers sued in their official capacities.

Claim 15 is a Civil Action for Deprivation of Rights under 42 U.S.C §1983 for abuse of process.  It is alleged in Paragraph 164 of the Amended Complaint that the Brook Park defendants set a legal proceeding in motion with probable cause by initiating criminal charges against Ms. Criscione.  In Ohio the statute of limitations for an abuse of process claim accrues upon the date of the allegedly tortious conduct. See O.R.C. § 2305.09; *Mansour v. Croushore*, 194 Ohio App.3d 819, 823, 958 N.E.2d 580, 583 (Ohio Ct. App. 2011). Again, per the Complaint, those charges (the process being abused) would have been initiated on October 15, 2020.  Therefore, under the two-year statute of limitations for §1983 actions, this cause of action in Claim 15 is also barred by the statute of limitations as it was not filed by October 15, 2022 but filed on March 10, 2023 and should be dismissed.

Claim 17 is a Civil Action for Deprivation of Rights under 42 U.S.C 1983 for violation of Equal Protection.  Plaintiff Criscione does not meet the standard for pleading an equal protection claim against the Brook Park defendants.  To state a violation of the equal protection clause, plaintiff must allege: i) she is a member of a "protected class," ii) who was treated differently than another similarly situated person who was not a member of that class, and iii) the difference in treatment was due to his or her race, gender or membership in that protected class. *McPhaul v. Board of Comm'rs*, 226 F.3d 558, 564 (7th Cir. 2000) Plaintiff must show that defendant acted with a discriminatory purpose and treated the plaintiff differently because of, not merely in spite of, his or her race, sex, national origin, etc. *Id.*  Plaintiff does not allege that she is a member of any protected class and therefore, this theory fails.

The U.S. Supreme Court recognized a so-called "class of one" theory of equal protection. *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000)  Plaintiffs might be proceeding under this theory, but it is never actually pled this way – even after the filing of an Amended Complaint.

Plaintiff does not have to be a member of a protected class under this theory. However, a defendant must have singled-out the plaintiff for discriminatory treatment on an irrational and wholly arbitrary basis and prove that the defendant's conduct was motivated by a "spiteful effort to get the plaintiff for reasons wholly unrelated to any legitimate state objective." *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995).  Even under Ohio's notice pleading standard, Plaintiffs have not, after filing a more definite statement in the form of an Amended Complaint, set forth the basic elements of any form of this claim or sufficient facts to support them. Paragraph 173 of the Plaintiffs' Amended Complaint references, "Countless similarly situated people whose messages have different content have been free to do so without interference from the City of Brook Park and its officers."  Paragraph 174 of Plaintiffs' Amended Complaint reference the prosecution of Ms. Criscione was to retaliate against her for exercising her rights – theories already propounded in several other Claims.  There is no allegation that the actions of the Brook Park defendants lacked a rational basis or that it was motivated by any spiteful effort to get Plaintiff unrelated to a legitimate state objective.  The facts paragraphs of Plaintiffs' Complaint even allege the conduct of the Brook Park defendants was due to false information provided to Brook Park. (Paragraphs 64, 66, 68, 69, 70, 71, 72, 130 and 133).

Plaintiff's Amended Complaint, on whole, is also deficient as to a hodge-podge of random allegations put in various places in the Amended Complaint.

In alleging a violation of a clearly established right in the pursuit of a 42 U.S.C. § 1983 claim, a plaintiff cannot simply make broad generalizations.  *Anderson v. Creighton*, 483 U.S. 635, 107, S.Ct. 3034, 97 L.E.2d 523; *Cook,* at 87.  This means that the very action in question has to be sufficiently clear such that a reasonable official would understand that what he was doing would violate the right. *Anderson,* at 639-640.  A plaintiff cannot simply allege that his or

her Constitutional Amendment rights were violated. There has to be specificity about rights claimed to be violated in light of clearly established law. *Cook*, at 87. Plaintiff's Amended Complaint only generally claims violations of the First and Fourteenth Amendments which fail the standard on its face. Further, Claim 15 does not even reference an Amendment that was violated.

The allegations must set forth, with particularity, facts that demonstrate what each individual defendant did to violate asserted Constitutional rights. *Boddie v. City of Lima*, N.D. Ohio No. 16-cv-1850, 2018 U.S. Dist. LEXIS 65342, *5 (April 18, 2018), citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Plaintiff's Amended Complaint is also too vague in this regard as to these Defendants. The Claims made under § 1983 make no such references. In the facts of Plaintiffs' Amended Complaint, the allegations were: The City was aided by Defendants Sakellakis, Duncan, Walsh, and Sensel, who gathered evidence that Ms. Criscione had criticized East Park and it employees to support criminal charges against her. (Paragraph 74) There is no allegation of what each officer did and nothing in the law supports a § 1983 claim for gathering evidence. Based on her protected speech, the City and its officers approved criminal charges against Ms. Criscione…(Paragraph 75). There is no indication as to what each police officer did this. After approving those charges, police officers required Ms. Criscione to make a trip to the station house where they would issue her a citation and initiate her prosecution for those crimes. (Paragraph 77). There was no indication of what police officers did this. "Instead, a plaintiff must show that an individual defendant committed the act that caused the constitutional deprivation." *Id.* Even after filing an Amended Complaint, Plaintiffs did not allege any such factual specifics.

"[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). To establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *citing Hays*, 668 F.2d at 872–74. Nothing is alleged in the Amended Complaint in this regard.

Paragraph 90 of the Amended Complaint references a failure to adequately train and supervise employees. But there is no explanation as to how, or what employees engaged in the same. Nothing in all of the individual claims made against the Brook Park defendants relate back to or refer back to this – whether it is related to state law or federal claims. If state law, there is immunity. O.R.C. 2744.02(B) does not contain an independent exception to a political subdivision's immunity under O.R.C. 2744.02(A)(1) for the failure to train, supervise, or enforce its own policies." *Glenn v. Columbus*, 10th Dist. Franklin No. 16AP-15, 2016-Ohio-7011, ¶ 11, citing *DiGiorgio v. Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, ¶ 33; *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740; *Williams v. Shawnee Twp.*, 2023 Ohio 251 (Ohio App. 2023).

As to the federal claims, even after being asked to provide a more definite statement, the Amended Complaint is vague and ambiguous as to what relates to what and to whom and to

which claim and how.  Plaintiffs do not identify a specific training policy that is deficient; therefore the failure to train argument should be viewed as an allegation that there is an unwritten policy or custom of deficient or incorrect training. "A systematic failure to train employees amounts to a custom or policy for which the employer may be subject to § 1983 liability only if such failure amounts to deliberate indifference to the rights of persons with whom the employees come into contact. To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Thorpe v. Breathitt County Bd. of Educ.*, 8 F. Supp. 3d 932 (E.D. Ky. 2014) (citing *Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012) (internal citations omitted)). In *Thorpe* the court dismissed the failure to train claim, reasoning that the plaintiff "has not provided a single fact to indicate that the Board knew or should have known about any instances of unconstitutional conduct and ignored a history of abuse, or that training in this particular area was deficient. Again, '[t]he standard of 'deliberate indifference' is a stringent one and requires proof that the defendants 'disregarded a known or obvious consequence' of their actions.' *Sagan v. Sumner Cnty. Bd of Educ.*, 726 F. Supp. 2d 868, 886 (M.D. Tenn. 2010). Thorpe must 'establish that the governmental entity was aware of the unconstitutional acts of its employees and failed to respond.' *Id.*" *See, also, Beard v. Whitmore Lake Sch. Dist.*, 244 Fed. Appx. 607, 611 (6th Cir. 2007).  There are no factual allegations in the Amended Complaint that the Brook Park officials knew of a history of training problems and were clearly on notice that the training in this particular area was deficient and likely to cause injury.

Therefore, based upon the totality of the above, all of the 42 U.S.C. § 1983 claims should be dismissed as to all defendants.

### Claim 18 Should be Dismissed Against all Brook Park Defendants

Claim 18 of the First Amended Complaint is a claim as to Conspiracy to Interfere with Civil Rights Under 42 U.S.C. §1985(3). The Amended Complaint fails to plead a viable conspiracy claim against these defendants. Although Plaintiffs cite to §1985(3), they do not plead any factual allegations in the Amended Complaint of racial or class-based animus as required to state a claim under that section. The first element for this cause of action requires that there be some racial or otherwise class-based "invidious discriminatory animus" for the conspiracy. *Bray v. Alexandria Women s Health Clinic*, 506 U.S. 263, 268-69 (1993); *Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985). In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the U.S. Supreme Court emphasized that there must be some racial, or class-based, invidiously discriminatory animus behind the conspirator's actions. 403 U.S., at 101.

Although plaintiff alleges racial animus, as discussed above, he does not sufficiently allege facts that can state a claim under §1983 against the City. Nor has he alleged that there was any agreement or "meeting of the minds" by the defendants to deprive him of those constitutional rights. Accordingly, this claim must also be dismissed.

*McGee v. State of California*, No. 2:16-cv-1796, U.S. Dist. Court, Eastern District of California, Finding and Recommendations of Magistrate, filed August 10, 2016; adopted by the Court on August 31, 2016.

In the Amended Complaint, Plaintiffs use the words "discriminatory animus" in this claim (Paragraph 178) but do not plead facts supporting a racial or class-based animus or allege that Ms. Criscione was a member of a protected class that was the basis for any conspiracy. Even with notice pleading, Plaintiffs cannot just use a term like "discriminatory animus" with nothing more to support it. The law is clear it must be racial or class based. The law is clear that even if that is alleged, facts in support of the same must be alleged.

The standard for federal conspiracy claims was set forth in *Hooks v. Hooks*, 771 F.2d

935, 943-44 (6th Cir. 1985), wherein the court observed that, "conspiracy claims must be pled

with some degree of specificity and . . . vague and conclusory allegations unsupported by

material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534,

1538-39 (6th Cir. 1987).  A § 1985(3) complaint must "allege both a conspiracy and some class-

based discriminatory animus behind the conspirators' action." *Newell v. Brown*, 981 F.2d 880,

886 (6th Cir. 1992). Dismissal is appropriate for these claims when the plaintiff is not alleging

that the defendants' actions were motivated by some race or class-based discriminatory animus.

*See Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007).  A

conspiracy must be pled with some degree of specificity, and vague or conclusory allegations

that are unsupported by material facts will not be sufficient to state a claim. *Jaco v. Bloechle*, 739

F.2d 239, 245 (6th Cir. 1984) (conclusory language void of specific factual allegations was

insufficient to support a conspiracy claim).

As such, Plaintiffs have not sufficiently stated a claim under this federal code section and

Claim 18 should be dismissed against the Brook Park defendants.

## The Court Should Dismiss Punitive Damages Claims Against Defendant City of Brook Park and its Four Officers in their Official Capacities

The Complaint seeks punitive damages from all Brook Park defendants amongst others

(Prayer for Relief F. – "Award punitive and exemplary damages for Defendants' egregious,

willful, and malicious conduct".  The same are not recoverable under federal or state law.

*Newport v. Fact Concerts*, 453 U.S. 247 (1981); *Rannels v. City of Cleveland*, 41 Ohio St.1

(1975).  O.R.C. 2744.05(A) states, without question or exception, "Punitive or exemplary

damages shall not be awarded" for Ohio state law claims.  As to the federal claims, punitive

damages cannot be recovered from a municipality (or an individual sued in his official capacity).

*Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Holly v. City of Naperville*, 571 F. Suppl. 668 (N.D. Ill. 1983).  Therefore, the claims for punitive damages should be dismissed as to all the Brook Park defendants.

## CONCLUSION

For the reasons above, the Brook Park defendants move for dismissal of all Claims of the Amended Complaint against them (Claims 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17 and 18) as well as the claim for punitive damages.  An Order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order.  O.R.C. 2744.02(C).  Therefore, under *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, if any part of the Motion to Dismiss related to a denial of state immunity defenses are denied, Defendants respectfully request that the Court deem the Order to be a final appealable Order and that there is "no just cause for delay".

Respectfully Submitted,

*/s/ Michael L. Morgan*

Michael L. Morgan, Esq. (0087565)
*Attorney for Defendants, City of Brook Park,*
*George Sakellakis, Harold Duncan, Ryan Walsh*
*and Thomas Sensel*
LAW OFFICE
P.O. Box 36538
Canton, OH 44735
Telephone: 330-415-8890
Facsimile: 855-515-8241
Email: Michael.Morgan@selective.com

## <u>CERTIFICATE OF SERVICE</u>

A true and accurate copy of the foregoing Motion to Dismiss was served this 26th day of

April, 2023 via the Court's electronic filing system and email or hand-delivery upon the

following:

Brian D. Bardwell                                   Attorney for Plaintiff
Speech Law, LLC
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326

Michael Ockerman                                   Attorney for Defendants
Emily R. Yoder
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH 44333

/s/ Michael L. Morgan

_____

Michael L. Morgan, Esq. (0087565)
*Attorney for Defendants, City of Brook Park,*
*George Sakellakis, Harold Duncan, Ryan Walsh*
*and Thomas Sensel*