## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

**GINA CRISCIONE et al.,**                    **Case No. 24-CV-1446**

        **Plaintiff,**

        **-vs-**

                                      **JUDGE PAMELA A. BARKER**

**LAURA DIVINCENZO, et al,**

        **Defendant.**                    **MEMORANDUM OPINION & ORDER**

        This matter is before the Court upon Defendants Laura DiVincenzo, Sarah Thurmer, and East Park Retirement Community, Inc.'s ("East Park") (together, the "East Park Defendants") Partial Motion to Dismiss (the "East Park Defendants' Motion"), filed on January 9, 2025, and Defendants the City of Brook Park ("Brook Park"), George Sakellakis, Harold Duncan, Ryan Walsh, and Thomas Sensel's (together, the "Brook Park Defendants") Motion to Dismiss (the "Brook Park Defendants' Motion"), filed on January 7, 2025.  (Doc. No. 15; Doc. No. 14.)  On February 21, 2025, Plaintiff Gina Criscione ("Criscione" or "Plaintiff"), individually and on behalf of the Estate of Dorothy Mandanici ("the Estate"), filed Plaintiff's Brief in Opposition ("Plaintiff's Opposition").  (Doc. No. 19.)  On March 5, 2025, the Brook Park Defendants filed a Reply in Support of their Motion (the "Brook Park Defendants' Reply"), and on March 7, 2025, the East Park Defendants filed their Reply in Support of their Motion (the "East Park Defendants' Reply").  (Doc. No. 20; Doc. No. 21.)

        For the following reasons, the East Park Defendants' Motion is DENIED, and the Brook Park Defendants' Motion is GRANTED.

I.    **Background**[1]

A.  **Plaintiff's Allegations**[2]

"Dorothy Mandanici ("Mandanici") was a resident at the East Park Care Center from 2017 until 2020, shortly before her untimely death."  (Doc. No. 1 at PageID# 2.)  "Plaintiff Gina Criscione was the daughter of Ms. Mandanici."  (*Id.*)  "Ms. Criscione was Ms. Mandanici's legal guardian and is the personal representative of her estate."  (*Id.*)  "Defendant East Park Care Center is a business that engages primarily in the supply of nursing-home residence and care."  (*Id.*)  "Defendant Laura DiVincenzo was the owner of East Park Care Center at the time of Ms. Mandanici's death."  (*Id.*)  "Defendant Sara Thurmer was the administrator of East Park Care Center at the time of Ms. Mandanici's death."  (*Id.*)  "Defendant City of Brook Park is a political subdivision organized under the laws of the State of Ohio."  (*Id.*)  "Defendants George Sakellakis, Harold Duncan, Ryan Walsh, and Thomas Sensel are or were officers of the Brook Park Police Department."  (*Id.*)

---

[1] Only the allegations and procedural history relevant to the disposition of the parties' motions are set forth herein.

[2] This Court may take judicial notice of the documents filed in the criminal case of *City of Brookpark v. Criscione*, Case No. 20 CRB 1262-1-2, M.C. Berea, and Criscione's two previously instituted civil actions, *Criscione, et al. v. Divincenzo, et al.*, Case No. CV-22-964883, C.P. Cuyahoga ("*Criscione I*"), and *Criscione, et al. v. Divincenzo, et al.*, Case No. CV-23-97645, C.P. Cuyahoga ("*Criscione II*") in the Cuyahoga County Court of Common Pleas because "[f]ederal courts may take judicial notice of proceedings in other courts of record."  *Granader v. Pub. Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) (collecting cases) (taking judicial notice of state court filings because "the state court proceedings were within the jurisdiction of the District Court and were directly concerned with the same parties and the same subject matter."); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("Because this court sits to decide real cases, not abstract questions of law, and because an adequate understanding of a case is essential to our decision, we have examined the record in the state court in an effort to ascertain the facts.").  Additionally, "[a]lthough typically courts are limited to the pleadings when faced with a motion under Rule 12 (b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."  *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) (quoting *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)) (taking judicial notice to review motion to dismiss based on *res judicata*).  Therefore, "[i]n determining a Rule 12(b)(6) motion premised upon *res judicata,* the Court has authority to take judicial notice of the filings in the record of the applicable previous state court proceeding."  *Schaffer v. Huntington Nat'l Bank*, 2015 WL 74979 at *2 (N.D. Ohio 2015) (citing *Automated Solutions Corp. v. Paragon Data Syst., Inc.*, 20 WL 2404972 at *6 (N.D. Ohio June 11, 2008)).

"Ms. Mandanici arrived at East Park around April 2017[.]"  (*Id.* at PageID# 3.)  "Defendant Thurmer took over as administrator of the facility in 2018."  (*Id.*)  "East Park was short-staffed on multiple occasions after Defendant Thurmer's arrival."  (*Id.* at PageID# 4.)  Criscione alleges that "[o]n some of these occasions, East Park employees used Ms. Criscione or her sister to perform work or services[,]" including asking Criscione to "fetch fresh linens from the laundry room[,]" "pull supplies for them from the supply closet," "assist her mother in the bathroom[,]" and "supervise nearby patients while nurses ran other errands."  (*Id.* at PageID# 4.)

Additionally, Criscione alleges that "Thurmer asked Ms. Criscione to assist her in finding and recruiting a new director of nursing."  (*Id.*)  "Criscione and her sister agreed to perform these tasks" and "East Park accepted compensation from Ms. Mandanici and other parties to perform these tasks." (*Id.* at PageID# 5.)  According to Criscione, she "noticed that various issues with her mother's care were going unaddressed after Ms. Thurmer's arrival, and she began hearing about problems from East Park staff members and from the families of other residents."  (*Id.*)  For instance, Criscione alleges that "[t]he air conditioner in Ms. Mandanici's room would blow black chunks of mold into her bed[,]" "Criscione and her sister would find her sitting in urine[,]" "East Park allowed Ms. Mandanici to become so dehydrated that Ms. Criscione and her sister were eventually forced to call an ambulance to transport her to a hospital[,]" and "[s]taff repeatedly failed to properly dry Ms. Mandanici after her showers, leading to yeast infections that spread across her groin."  (*Id.* at PageID#s 5-6.)  According to Criscione, she "repeatedly discovered fecal matter on toilet lids, sheets, and other surfaces when she entered the room."  (*Id.*)  Criscione alleges that she "reported these issues directly to East Park and demanded better care" and "disclosed East Park's neglect in postings online and in reports to the Ohio Department of Health."  (*Id.* at PageID# 7.)

3

Criscione alleges that the East Park Defendants "began to retaliate against those who complained about [the problems]," to include Ms. Mandanici and Ms. Criscione, and they "began attempting to cut Ms. Criscione off from her mother and from the staff members caring for her." (*Id.*) Criscione contends that "Defendant Thurmur [sic] ordered [East Park staff members] to stop taking Ms. Criscione's calls, to block her on social media, to avoid her in personal interactions, and to refuse to put her phone calls through to her mother" and "went as far as taking employees' phones and deleting Ms. Criscione's number to ensure they couldn't report any more problems to her." (*Id.* at PageID#s 7-8.)  Criscione alleges that she "sought to continue closely monitoring her mother's condition, but she was severely limited in her ability to do so" and that "in March 2020, Ms. Criscione requested her mother's medical records from East Park so she could evaluate its treatment of her mother" but "East Park refused to produce those records." (*Id.* at PageID# 8.)  According to Criscione, "East Park prohibited Ms. Criscione from entering the facility and instructed employees not to connect Ms. Criscione's phone calls to her mother.  Ms. Criscione was relegated to visiting her mother through a bedroom window." (*Id.*)

Criscione alleges that "East Park furthered its retaliation around April or May 2020 by initiating eviction proceedings against Ms. Mandanici, relying on false statements that she was a threat to its nurses and false statements about her medical history, symptoms, and treatment." (*Id.* at PageID# 9.)  According to Criscione, "[t]he isolation from her daughter left Ms. Mandanici feeling alone, abandoned, and confused[,]" Ms. Mandanici's "physical and cognitive condition began to decline rapidly[,]" and East Park "continued to endanger Ms. Mandanici's health by keeping her isolated and by failing to provide her adequate food and water." (*Id.*)  Criscione "was finally able to move Ms. Mandanici to a new home at Mt. Alverna" and "[a]lthough Mt. Alverna provided far better

4

care, Ms. Mandanici arrived there too late.  Her condition had already irreversibly deteriorated, and she died soon after on June 20, 2020." (*Id.*)

According to Criscione, even after her mother died, "East Park and its officials continued to retaliate against her and her daughter for blowing the whistle on them[,]" they "continued to refuse to produce medical records that would have allowed Ms. Criscione to evaluate the quality of care they provided[,]" and they "confiscated property that Ms. Criscione had placed in her mother's room and never returned it to her, despite her demands." (*Id.*)  "Months after Ms. Mandanici's death, Defendant DiVincenzo discovered that Ms. Criscione had reported the conditions at East Park to the Ohio Department of Health and discussed them online." (*Id.* at PageID# 10.)  Criscione alleges that "[b]ased on those communications, Defendant DiVincenzo and Defendant Thurmer conspired with officials at the City of Brook Park ["the City"] to silence Ms. Criscione." (*Id.*)  Criscione also alleges that "Defendant DiVincenzo then directed Defendant Thurmer to prepare a written statement claiming that she felt 'very threatened' by Ms. Criscione's public disclosures that East Park was neglecting its patients" and then, "[b]ased on those complaints, Defendant City of Brook Park initiated a criminal prosecution of Ms. Criscione." (*Id.* at PageID# 11.)   "The City was aided by Defendants City of Brook Park, George Sakellakis, Harold Duncan, Ryan Walsh, and Thomas Sensel ("the Brook Park Defendants"), who gathered evidence that Ms. Criscione had criticized East Park and its employees to support criminal charges against her[.]" (*Id.*)

Criscione alleges that "[b]ased on her protected speech, the City and its officers approved criminal charges against Ms. Criscione based on her speech and conduct from May 23, 2020 through October 15, 2020: one count of telecommunications harassment and one count of menacing by stalking." (*Id.* at PageID#s 11-12.)  According to Criscione, "the City approved those charges on

5

October 15, 2020." (*Id.* at PageID# 12.) However, Criscione "filed a motion to dismiss the charges based on [] First Amendment defects and the lack of probable cause" and "the court granted that motion and dismissed the case without prejudice on March 11, 2021." (*Id.*) "Ms. Criscione's counsel sought assurances from the City that it would not refile the charges, but Mr. Sackett held open the possibility of refiling charges against her until the statute of limitations had lapsed." (*Id.* at PageID# 13.)[3]

### B. Procedural History

On August 23, 2024, Criscione filed the Complaint against the East Park Defendants and Brook Park Defendants. (Doc. No. 1.) The Complaint sets forth eighteen (18) claims: Survivorship Action against the East Park Defendants (Claim 1); Wrongful Death against the East Park Defendants (Claim 2); Breach of Contract against the East Park Defendants (Claim 3); violations of Nursing Home Bill of Rights ("NHBR") under Ohio Rev. Code § 3721 against the East Park Defendants (Claim 4); Malicious Prosecution against all Defendants (Claim 5); Abuse of Process against all Defendants (Claim 6); Whistleblower Retaliation under Ohio Rev. Code § 3721.24 against all Defendants (Claim 7); Falsification under Ohio Rev. Code § 2921.13 against all Defendants (Claim 8); Intimidation under Ohio Rev. Code § 2921.03 against all Defendants (Claim 9); Interference with Civil Rights under Article I, § 11 of the Ohio Constitution, the Fourteenth Amendment right to equal protection of the laws, and Ohio Rev. Code §§ 2921.45, 2923.03, and 2307.60 against all Defendants (Claim 10); Conversion against the East Park Defendants (Claim 11); Intentional Infliction of Emotional Distress against all Defendants (Claim 12); Civil Action for Deprivation of Rights –

---

[3] Criscione contends that the statute of limitations for her criminal charges expired on October 15, 2022. (*Id.* at PageID# 12.)

6

Retaliatory Arrest under 42 U.S.C. § 1983 against the Brook Park Defendants (Claim 13); Civil Action for Deprivation of Rights – Malicious Prosecution under 42 U.S.C. § 1983 against the Brook Park Defendants (Claim 14); Civil Action for Deprivation of Rights – Abuse of Process under 42 U.S.C. § 1983 against the Brook Park Defendants (Claim 15); Civil Action for Deprivation of Rights – False Arrest under 42 U.S.C. § 1983 against the Brook Park Defendants (Claim 16); Civil Action for Deprivation of Rights – Equal Protection under 42 U.S.C. § 1983 (Claim 17); and Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985(3) against all Defendants (Claim 18). (Doc. No. 1 at PageID#s 15-25.)

On January 7, 2025, the Brook Park Defendants filed their Motion, seeking to dismiss all claims asserted against them, Claims 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, and 18. (Doc. No. 14.) On January 9, 2025, the East Park Defendants filed their Motion to dismiss only Claims 1, 2, 3, 4, 5, and 10. (Doc. No. 15.) On February 21, 2025, Criscione filed Plaintiff's Opposition. (Doc. No. 19.) On March 5, 2025, the Brook Park Defendants filed their Reply, and on March 7, 2025, the East Park Defendants filed their Reply. (Doc. No. 20; Doc. No. 21.)

### C. Previous Cuyahoga County Court of Common Pleas Lawsuits

Prior to filing her lawsuit in this Court, Criscione had filed two relevant lawsuits, referred to as *Criscione I* and *Criscione II* respectively. First, on June 17, 2022, Criscione filed a complaint in the Cuyahoga County Court of Common Pleas in which she asserted claims against the East Park Defendants, identical to the claims she asserts here with the following exceptions: Criscione did not include a claim for breach of contract or a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985, did not cite Ohio Rev. Code § 2307.60 as a basis for her interference with civil rights claim, and she included an additional claim for electronic monitoring discrimination under Ohio Rev.

7

Code § 3721.65. (Complaint at pgs. 12-17, Entry of June 17, 2022, *Criscione I*.) On August 9, 2022, the court ordered Criscione to file an "affidavit of merit on or before noon on 8/11/22." (Entry of Aug. 9, 2022, *Criscione I*.) On August 12, 2022, the court entered a judgment dismissing the *Criscione I* without prejudice that stated in relevant part that "PLAINTIFF FAILED TO COMPLY WITH THE COURT ORDER TO FILE THE AFFIDAVIT OF MERIT AND THE CASE IS DISMISSED WITHOUT PREJUDICE FOR PLAINTIFF'S FAILURE TO PROSECUTE." (Entry of Aug. 12, 2022, *Criscione I*.)

Second, on March 10, 2023, Criscione filed a complaint in the Cuyahoga County Court of Common Pleas against both the East Park Defendants and the Brook Park Defendants. (Complaint, Entry of Mar. 10, 2023, *Criscione II*.) Therein, she asserted the same claims she asserts in this case against *both* the East Park Defendants and the Brook Park Defendants, but as in *Criscione I* and as to the East Park Defendants, she did not include claims for breach of contract and conspiracy to interfere with civil rights under 42 U.S.C. § 1985, she did not cite Ohio Rev. Code § 2307.60 as a basis for her interference with civil rights claim, and she included an additional claim for electronic monitoring discrimination under Ohio Rev. Code § 3721.65. (*Id.*) On April 19, 2023, the court set the trial date for August 30, 2023. (Entry of Apr. 19, 2023, *Criscione II*.)

In *Criscione II,* on April 21, 2023, Criscione had filed a First Amended Complaint, specifying which claims she was asserting against each set of Defendants. (First Amended Complaint, Entry of Apr. 21, 2023, *Criscione II*.) On April 26, 2023, the Brook Park Defendants filed a motion to dismiss the same claims asserted against them in this lawsuit, which the court granted on May 4, 2023. (Motion to Dismiss, Entry of Apr. 26, 2023, *Criscione II*; Judgment Entry of May 4, 2023, *Criscione II*.) The judgment entry, hereinafter referred to as the "First Judgment," includes the caption "89

DIS. W/PREJ – PARTIAL" and reads as follows: "MOTION TO DISMISS FILED BY BROOKPARK DEFENDANTS IS GRANTED. FINAL.  ALL OTHER CLAIMS AND DEFENDANTS REMAIN AND ORDERS REMAIN AS SET." (*Id.*)  Also on May 4, 2023, the East Park Defendants filed a Motion for Judgment on the Pleadings to dismiss nearly the same claims as the claims the East Park Defendant's Motion to Dismiss seeks to dismiss here.[4]  (Motion for Judgment on the Pleadings, Entry of May 4, 2023, *Criscione II*.)  On May 23, 2023, the court granted the motion for judgment on the pleadings.  (Judgment Entry of May 23, 2023, *Criscione II*.)

On August 16, 2023, the court held the final pretrial conference, and on August 21, 2023, the East Park Defendants filed their trial brief.  (Entries of Aug. 17 and 21, 2023, *Criscione II*.)  On August 23, the East Park Defendants filed five motions in limine to exclude evidence for the trial set for August 30, 2023.  (Entries of Aug. 23, 2023, *Criscione II*.)  On August 25, 2023, the court entered a judgment, hereinafter referred to as the "Second Judgment," which included the caption "87 DIS. W/O PREJ – FINAL" and reads as follows: "PLAINTIFF FAILED TO TIMELY FILE TRIAL BRIEF AS ORDERED IN THE CASE MANAGEMENT ORDER.  CASE IS DWOP FOR PLAINTIFFS FAILURE TO PROSECUTE. ALL MOTIONS ARE MOOT. TRIAL DATE IS CANCELLED.  SHOULD DEFENSE FILE A MOTION FOR SANCTIONS, IT IS TO BE FILED ON OR BEFORE 8/30/23." (Second Judgment, Entry of Aug. 25, 2023, *Criscione II*.)

On September 1, 2023, Criscione filed a "Motion to Correct the Record Nunc Pro Tunc" which requested that the court replace the first two sentences of the Second Judgment, including the language that the case was dismissed "for Plaintiff's failure to prosecute," with the following: "This

---

[4] The Motion for Judgment on the Pleadings sought to dismiss Criscione's claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985 and, because it was not asserted in that lawsuit, did not seek to dismiss a breach of contract claim.  (*Id.*)

entry is replacing the 8/25/23 entry, nunc pro tunc.  This case is DWOP.  Costs to be divided between the Plaintiff and the Defendant."  (Motion to Correct the Record Nunc Pro Tunc, Entry of Sept. 1, 2023, *Criscione II*.)  On September 9, 2023, the court denied this motion.  (Entry of Sept. 10, 2023, *Criscione II*.)

## II.    Standard of Review

Under Rule 12(b)(6), the Court accepts Criscione's factual allegations as true and construes the Amended Complaint in the light most favorable to her.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires

10

only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## III.    Law and Analysis

### A.  Statute of Limitations

#### 1.  Survivorship, Breach of Contract, and Violations of Nursing Home Bill of Rights (Claims 1, 3, and 4)

The East Park Defendants move to dismiss Criscione's claims for survivorship, breach of contract, and violation of Ohio's Nursing Home Bill of Rights under Ohio Rev. Code § 3721 (Claims 1, 3, and 4) on the basis that Criscione failed to timely assert them.  (Doc. No. 15 at PageID#s 148-52.)  Specifically, they contend that those claims constitute 'medical claims' subject to Ohio's one-year (1) statute of limitations under Ohio Rev. Code § 2305.11.  (*Id.*)  Thus, according to the East Park Defendants, because the Complaint alleges that Criscione was aware of Mandanici's injuries before her death on June 20, 2020, Criscione would have needed to file her claims by June 20, 2021, but she did not file until June 17, 2022. (*Id.* at PageID# 149.)

In Plaintiff's Opposition, Criscione responds that her "claims rely on numerous allegations of negligence that do not necessarily touch on medical care" and that "because they all rely on allegations of negligence or intentional misconduct that fall outside the definition of a 'medical claim,'  Claims 1, 3, and 4 are not governed by Ohio Rev. Code § 2305.113's one-year statute of

limitations and were timely filed. (Doc. No. 19 at PageID#s 218-29.) The East Park Defendants make two arguments in reply. First, they argue that even the allegations of the Complaint Criscione points to as non-medical, such as the East Park Defendants' failure to treat Ms. Mandanici's ulcers, do relate to medical care, and that generally the "Complaint is replete with similar allegations related to the medical care provided to the Plaintiff's decedent." (Doc. No. 29 at PageID# 288.) Second, they contend that even if Claims 1, 3, and 4 are non-medical claims, they would have accrued before May 20, 2020,[5] because "we know that Ms. Mandanici was discharged from East Park on May 20, 2020." (*Id.*) And because the "non-medical claims are subject to a two-year statute of limitations," such claims would be time-barred because Plaintiff did not file her first lawsuit until June 17, 2022. (*Id.*)

Ohio Rev. Code § 2305.113(A) provides that "[e]xcept as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." The statute further provides a definition for "medical claim," defining it as:

> any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person.

*Id.* § 2305.113(E)(3). Additionally, according to the statute, a "medical claim" includes the following:

---

[5] The East Park Defendants appear to have mistakenly written May 20, 2022, when they intended to write May 20, 2020, as that is the date the East Park Defendants contend Ms. Mandanici was discharged from East Park. (Doc. No. 21 at PageID# 289.)

(a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;

(b) Derivative claims for relief that arise from the plan of care prepared for a resident of a home;

(c) Claims that arise out of the medical diagnosis, care, or treatment of any person or claims that arise out of the plan of care prepared for a resident of a home and to which both types of claims either of the following applies: (i) The claim results from acts or omissions in providing medical care. (ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(d) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code;

(e) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

*Id.*

Both parties cite to *Lerner v. Broadview NH, LLC*, 98 N.E.3d 1014 (Ohio App. 10th Dist. 2017) to supply the governing standard for a 'medical claim' under Ohio Rev. Code. § 2305.113. (Doc. No. 15 at PageID# 151; Doc. No. 19 at PageID# 218.) In *Lerner*, the plaintiff asserted claims for negligence and violations of the NHBR. *See* 98 N.E.3d at 1017. The court differentiated between claims related to "medical care," which are subject to the one-year (1) statute of limitations, and claims for "general care," which are not. *Id.* at 1020. To differentiate them, "courts look to whether the act or omission at issue was part of a medical test, procedure, or treatment; whether a medical professional had ordered the provision of the care that was being given (or withheld) at the time of the injury; and whether the care provided (or withheld) required any medical expertise or professional skill." *Id.* Under that standard, the court in *Lerner* concluded that six of the plaintiff's theories of recovery did not contain "sufficient factual detail to characterize the claims arising from those allegations as medical claims:"

13

> (1) the failure of Broadview's nursing staff to communicate with the physical therapy staff, (2) the failure to provide Irene with adequate personal care and treatment, (3) the failure to provide Irene with clean sheets and sanitary living conditions, (4) the failure to adequately address the concerns of Irene's family and medical team, (5) the failure to adequately visit Irene to ensure she was stable, and (6) the failure to provide appropriate information to Irene's family.

*Id.* at 1021.

Regarding her claims for survivorship and violations of the NHBR (Claims 1 and 4), Criscione points to the following allegations, summarizing them from the Complaint as follows:

> East Park failed to provide Ms. Mandanici with adequate personal care and treatment, outfitting her room with an air conditioner that blew mold onto her bed; leaving her sitting in puddles of urine, failing to dry her after showers, and failing to provide her water.

> East Park failed to provide clean sheets and sanitary living conditions, leaving fecal matter on sheets, toilet lids, and other surfaces.

> East Park did not adequately address concerns raised by Ms. Mandanici's family about her care.

> East Park failed to provide appropriate information to Ms. Mandanici's family, refusing to put through calls from her daughter and likewise instructing staff not to take her daughter's calls.

(Doc. No.19 at PageID# 288) (citing Doc. No. 1 at PageID#s 5-8, 13.)

Here, these allegations align neatly with the allegations the court in *Lerner* held to be insufficient to constitute medical claims at the pleading stage. *See* 98 N.E.3d at 1021. Just as the defendant in *Lerner* had "fail[ed] to provide Irene with clean sheets and sanitary living conditions," the Complaint here includes assertions analogous to— and even more descriptive than— the allegations in *Lerner*: the East Park Defendants, according to Criscione, permitted mold to blow into Mandanici's bed, allowed her to sit in puddles of her own urine, failed to provide her water, and left fecal matter in her sheets.  (Doc. No. 1 at PageID#s 5-8.)  Thus, as in *Lerner*, the lack of clean-living

14

conditions Mandanici allegedly experienced is more akin to "general care" than to "medical care" because preventing such conditions from arising does not require professional medical skill, but simply the maintenance of the day-to-day living conditions of the residents of the nursing home. Additionally, Criscione expressly grounds her theory of liability for violations of the NHBR on the East Park Defendants' failure to provide "unrestricted communications with family," which corresponds directly with the "the failure to provide appropriate information to Irene's family" in *Lerner*. (Doc. No. 1 at PageID# 16.)

By contrast, the East Park Defendants only point to a single allegation that related to medical care, i.e., their alleged failure to treat Mandanici's ulcers, but that argument ignores that the *other* theories of liability noted above are sufficient to allow her claims for survivorship and violations of the NHBR to survive, even if one particular theory considered alone were to amount to a medical claim. *See Lerner*, 98 N.E.3d at 1021. For that same reason, the East Park Defendant's cursory assertion in their Reply that "the Complaint is replete with similar allegations related to the medical care provided to the Plaintiff's decedent" is without merit. (Doc. No. 21 at PageID# 288.)

Moreover, the East Park Defendants' assertion that Criscione's claim for breach of contract is simply "clever pleading" to reconstitute a medical claim into a non-medical claim likewise lacks merit. (Doc. No. 15 at PageID# 150.) They generally argue that the court must look through the labels parties ascribe to their claims, but the East Park Defendants fail to apply that logic to the allegations Criscione sets forth in her Complaint to support her claim for breach of contract. (*Id.*) As Criscione alleges, she formed a contract with the East Park Defendants to "provide adequate assistance with [Mandanici's] activities of daily living[,]" "to provide adequate assistance with her activities of daily living[,]" and "to provide adequate assistance with her medical needs." (Doc. No.

19 at PageID# 218-19) (quoting Doc. No. 1 at PageID#s 15-16.)  The East Park Defendants have not demonstrated how those allegations depend on the "medical expertise or professional skill" required to find that the breach of contract claim is merely the "clever pleading" of a medical claim.  (Doc. No. 15 at PageID# 150.)

Finally, the Court cannot accept the East Park Defendants' argument that Criscione's claims nevertheless fail as general negligence claims because the two-year statute of limitations applies to bar them.  (Doc. No. 21 at PageID# 289.)  While they contend that Criscione's claims necessarily accrued before Mandanici was discharged on May 20, 2020, the Complaint does not allege that she was discharged on May 20, 2020.  Instead, it alleges only that she died on June 20, 2020.  (Doc. No. 1 at PageID# 9.)  Thus, because Criscione initiated her suit on June 17, 2022, it is possible that the injuries alleged in the Complaint continued to occur on June 18 or June 19, 2020, before she moved to Mt. Alverna.  (*Id.*)  Because the Complaint must be construed in favor of Criscione as the non-moving party, and because the Complaint does not allege Mandanici's date of discharge, the Court cannot consider the East Park Defendants' extrinsic allegations.  (Doc. No. 21 at PageID# 289.)

Accordingly, based only on the allegations in the Complaint, the Court concludes that Criscione's claims for survivorship, breach of contract, and violations of the NHRB (Claims 1, 3, and 4) are not subject to the one-year (1) year statute of limitations under Ohio Rev. Code § 2305.113, and therefore were timely asserted.

### 2.  Malicious Prosecution (Claim 5)

The East Park Defendants argue that Criscione's claim for malicious prosecution (Claim 5) is subject to a one-year (1) statute of limitations that accrued upon dismissal of the charge against Criscione.  (Doc. No. 15 at PageID# 153.)  Thus, according to the East Park Defendants, because the

charge was dismissed without prejudice on March 11, 2021, yet Criscione did not file her original complaint until June 17, 2022, she missed the applicable one-year period. (*Id.*) Criscione does not dispute that the applicable limitation period is one-year, but she asserts that the limitation period did not accrue until October 15, 2022— after she filed her original complaint to initiate *Criscione I*— because that is when the statute of limitations expired on the misdemeanor for which she was charged pursuant to Ohio Rev. Code § 2901.13(A)(1)(b). (Doc. No 19 at PageID# 220) (citing *Mann v. Genoa Twp.*, 2002 WL 221112 (Ohio App. 5th Dist. Feb. 11, 2002)). The East Park Defendants refute Criscione's argument by noting that "claims for malicious prosecution accrue on the dismissal of the charge" and that in her original complaint to initiate *Criscione I*, she included a malicious prosecution claim, so she herself "did not believe the cause of action did not accrue until October 15, 2022." (Doc. No. 21 at PageID# 290.)

Under Ohio law, "[i]n a malicious criminal prosecution claim, the one-year statute of limitations begins to toll when the prosecution is terminated in favor of the accused." *Fourtounis v. Verginis*, 2015 WL 3899355 at *6 (Ohio App. 8th Dist. June 25, 2015) (citing *Froehlich v. Ohio Dept. of Mental Health*, 871 N.E.2d 1159, 1162-63 (Ohio 2007)). "A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." *Daly v. Certo*, 2025 WL 352639 at *24 (Ohio App. 2d Dist. Jan. 31, 2025) (publication forthcoming) (citing *Ash v. Ash*, 651 N.E.2d 945 (Ohio 1995)).

In *Mann*, plaintiff Kimberly Mann brought a claim for malicious prosecution, naming defendants Genoa Township, its Board of Trustees, and its Zoning Inspector, Mark Mazzon as defendants. *See* 2002 WL 221112 at *1. Mann was employed by Genoa Township, and the defendants referred her to the Delaware County Prosecutor when they discovered that Mann was

17

allegedly falsifying her work timesheet by conducting personal business during work hours. *See id.* at \*2. A grand jury indicted Mann for theft in office under Ohio Rev. Code § 2921.41(A), but "the Delaware County Prosecutor's Office filed a motion to dismiss the criminal case against appellant without prejudice subject to re-submission to the Delaware County Grand Jury. In a judgment entry of the same date, the trial court dismissed the indictment without prejudice subject to representation to the Delaware County Grand Jury." *Id.* After Mann brought her complaint asserting malicious prosecution and other claims, the defendants moved for summary judgment on the malicious prosecution claim arguing that "there had been no final termination of the prosecution in favor of the accused[,]" which the trial court subsequently granted. *Id.* On appeal, the Fifth District Court of Appeals found that because "the criminal prosecution was dismissed without prejudice and subject to representation to the grand jury[,]" "there has been no termination of the prosecution in favor of the accused' which indicates the accused is innocent. Accordingly, at this time, appellant is unable to prove the tort of malicious prosecution as a matter of law." *Id.* at \*4.

The East Park Defendants try to distinguish *Mann* on the basis that the court held that the dismissal without prejudice was also "subject to representation to the grand jury." (Doc. No 21 at PageID# 291.) Yet it is the "without prejudice" designation that allows the case to be presented to the grand jury again. Other courts have agreed with this proposition in *Mann*. For instance, the court in *Slusher v. Reader*, 2019 WL 1384423 (S.D. Ohio Mar. 27, 2019) noted that "[t]he Court cannot conclude at this time that the underlying criminal proceeding was terminated in Plaintiff's favor as of June 7, 2017, as the proceeding was terminated without prejudice, *that is, still subject to submission to and consideration by the grand jury*." *Id.* at \*5 (emphasis added); *Leonhardt v. City of Akron*, 2019 WL 6895432 at \*8 (Ohio App. 9th Dist. Dec. 18, 2019) (holding that where the indictment was

dismissed without prejudice, the underlying criminal prosecution was not terminated in the plaintiff's favor).  Thus, the East Park Defendants draw a distinction without a difference.

The East Park Defendants concede in their Reply that "the *Mann* case stands for the proposition that the prosecutor's dismissal of the claim, without prejudice, was not a 'termination of the prosecution in favor of the accused.'"  (*Id.*) (citing *Mann*, 2002 WL 221112 at *4).  Indeed, that is what *Mann* held, and that is why here, the dismissal without prejudice did not trigger the accrual period. As noted above, and as the East Park Defendants themselves acknowledge, "the one-year statute of limitations begins to toll when the prosecution is terminated in favor of the accused." *Fourtounis*, 2015 WL 3899355 at *6.  Therefore, because the City of Brook Park's criminal action against Criscione ended in a dismissal without prejudice, it did *not* constitute a termination of the criminal action in Criscione's favor, and the dismissal did not trigger the accrual period on March 11, 2021.

Finally, while the East Park Defendants argue that Criscione's malicious prosecution claim had not yet accrued when she filed her complaint in *Criscione I*, that argument only goes to Criscione's ability to ultimately succeed on her claim for malicious prosecution.  (Doc. No. 21 at PageID# 290.)  Even assuming the East Park Defendants' assertions are true, the mere fact the Criscione would have mistakenly believed her claim accrued in *Criscione I* does not mean that this Court must find that it had accrued upon the dismissal without prejudice.

Accordingly, because the Court finds that the Berea Municipal Court's dismissal of the charges against Criscione without prejudice on March 11, 2021, did not trigger the one-year (1) statute of limitations, the Court declines to dismiss Criscione's claim for malicious prosecution (Claim 5) for untimeliness.

19

### B. Private Cause of Action for Interference With Civil Rights Under Ohio Law (Claim 10)

The East Park Defendants argue that Ohio law does not provide a cause of action for interference with civil rights pursuant to Ohio Rev. Code § 2921.45 and § 2923.03. (Doc. No. 15 at PageID# 153-54.) However, they do not mention Ohio Rev. Code § 2307.60. (*Id.*) Criscione responds that her additional basis for this claim under Ohio Rev. Code § 2307.60 "expressly" creates a private cause of action for "damages from criminal acts" and contends that the Ohio Supreme Court's opinion in *Buddenberg v. Weisdack*, 161 N.E.3d 603 (Ohio 2020)[6] "endorsed the application of this statute to claims for interference with civil rights[.]" (Doc. No. 19 at PageID# 221; Doc. No. 1 at PageID# 20-21.) The East Park Defendants respond by pointing out that Criscione did not "dispute that there is no private cause of action for an alleged violation of Art. I, § 11 of the Ohio Constitution," and that the court in *Criscione II* previously rejected Criscione's contention that Ohio Rev. Code § 2907.60 creates an applicable cause of action. (Doc. No. 21 at PageID# 292.) In the East Park Defendants' Reply, they also introduce an argument that Claim 10 fails because the Complaint "does not allege sufficient facts to support a claim" and was not timely brought under the one-year (1) statute of limitations. (*Id.* at PageID# 293.)[7]

---

[6] Criscione also argues that the East Park Defendants violated Ohio R. Prof. Resp. 3.3 by failing to disclose this adverse authority despite the fact that Criscione relied on this authority in her opposition to the same argument in state court. (*Id.* at PageID# 221.) But because the court rejected this argument in state court, the Court finds that it was not frivolous or a violation of Rule 3.3 for the East Park Defendants to not disclose that authority. (Judgment Entry of May 23, 2023, *Criscione II.*)

[7] The East Park Defendants' argument that Criscione failed to assert sufficient facts to support her claim and did not timely assert her claim was a new argument introduced only in the East Park Defendants' Reply, so the Court declines to address it because courts "will generally not hear issues raised for the first time in a reply brief." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). If a party raises an argument for the first time in its reply brief, the party has waived the argument. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 n.4 (6th Cir. 2008) (citing *Renkel v. United States*, 456 F.3d 640, 642 n.1 (6th Cir. 2006)); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

The Ohio Supreme Court has explicitly held that § 2307.60 creates a private cause of action. In *Jacobson v. Kaforey*, 75 N.E.3d 203, 205 (Ohio 2016), the Ohio Supreme Court found that, by its plain and unambiguous language, § 2307.60 "independently authorizes a civil action for damages caused by criminal acts, unless otherwise prohibited by law." *Id.* In so doing, the court expressly rejected the argument that § 2307.60 does not create a "separate cause of action." *Id.* More recently, in *Buddenberg*, the plaintiff asserted a claim under § 2307.60, alleging that the defendant was liable for violation § 2921.45 for "interference with of civil rights." 161 N.E.3d at 605. Applying *Jacobson*, the Ohio Supreme Court held that a defendant need not be convicted for the underlying criminal act alleged pursuant to § 2307.60 to be liable thereunder because "crimes can be committed without a conviction." *Id.* at 606-07. Thus, the Ohio Supreme Court has already rejected the East Park Defendants' contention because it determined that a plaintiff does have a cause of action for interference with civil rights pursuant to Ohio Rev. Code §§ 2921.45 and 2307.60.

This Court follows *Buddenberg* and *Jacobson* to conclude that the East Park Defendants' argument that "there is no private cause of action for interference with civil rights" is without merit and must be rejected. *See Seymour v. Miller*, 2022 WL 93327 at * 8 (S.D. Ohio Jan. 10, 2022) (noting that "both this Court and the Southern District of Ohio routinely acknowledge civil actions brought under O.R.C. 2307.60" and rejecting defendants' argument that Ohio Rev. Code § 2307.60 does not create a separate civil cause of action) (collecting cases).

Accordingly, the Court declines to dismiss plaintiff's claim for interference with civil rights (Claim 10).

**C. Vicarious Liability (Claims 1 and 2)**

The East Park Defendants argue that Criscione's claims for survivorship and wrongful death (Claims 1 and 2) fail under *Nat'l Union Fire Ins. Co. of Pittsburgh v. Wuerth*, 913 N.E.2d 939 (Ohio 2009) because Criscione failed to individually name the allegedly negligent agents of the East Park Defendants who provided the medical care.  (Doc. No. 15 at PageID# 148.)  Criscione responds that even if its claims are 'medical claims,' they are not claims for 'medical malpractice' and that *Wuerth* only applies to professional malpractice claims.  (Doc. No. 19 at PageID# 215-16.)  Criscione additionally points to a recent Eighth District Court of Appeal case, *Orac v. Montefiore Found.*, 255 N.E.3d 189 (Ohio App. 8th Dist. 2024) and an unpublished case from the Southern District of Ohio, where the court declined to require the plaintiff to name the agents or employees of the principal before proceeding under a theory of vicarious liability.  (*Id.* at PageID# 216.)  Criscione also argues that even if *Wuerth* did require her to name the agents and employees of the East Park Defendants, the Nursing Home Bill of Rights provides an alternative route to relief directly against the nursing home.  (*Id.* at PageID#s 216-17.)  Thus, according to Criscione, "standard agency law principals [sic] permit her to pursue the master, the servant or both."  (*Id.*)   In their Reply, the East Park Defendants reiterate that Criscione neglected to sue an agent or employee of the East Park Defendants and point out that the Eighth District only decided *Orac* in 2024, after *Criscione II*.  (Doc. No. 21 at PageID# 287.)

In *Wuerth*, the court held that "if there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions."  913 N.E.2d at 944 (citing *Munson v. United States*, 380 F.2d 976, 979 (6th Cir. 1967) (Ohio law)).  In *Clawson*, the Ohio Supreme Court extended *Wuerth* to medical malpractice claims.  *See* 214 N.E.3d at 549

("Today, we hold that the rule stated in *Wuerth* applies equally to claims of vicarious liability for medical malpractice.").

But to the extent that the East Park Defendants assert that Criscione was required to join the East Park Defendants' employees as defendants in this action, they have misinterpreted Ohio law. (Doc. No. 15 at PageID# 148.)  As Criscione correctly notes,[8] *Orac* stands for the widely accepted principle that Ohio law does not require plaintiffs asserting a medical claim— or other claim— against a principal based on the theory of vicarious liability to name the agent as a defendant.  *See Clawson*, 214 N.E.3d at 545 (quoting *Wuerth*, 214 N.E.3d at 944) (describing as a "general principle[] of agency law" that "[a]lthough a party injured by an agent *may sue the principal, the agent, or both*, a principal is vicariously liable only when an agent could be held directly liable.") (emphasis added); *Marshall v. Mercy-Health-Anderson Hosp., L.L.C.*, 2025 WL 1086931 at *3 (Ohio App. 1st Dist. Apr. 11, 2025) (explaining that "[a] plaintiff filing a medical claim against a nurse or their employer hospital can choose to file against either or both" and applying that principle to conclude that "Marshall chose to sue Mercy as K.M.'s employer and chose not to sue K.M. individually, which she is permitted to do under the traditional doctrine of respondeat superior."); *Johnson v. Mercy Health Care, St. Vincent Med. Center*, 2025 WL 1010268 (Ohio App. 6th Dist. Mar. 31, 2025) (noting that the "allegedly-negligent non-physician employee [is] someone who does not need to be made a party to the suit."); *Scott Elliot Smith, LPA v. Travelers Cas. Ins. Co. of Am.*, 2012 WL 1758398 at *4 (S.D. Ohio May 16, 2012) ("Ohio courts have already considered the scope of *Wuerth*.  Ohio courts, as well as this Court, have interpreted *Wuerth* narrowly and rejected contentions that, outside of the

---

[8] *See Orac*, 255 N.E.3d at 200-01 (collecting cases).

23

malpractice setting, agents or employees must be named as defendants for claims of vicarious liability to succeed."); *Henik v. Robinson Mem. Hosp.*, 2012 WL 953138 at *4 (Ohio App. 9th Dist. Mar. 21, 2012) ("[A] suit against a hospital under a theory of respondeat superior may proceed where an alleged negligent employee was not named as a defendant."); *Cope v. Miami Valley Hosp.*, 960 N.E.2d 1034, 1041 (Ohio App. 2d Dist. 2011) ("We hold . . . that *Wuerth* does not preclude a suit against MVH for the negligence of its employee technicians, despite the fact the technician or technicians were not named as defendants in the Copes' complaint."); *Cobbin v. Cleveland Clinic Found.*, 143 N.E.3d 1155, 1162 (Ohio App. 8th Dist. 2019) ("[I]t is true that hospitals can be vicariously liable for the negligence of its nurses even if the nurses are not named in a plaintiff's complaint[.]"). This Court has already concluded that all but one of Criscione's claims, as alleged, do not constitute medical claims. But as the forgoing cases illustrate, even if they did, under Ohio law, Criscione is not required to name the East Park Defendants' agents to state her claims against them as principals.

Accordingly, the Court declines to dismiss Criscione's claims for survivorship and wrongful death (Claims 1 and 2) based on her failure to name the individual agents of the East Park Defendants.

### D. Res Judicata

The Brook Park Defendants argue that because the Court of Common Pleas in *Criscione II* granted their motion to dismiss the same claims 'with prejudice' that Criscione now reasserts against them in this action, the Brook Park Defendants have already obtained a final decision on the merits.[9]

---

[9] The parties do not contest the application of the second, third, or fourth elements of res judicata, but rather focus their disagreement on whether the First Judgment constituted a final decision on the merits to satisfy the first element. Additionally, the Brook Park Defendants spend a large portion of their brief setting forth the choice of law principles which control a federal court's application of res judicata. (Doc. No. 14 at PageID#s 108-14.) But, as noted below, it is well settled that federal courts apply the res judicata principles of the state court that rendered the judgment. *See Johnson*

(Doc. No. 14 at PageID# 107.)[10]  In support, they cite to *Denham v. New Carlisle*, 716 N.E.2d 184 (Ohio 1999), for the proposition that "a voluntary dismissal makes any prior interlocutory decision a final appealable Order that should be appealed if the losing party had an issue with the same." (Doc. No. 14 at PageID#s 114-15.)  According to the Brook Park Defendants, when the state court entered the Second Judgment, that entry transformed the First Judgment into a final appealable order with res judicata effect.  (*Id.*)

However, Criscione disputes that the First Judgment ever became final.  She attempts to distinguish *Denham* on three bases: (i) in *Criscione II*, the state court did not base its partial dismissal on political-subdivision immunity, (ii) the case ended with Criscione's involuntary dismissal under 41(B) rather than under 41(A),[11] and (iii) relying on *Myers v. State Farm Ins.*, 2003 WL 132406 (Ohio App. 8th Dist. Jan. 16, 2003), the Second Judgment dismissed the entire "case" rather than only the remaining parties.  (Doc. No. 19 at PageID# 223.)  Therefore, she argues, the Second Judgment "wiped out the earlier partial judgment" and thus left Criscione in the same position "as if

---

*v. De Grandy*, 512 U.S. 997, 1005 (1994) ("[A] federal court gives no greater preclusive effect to a state-court judgment than the state court itself would do[.]"); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

[10] Under Ohio law, a dismissal with prejudice operates as an adjudication on the merits, while a dismissal 'without prejudice' does not.  *See Goudlock v. Voorhies*, 894 N.E.2d 692, 694 (Ohio 2008) (citing *Chadwick v. Barba Lou, Inc.*, 431 N.E.2d 660 n.4 (Ohio 1982) and *Hensley v. Henry*, 400 N.E.2d 1352, 1353 n.3 (Ohio 1980)).

[11] While Criscione attempts to distinguish *Denham* and the Ohio appellate cases applying *Denham* on the basis that they only involved Ohio R. Civ. P. 41(A), not Ohio R. Civ. P. 41(B), she does not explain the relevance of that distinction and overlooks that the Court can still interpret that rule consistent with Ohio's governing legal principles from analogous cases.  (Doc. No. 19 at PageID# 222.)  Criscione also does not make any attempt to develop her argument distinguishing *Denham* based on the dismissal on sub-division immunity.  (*Id.*)  And even if she had, the logic in *Denham*'s holding was not based on the first dismissal's reliance on immunity, but rather the court's interpretation of Ohio Civ. R. 41(A)(1) and the scope of the language of the judgment.  *See* 716 N.E.2d at 186-87.  Thus, the Court's analysis below focuses on the third distinction, which Criscione designates as the "most important[.]" (Doc. No. 19 at PageID# 223.)

25

no action had been brought at all." (Doc. No. 19 at PageID# 224.)  Criscione contends that "unless the journal entry specifies that a dismissal applied only to specific claims or parties, it applies to the entire action." (*Id.*) (citing *Hutchinson v. Beazer E., Inc.*, 2006 WL 3743078 (Ohio App. 8th Dist. Dec. 21, 2006)).  The Brook Park Defendants dispute Criscione's argument that the Second Judgment nullified the First Judgment, arguing that the Second Judgment could only be interpreted to mean that the court dismissed the remaining East Park Defendants because they were the only remaining parties to the case. (Doc. No. 20 at PageID#s 230-234).

A federal court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (quoting *Hosp. Underwriting Grp., Inc. v. Summit Health Ltd.*, 63 F.3d 486, 494 (6th Cir. 1995)).[12]  As such, "when asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Id.*  Therefore, because the judgments against Criscione were entered by an Ohio court, the Court looks to Ohio law to determine the preclusive effect of the judgments.[13]

---

[12] *See Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir. 1999) ("The full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to accord a state court judgment the same preclusive effect that the judgment would have in a state court."); U.S. Const. art. IV, § 1 ("Congress may by general laws prescribe the Manner in which [state court] Act, Records and Proceedings shall be proved and the Effect thereof."); 28 U.S.C. § 1738 ("Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.").

[13] Although the Court is not sitting in diversity (because Criscione has asserted both state and federal claims), a court's "task, as in diversity, is to make [its] best prediction, even in the absence of direct state court precedent, of what the [Ohio] Supreme Court would do if it were confronted with this question.  In that inquiry, [the court] may rely upon analogous cases and relevant dicta in the decisional law of the State's highest court, opinions of the State's intermediate appellate courts, to the extent that they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions, including the 'majority rule.'" *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)); *see also In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756

"In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim preclusion and issue preclusion." *Sullen v. Bray*, 2017 WL 4777056 at *4 (N.D. Ohio Oct. 23, 2017). Regarding claim preclusion, the Ohio Supreme Court has held that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995). More specifically, "claim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood*, 127 F.3d at 493. By contrast, issue preclusion "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *Sullen*, 2017 WL 4777056 at *4.

Additionally, Criscione and the Brook Park Defendants disagree about how to construe the judgments rendered in *Criscione II*. Under Ohio law, courts are to interpret judgments in light of the "entire record." *Baughman v. Baughman*, 1987 WL 19986 at *1 (Ohio App. 9th Dist. Nov. 12, 1987); *In re Schuholz*, 2019 WL 11639553 at *9 (Bankr. S.D. Ohio Oct. 18, 2019) (citing *Hines v. Aetna Cas. & Sur. Co.*, 1992 WL 2588 at *5 (Ohio App. 8th Dist. Jan. 9, 1992)) ("[W]hen an Ohio judgment is ambiguous, the entire record may be examined and considered to determine its construction and interpretation."); *Dorsky v. Dorsky*, 1981 WL 4675 at *4 (Ohio App. 8th Dist. Dec. 10, 1981) (citation

---

F.3d 917, 937 (6th Cir. 2014) (quoting *Bradley v. Gen. Motors Corp.,* 512 F.2d 602, 604-05 (6th Cir.1975)) ("On questions of state law, this Court is bound by the rulings of the state supreme court.").  Gabe, the highlighted language needs work; not sure it reads correctly.

omitted) ("A judgment may also be interpreted if it is ambiguous.").  Additionally, "'[t]he legal operation and effect of a judgment must be ascertained by a construction and interpretation of it . . . Judgments must be construed as a whole, and so as to give effect to every word and part.  The entire judgment roll may be looked to for the purpose of interpretation.  *The legal effect, rather than the mere language used, governs.*'"  *In re J. F.*, 2007 WL 3071879 at *5 (Ohio App. 2d Dist. Oct. 19, 2007) (quoting *Hofer v. Hofer*, 42 N.E.2d 165, 167 (Ohio App. 9th Dist. 1940)) (emphasis in original); *Boyle v. Stroman*, 92 N.E.2d 693, 694 (Ohio App. 8th Dist. 1950) (same).[14]  Thus, based on these governing principles of Ohio law, this Court interprets the First Judgment and Second Judgment consistent with the entire record of *Criscione II*, and gives effect to every word of each judgment so as to effectuate the state court's intent and purpose in rendering the same.

In *Denham*, plaintiff-appellant Denham brought claims against two groups of defendants: a bar owner and one of its patrons whom she alleged caused her husband's death, as well as the City of New Carlisle (the "City") and the City's paramedics whom she alleged failed to save him.  *See* 741 N.E.2d 587, 588 (Ohio App. 2d Dist. 2000), *aff'd* 716 N.E.2d at 184.  The trial court granted summary judgment to the City and its paramedics based on immunity.  *See Denham*, 716 N.E.2d at 184.  Several weeks later, Denham filed a motion to dismiss under Ohio Civ. R. 41(A)(1), which the court characterized as voluntarily dismissing "the remaining parties to the suit" without prejudice.  *Id.* at 186.  The court held that Denham's voluntary dismissal without prejudice of the remaining parties to the lawsuit did not nullify the trial court's interlocutory dismissal of other parties, but rather made it

---

[14] *See also* 50 *Corpus Juris Secundum*, Construction of Ambiguous Judgments § 724 (2025) (citing *Hofer*, 42 N.E.2d at 167)  ("An ambiguous judgment should be construed as a whole so as to give effect to all parts thereof and to effectuate the intent and purpose of the court, to the extent possible."); *Id.*, Rules of Construction of Judgments § 725 (citing *Silver v. McKnight*, 49 N.E.2d 89 (Ohio App. 9th Dist. 1940)) ("In cases of ambiguity or doubt, the meaning of the judgment must be determined by that which preceded it and that which it was intended to execute.").

a final appealable order. *See id.* ("Denham contends that the trial court's summary judgment decision for New Carlisle is no longer an interlocutory order but is now a final appealable order. We find merit in this argument.").

Criscione resorts to *Myers* to support her contention that First Judgment never became a final judgment on the merits because the Second Judgment dismissed the "case" "without prejudice" and thereby nullified the First Judgment. (Doc. No. 19 at PageID#s 223-24.) But *Myers* does not support this proposition because the judgments in this case and in *Myers* are different. In that case, Myers asserted negligence claims against Mitchell, Acesta, and a John/Jane Doe for causing injuries Myers had sustained in a motorcycle accident, and she asserted breach of contract claims against State Farm and Nationwide for failing to pay uninsured motorist benefits. *See Myers*, 2003 WL 132406 at *1. The trial court first entered an order purporting to grant Nationwide summary judgment, but that judgment entry explicitly stated that it was 'partial,' and, as the Eighth District Court of Appeals noted, it included no language that it was 'final' or 'with prejudice.' *See id.*[15] The trial court then entered a later judgment entry which read "CASE IS DISMISSED AS TO ALL PARTIES. CASE IS NOW DISMISSED AS TO ALL PARTIES WITH PREJUDICE. FINAL." *Id.* at *1-2. On appeal to the Eighth District, Myers challenged only the summary judgment in favor of Nationwide, not the later dismissal order. *Id.* at *1, *3. The Eighth District reasoned that the later judgment entry, i.e., "Case is dismissed as to all parties. Case is now dismissed as to all parties with prejudice. Final." constituted the trial court's final judgment because "the [trial] court here did revise the judgment

---

[15] A review of the state court's docket reflects that the judgment entry read "Mtn for S.J. of Deft, Nationwide (filed 9/20/01) is granted. Second Mtn for S.J. of Deft Nationwide (filed 12/31/01) is granted. Partial. Vol. 2698 pg. 744. Notice Issued." (Entry of Jan. 31, 2002, *Myers v. State Farm Ins. et al.*, Case No. CV-00-405376, C.P. Cuyahoga County.)

29

when it dismissed the 'case' 'as to all parties' with prejudice. *The only reasonable construction of this language is that the court dismissed all claims against all parties, including those parties as to whom interlocutory judgments had been entered*." *Id.* at *2 (emphasis added).

While Criscione argues that *Myer*'s holding was predicated on the later judgment entry's reference to the "case," it is clear that it was not. Instead, it was predicated on the Eighth District's "reasonable construction" of the later judgment's reference to "all parties[,]" "final" and "with prejudice[,]" because the Eighth District specifically noted that the term "all parties with prejudice" includes "those parties as to whom interlocutory judgments had been entered." *Id.* at *2. Thus, contrary to Criscione's interpretation of *Myers*, it was *not* the later judgment entry's mere reference to the "case" that nullified the first judgment, but rather the Eighth District's reasonable construction of the later judgment to dismiss all of the parties, including Nationwide, with prejudice.

Criscione additionally cites to paragraph 29 of *Hutchinson v. Beazer E., Inc.*, 2006 WL 3743078 (Ohio App. 8th Dist. Dec. 21, 2006) to support her contention that "unless the journal entry specifies that a dismissal applies only to specific claims or parties, it applies to the entire action." (Doc. No. 19 at PageID# 224.) Criscione misreads *Hutchinson*. It does not support the general proposition that journal entries must explicitly specify the parties or claims they are dismissing to effectively dismiss them, but only the narrower proposition that without the text of a plaintiff's dismissal pursuant to Ohio R. Civ. P. 41(A)(1), courts rely on the general context in which the judgment is rendered to give it a "reasonable construction." *Myers*, 2006 WL 132406 at *2; *see also Hofer*, 42 N.E.2d at 167. In *Hutchinson*, the Hutchinsons filed claims against Tasco and "the remaining defendants" for asbestos exposure. 2006 WL 374078 at *1. The Hutchinsons then moved to amend their complaint, and Tasco moved for summary judgment. *See id.* The trial court conducted

30

a hearing on both motions and then granted Tasco's motion for summary judgment on all of the Hutchinsons' claims against Tasco, but "the case against the remaining defendants proceeded." *Id.* "Before empaneling [] the jury in the case against Beazer East [another defendant], the Hutchinsons *orally* dismissed their case pursuant to Civ.R. 41." *Id.* (emphasis added). Immediately thereafter, the trial court's "journal entry addressing the April 2003 dismissal of *Hutchinson I* : 'On April 7, 2003, the case was called for trial. A jury was ordered. Prior to empaneling and swearing the jury, the plaintiff, in open court and on the record, dismissed the case without prejudice pursuant to Civ.R. 41(A), subject to the right to refile within one year.'" *Id.* The Hutchinsons then refiled a second lawsuit asserting the same claims against Tasco and the "other defendants[,]" but the trial court granted Tasco's motion to dismiss based on res judicata. *Id.* at *2. The Hutchinsons appealed that dismissal, arguing that their own Ohio R. Civ. P. 41(A) dismissal of the first case without prejudice dissolved the interlocutory summary judgment in favor of Tasco. *Id.* at *3-4. The paragraph that Criscione relies upon reads as follows:

> Tasco argues that the dismissal applied only to defendant, Beazer East. They make this assertion based on a statement contained in the Hutchinsons' "Pretrial Statement and Case History," wherein they stated: 'On April 7, 2003 Plaintiffs voluntarily dismissed the Hutchinson case against Beazer East pursuant to Civ.R. 41(A).' However, the Hutchinsons claim that the court's entry demonstrates that the case was dismissed in its entirety.

> This is a case of 'he said, she said,' where the evidence needed to resolve this dispute, the transcript of the April 7, 2003 hearing, has not been provided to this court. Nevertheless, the court's entry clearly states that the 'case' was dismissed 'without prejudice pursuant to Civ.R. 41(A).' It is axiomatic that in Ohio a court speaks through its journal entries. Absent any transcript showing that the oral motion made by the Hutchinsons at trial applied only to Beazer East, we cannot say that the case was dismissed solely as to Beazer East.

*Id.* at *5 (internal citations omitted). The Eighth District therefore did rely on the journal entry's reference to a dismissal of the "case" to establish that the dismissal was not solely made as to the

remaining defendant, Beazer East, but only because the court lacked the "evidence needed to resolve th[e] dispute, the transcript of the April 7, 2003 hearing[,]" where the Hutchinsons had orally moved to dismiss under Ohio R. Civ. P. 41(A). *Id.* In other words, the court only resorted to interpreting the judgment entry's reference to the 'case' because it lacked evidence that the plaintiff intended to limit it only to defendant Beazer East. The circumstances of *Hutchinson*, therefore, are distinct from these because the court lacked the text of the plaintiff's oral motion under Ohio R. Civ. P. 41(A)(1), which controlled the effect of the first dismissal, but here, this Court can look to the Second Judgment— which controls the dismissal under Ohio R. Civ. P. 41(B)(1)— and the First Judgment for relevant context.

The Brook Park Defendants point to *Ullom v. Agoston*, 2021 WL 9816678 (Ohio C.P. Cuyahoga July 15, 2021), *aff'd*, 199 N.E.3d 693 (Ohio App. 8th Dist. 2022) to show that the Eighth District has more recently clarified that the dismissal of an entire case without prejudice does not allow the plaintiff to circumvent *Denham*. In *Ullom*, the plaintiffs asserted breach of contract and negligent misrepresentation claims against the Agostons regarding the sale of residential real estate, and a bad faith claim against Erie Insurance Company. *See* 2021 WL 9816678 at *1. The trial court granted the Agostons' motion for judgment on the pleadings, resolving the claims against the Agostons. *See id.* Thereafter, the Ulloms filed a Notice of Voluntary Dismissal Without Prejudice,[16] which stated only that "Now come plaintiffs Deena M. Ullom and Thomas James Ullom ("Plaintiffs"), pursuant to Ohio Civ.R. 41(A), and hereby voluntarily dismissed this *action* without prejudice." *See id.* (emphasis added). When the Ulloms filed a second suit against the Agostons

---

[16] *See also* Entry of Aug. 7, 2020, *Ullom et al. v. Agoston et al.*, Case No. CV-19-909957, C.P. Cuyahoga County.

based on the same sale, the Agostons again moved for judgment on the pleadings, this time asserting that the judgment on the pleadings which they obtained in the first suit precluded the Ulloms' claims in the second suit.  *See* 2021 WL 9816678 at *2.  The trial court agreed that res judicata barred the Ulloms' reasserted claims, reasoning as follows:

> There is a final valid decision on the merits by a court of competent jurisdiction.  This Court reached a valid, final decision on the merits in the original action with respect to the Agoston Defendants when it granted the Agostons' Motion for Judgment on the Pleadings on September 11, 2019.  The Plaintiffs could have appealed that Order within thirty (30) days of dismissing without prejudice the remaining defendant in the original case, Erie Insurance. The Plaintiffs did not appeal Case Number CV-19-909957.

*Id.* at *3.  Applying *Denham*, the court explained that

> Defendant Erie Insurance Company was the only party dismissed under 41(A)(1) on August 7, 2020. This did not void *every* claim brought against *every* defendant. Voluntary dismissal without prejudice under Ohio R. Civ. P. 41(A), which leaves the dismissed parties as if the suit had not been brought, applies only to those parties designated in the dismissal notice and does not nullify claims against defendants that were either not dismissed, or were dismissed earlier in the case.  It is not possible to voluntarily dismiss claims against a party, where the Court already dismissed the parties entirely and granted judgment in their favor.  Although Plaintiff's Notice of Voluntary Dismissal, filed on August 7, 2020, purports to dismiss the 'action' without prejudice, the only party left to be dismissed was Erie Insurance Company."

*Id.* at *5.  As the Brook Park Defendants note, the Eighth District affirmed this decision, agreeing that the Ulloms' "dismissed only the remaining party, Erie, thereby creating a final, appealable order as to the trial court's prior interlocutory order."  *Ullom*, 199 N.E.3d at 699.

    *Hutchinson* and *Ullom* underscore two key distinctions between a dismissal pursuant to Ohio R. Civ. P. 41(A)(1) and Ohio R. Civ. P. 41(B)(1).[17]  Under Ohio R. Civ. P. 41(A)(1), "a plaintiff, *without order of court*, may dismiss all claims asserted by that plaintiff against a defendant . . . by

---

[17] Neither Criscione nor the Brook Park Defendants directs the Court's attention to any Ohio case analyzing the preclusive effect of a trial court's interlocutory dismissal of one set of defendants with prejudice prior to the trial court's entry of dismissal without prejudice pursuant to Ohio R. Civ. P. 41(B)(1).

filing a notice [or stipulation] of dismissal[.]" Ohio R. Civ. P. 41(A)(1) (emphasis added). But under Ohio R. Civ. P. 41(B)(1), "[w]here the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim." Ohio R. Civ. P. 41(B)(1). First, they are distinct because the legally operative document for a dismissal under Ohio R. Civ. P. 41(A)(1) is the plaintiff's own "notice," not the court order. That is why, for instance, the court in *Hutchinson* indicated that its preference was to look to the plaintiff's oral notice under Ohio R. Civ. P. 41(A), not the judgment entry. *See also Bradley v. Dollar Gen.*, 975 N.E.2d 515, 522 (Ohio App. 5th Dist. 2012) ("*Denham* holds that in order to make a determination of whether a summary judgment decision is a final appealable order, we look beyond the summary judgment entry and examine the language of the plaintiff's Civ.R. 41(A) notice of dismissal. By contrast, the preclusive effect of a dismissal under Ohio R. Civ. P. 41(B)(1) must be limited to the court's judgment entry, not the plaintiff's notice of dismissal, because there is no notice of dismissal for a dismissal under Ohio R. Civ. P. 41(B)(1). Second, Ohio R. Civ. P. 41(B)(1) contains the pre-*Denham* reference to the dismissal of an "action" rather than "claims . . . against a defendant." Ohio R. Civ. P. 41. The Ohio Supreme Court explained:

> Civ.R. 41(A)(1)(a) was amended following this court's decision in *Denham*. Prior to the 2001 amendment, Civ.R. 41(A)(1) read: 'An action may be dismissed by the plaintiff without order of court . . . by filing a notice of dismissal at any time before the commencement of trial.'

> The key difference between the pre-*Denham* rule and the current rule is that the pre-*Denham* rule stated that 'an action may be dismissed by the plaintiff,' whereas the current rule reads that a plaintiff "may dismiss all claims asserted by that plaintiff against a defendant." *In* Denham*, this court essentially held that 'an action' in the pre-Denham version of the rule meant 'all claims' asserted against a particular defendant.* Civ.R. 41(A) was amended in 2001 'to reflect more precisely its interpretation by the Supreme Court in *Denham*[.]'

34

*Pattison v. W.W. Grainger, Inc.*, 897 N.E.2d 126, 128 (Ohio 2008) (cleaned up) (emphasis added). That explanation of *Denham*'s interpretation of "action" sheds light on how the Ohio Supreme Court would interpret the meaning of the term "action" in Ohio R. Civ. P. 41(B)(1).  According to *Pattison* and *Denham*, then, an "action" under Ohio R. Civ. P. 41 means "all claims asserted against a particular defendant."  *Id.*

Here, this Court predicts that the Ohio Supreme Court would apply the reasoning of *Denham* and *Ullom* to determine the preclusive effect of the dismissal entered under Ohio R. Civ. P. 41(B)(1) and that it would therefore reject that the Second Judgment nullified the First Judgment.  The most reasonable construction of these judgment entries supports the conclusion that the First Judgment was a final adjudication on the merits but not yet appealable, and then became appealable when the court entered the Second Judgment, as in *Ullom*.  *See* 199 N.E.3d at 699.

First, even though the First Judgment does include the "partial" language, it also indicates that the judgment was "FINAL" and "W/PREJ" and further clarifies that "ALL OTHER CLAIMS AND DEFENDANTS REMAIN AND ORDERS REMAIN AS SET."  (Doc. No. 14 at PageID# 107.) Critically, the Second Judgment expressly notes that the court dismissed the entire "case" *because* Criscione "failed to timely file trial brief as ordered in the case management order," and thereby "fail[ed] to prosecute."  Criscione had only failed to prosecute *the East Park Defendants*, so the "DWOP" is predicated on her failure as to those Defendants in particular.  (Doc. No. 20 at PageID# 228.)  At that time, the First Judgment had already established that the Brook Park Defendants did not remain in the suit, so when the trial court entered the Second Judgment, the East Park Defendants were the only remaining defendants.  Thus, the court dismissed the entire "case" simply because Criscione had no more claims against any remaining defendants.

Second, the Court agrees with the Brook Park Defendants' argument that the Second Judgment's statement that "ALL MOTIONS ARE MOOT" refers only to the motions pending at the time, not to the Brook Park Defendants' already-granted motion to dismiss.  (Doc. No. 20 at PageID# 228.)  There were five pending motions in limine at the time the court entered the Second Judgment, and there would be no reason for the court to moot a motion it had already decided to grant.  (Motions in Limine filed Sept. 9, 2023, *Criscione II*.)  Indeed, the docket in *Criscione II* shows that the court listed "moot" next to each of those motions but provided no indication of mootness as to the Brook Park Defendants' Motion to Dismiss.  (*Compare* Entry of May 4, 2023, *with* Entries of Aug. 23, 2023, *Criscione II*.)

Finally, Criscione moved to modify the Second Judgment to omit the language "for Plaintiff's failure to prosecute" but the Court denied her motion even after Criscione filed a notice purporting to withdraw it.  (*See* Entry of Sept. 9, 2023, *Criscione II*.)  That denial further supports the Brook Park Defendant's contention that the "for failure to prosecute" language was intentional and based on Criscione's failure to prosecute the only remaining defendants left to prosecute, i.e., the East Park Defendants.  (*Id.*)

Thus, to the extent that the Second Judgment's dismissal of the "case" relied on Ohio R. Civ. P. 41(B)'s reference to dismissing "an action[,]" the dismissal of the "case" meant simply that the trial court was dismissing all the remaining claims asserted against the East Park Defendants. Accordingly, the First Judgment became a final appealable order with res judicata effect and therefore

36

precludes Criscione from asserting the same claims in this action (Claims 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, and 18).[18]

## IV.    Conclusion

For the forgoing reasons, the Brook Park Defendants' Motion (Doc. No. 14.) is GRANTED and the East Park Defendants' Motion (Doc. No. 15) is DENIED.  Accordingly, the Court dismisses Claims 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, and 18 with respect to the Brook Park Defendants WITH PREJUDICE.


**IT IS SO ORDERED.**


                                                     *s/Pamela A. Barker*
                                                     PAMELA A. BARKER
Date:  June 6, 2025                                  U. S. DISTRICT JUDGE

---

[18] Because the Court has made a prediction of Ohio law based on how the Ohio Supreme Court would apply Ohio R. Civ. P. 41(B)(1), it has no need to consider the Brook Park Defendants' alternative request for certification of this question to the Ohio Supreme Court.  (Doc. No. 20 at PageID# 235.)