Motion No. 5103827



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

# Court of Common Pleas

**MOTION TO...**
July 15, 2023 09:01

By: BRIAN BARDWELL 0098423

Confirmation Nbr. 2910092

GINA CRISCIONE, ET AL.                    CV 23 976445

   vs.
                                       Judge:  NANCY MARGARET RUSSO

LAURA DIVINCENZO, ET AL.

**Pages Filed:** 11



IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **GINA CRISCIONE**, *et al.*<br>    *Plaintiffs,*<br>v.<br>**LAURA DIVINCENZO**, *et al.*<br>    *Defendants.* | Case No.: 23-CV-976445<br><br>Judge Nancy Margaret Russo |
| **PLAINTIFF ESTATE OF DOROTHY MANDANICI'S<br>MOTION TO COMPEL RESPONSES TO INTERROGATORIES** ||

Plaintiff Estate of Dorothy Mandanici respectfully moves the Court for an order compelling Defendant Sara Thurmer and Defendant East Park Care Center to properly respond to their interrogatories.

## FACTS

Plaintiffs first served discovery on Defendants on May 2, 2023, including a set of Rule 33 interrogatories directed to Defendant East Park Care Center, a set of interrogatories directed to Defendant Thurmer, and a set of Rule 34 requests for inspection directed to all Defendants. Responses were due on May 30. That date came and went, but Defendants had not responded to any of those requests.

On June 1, Plaintiffs asked Defendants to respond to discovery. Defendants said they were still working on responding but said it was their "hope" to have them complete the next week. Plaintiffs offered to grant Defendants an extension and asked for a date when they would be able to complete those responses. Plaintiffs received no response to that e-mail. The next week came and went with no discovery responses, as did the following week, and the week after that.

On June 27, Defendants finally responded to their interrogatories and requests for inspection.[1] Neither East Park nor Ms. Thurmer had sworn to their interrogatory responses, and their responses were larded with boilerplate objections. The same day, Plaintiffs alerted Defendants that the parties would need to discuss those responses and asked for verification pages for the interrogatories.

On June 28, Plaintiffs attempted to schedule a conference to discuss Defendants' discovery deficiencies. Defendants responded to that e-mail minutes later, but did not address the request to meet and confer. Plaintiffs e-mailed Defendants again, asking to schedule a conference to discuss Defendants' discovery deficiencies. Defendants did not respond to that request.

On June 29, Plaintiffs e-mailed a proposed joint motion for a protective order to Defendants and requested either their consent to file it or their proposed revisions. Defendants neither consented to filing the motion nor proposed any revisions. Later that day, Plaintiffs e-mailed Defendants again, noting that they were still waiting on a response to their request to meet and confer. Defendants did not respond until the weekend, offering to talk only before business hours the following Monday.

That Monday, Defendants' Rule 30(B)(5) designee admitted to having documents that were responsive to Plaintiffs' requests but had not yet been produced. When Defendants produced those documents the next day, Plaintiffs e-mailed to inquire about redactions and other records that had not yet been produced. Defendants did not respond to that e-mail.

Two days later, following Ms. Criscione's deposition, Plaintiffs asked again to discuss Defendants' discovery deficiencies. Defendants rejected that request.

---

[1] *See* Defendants' responses to Mandanici Requests for Inspection (attached as Ex. 59); East Park's responses to Mandanici's Interrogatories (attached as Ex. 60); Thurmer's responses to Mandanici's Interrogatories (attached as Ex. 61).

The next day, Plaintiffs asked again for Defendants' consent to file the protective order. Defendants did not respond to that request.

Defendants finally agreed to meet and confer following the Court's July 10 settlement conference. During that meeting, Defendants said they would obtain a verification for Ms. Thurmer's interrogatory responses, submit a proposed protective order, and re-examine their discovery responses. They would not agree to any definite timeline for providing additional records or responses to their requests, nor did they agree to provide any additional records or response at all.

As of this filing, Defendants have not submitted that proposed protective order, provided any further answers to East Park's interrogatories, produced sworn answers to any of Defendant Thurmer's interrogatories, or provided any additional documents in response to Plaintiffs' discovery demands.

## LAW & ARGUMENT

**I.   Ms. Criscione has in good faith attempted to confer with the East Park Defendants to obtain discovery without court action.**

"[A] party may move for an order compelling discovery," but only after he has "in good faith conferred or attempted to confer with the person or party failing to make discovery in an effort to obtain it without court action."[2] As detailed above, Plaintiffs repeatedly asked Defendants to meet and confer, but Defendants repeatedly ignored those requests, meeting to discuss their deficiencies only once after fact discovery had already closed.

---

[2] Civ.R. 37(A)(1).

II.     **Defendant Thurmer's objections to her interrogatories are unjustified.**

   A.     **Defendant Thurmer must answer her interrogatories under oath.**

Rule 33 requires that a party answer its interrogatories "under oath." But Ms. Thurmer has still—40 days after her responses were due—not answered any questions under oath.

   B.     **Interrogatory 1**

Interrogatory 1 asks Defendant Thurmer whether "all your responses to requests for production and requests for admission in this matter are the truth, the whole truth, and nothing but the truth." Defendant Thurmer objects that being asked whether she is telling the truth is "improper" and "inconsistent with the Civil Rules" because her attorneys prepared those responses.

But counsel's involvement in drafting responses does not absolve a party of the obligation to answer interrogatories about those responses; instead, Rule 33 permits interrogatories relating to "any matters that can be inquired into under Civ. R. 26(B)," which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

The need for answers to these questions is particularly acute because East Park's Rule 30(B)(5) designee testified under oath that at least some of the responses counsel prepared were not true. While counsel's prepared responses denied that "Ms. Criscione never threatened to physically injure Sara Thurmer," Defendant DiVincenzo confessed that no such threat ever occurred. And although counsel's prepared responses denied that "East Park policy did not prohibit Ms. Criscione from installing a camera in Ms. Mandanici's room," Ms. DiVincenzo admitted under oath that East Park had no such policy when Ms. Criscione installed the camera and has not implemented any such policy since.

If the parties are expected to narrow the issues to be disputed at trial, they cannot provide false information under their attorneys' names and hold back the truth until they are cornered in a deposition. Rule 33 provides the remedy for this problem, permitting parties to inquire into any relevant, nonprivileged matter.

Because the truth of a party's discovery responses is relevant, the Court should compel Defendants to answer Interrogatory 1.

### C. Interrogatory 2

Interrogatory 2 asks Defendant Thurmer to "Identify every phone number, e-mail address, and social media account you have used or controlled since April 1, 2017." Defendant Thurmer objects that the request is overly broad (but does not say why), that it is unduly burdensome (but does not say why), that the requested information is irrelevant (but does not say why), and that the request is not proportional to the needs of the case (but does not say why).

> **1. Because she relies on pure boilerplate, Ms. Thurmer has waived her overbreadth, undue-burden, relevance, and proportionality objections.**

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."[3] Parties may not simply assert "conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable."[4]

For instance, in *Bonewitz v. Red Ferris Chevrolet, Inc.*,[5] the plaintiff in a sexual-harassment suit subpoenaed an employee of her former employer whom she alleged to be

---

[3] *Koski v. Thunder Struck Transp., LLC*, 2021-Ohio-4404 at ¶ 31, (6th Dist. 2021) (citing *Superior Communications v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D.Cal.2009)).
[4] *Koski* at ¶ 31.
[5] 2001 Ohio App. LEXIS 4162, at *1 (9th Dist. Sep. 19, 2001).

involved in an affair with her harasser. The witness moved to quash the subpoena, relying on an affidavit saying that she had no personal knowledge of the plaintiff's situation, that she could not afford to comply with the subpoena because she was defending herself in another lawsuit, that complying would have an adverse effect on her health, and that complying would invade her personal privacy. But the trial court ordered her to comply with the subpoena, and the Ninth District affirmed, holding that the witness's detailed affidavit "did not present sufficient documentation to support her allegation of 'undue burden'":

> "Undue" has been defined as "exceeding or violating propriety or fitness; excessive, immoderate, unwarranted; contrary to justice, right, or law: unlawful." Without more, Winkler's statements that the deposition will cause her to spend more money on an attorney and could cause her high blood pressure to increase, do not constitute an "undue burden."[6]

Here, Defendant Thurmer has done even less to support her objections. She has merely incanted nearly every conceivable basis for objecting to discovery, without any supporting facts or argument. Because Defendant Thurmer has therefore waived her objections to Interrogatory 2, the Court should compel her to provide a full response.

### 2. Interrogatory 2 is not objectionable.

Even if Defendant Thurmer had not waived her objections, the Court should still reject them. The interrogatory is not overly broad or unduly burdensome. It merely asks her to identify accounts she has used since April 2017, when Ms. Mandanici first became a resident at East Park Care Center. That information is relevant for multiple reasons. For instance, Ms. Criscione is entitled to information about potential sources of discoverable communications about this case. Further, because Ms. Criscione must demonstrate that she did not actually commit telecommunications harassment against Ms. Thurmer, she must know what telecommunications

---

[6] *Bonewitz* at *5-6 (cleaned up).

services Ms. Thurmer was using so she can demonstrate that no harassing communications occurred.

### D.     Interrogatories 9 and 10

Interrogatory 9 notes Defendants' allegation that several people had contacted Defendant Thurmer to tell her that Ms. Criscione was criticizing her online, and requests that Ms. Thurmer identify and provide contact information for those people. Interrogatory 10 asks Defendant Thurmer to identify each employee who claims to have seen Ms. Criscione trespassing on East Park property.

Defendant Thurmer objects that these requests are overly broad (but does not say why), that they are unduly burdensome (but does not say why), that the requested information is irrelevant (but does not say why), and that the requests are not proportional to the needs of the case (but does not say why). As laid out above, Defendant Thurmer has waived all those objections.

The interrogatories are not overly broad or unduly burdensome, as they request nothing but lists of witnesses to specific acts, who Defendants themselves relied on in support of their attempt to imprison Ms. Criscione. That information is relevant, because it will allow Ms. Criscione to determine whether Defendants were honest when they reported her to the police, and to gain insight into the "mental distress" Ms. Thurmer claims to have been suffering as a result of those calls.

### E.     Interrogatory 14

Interrogatory 14 asks Defendant Thurmer to detail communications about Ms. Criscione's criminal case that were not disclosed in response to her requests for inspection. Defendant Thurmer objects that the request is overly broad (but does not say why), that it is unduly burdensome (but does not say why), that the requested information is irrelevant (but does

not say why), and that the request is not proportional to the needs of the case (but does not say why). As laid out above, Defendant Thurmer has waived all those objections.

Defendant Thurmer also objects that the interrogatory "seeks a narrative response that is better suited for a deposition." But a party may not object to a discovery demand simply because they would have used a different tactic to obtain the same information. On the contrary, Rule 26 makes clear that a party may use any of the various discovery vehicles "in any sequence." The Court should not endorse Defendants' attempts to force Ms. Criscione to undertake the expense of a deposition to obtain information that can be obtained with an interrogatory.

### III. Defendant East Park's objections to its interrogatories are unjustified.

#### A. Interrogatory 1

Interrogatory 1 asks East Park whether "all your responses to requests for production and requests for admission in this matter are the truth, the whole truth, and nothing but the truth." East Park objects that being asked whether it is telling the truth is "improper and inconsistent with the Civil Rules" because those responses are prepared by counsel.

For the reasons laid out above in Section II.A, this objection is improper, and the Court should therefore require East Park to provide a full response.

#### B. Interrogatories 4 through 6

These interrogatories ask East Park to identify "every resident who has complained that East Park was providing inadequate care to its residents from April 2017 forward," "every family member of a resident who has complained that East Park was providing inadequate care to its residents from April 2017 forward" and "every employee or agent who has complained that East Park was providing inadequate care to its residents from April 2017 forward."

East Park objects that each request "seeks information that is irrelevant and is not proportional to the needs of this case." But it does not explain why the information is irrelevant

or disproportional, and it has therefore waived both objections. But the information is relevant because it would allow Ms. Criscione to identify witnesses who could corroborate her claim that she had a good-faith belief that East Park was abusing, neglecting, or exploiting its residents, which is one of the elements of her whistleblower-retaliation claim.

East Park also objects that the requested information is protected by HIPAA and the physician-patient privilege. But it offers no explanation how these rules would apply to complaints to administrators, rather than doctors, or why they would apply to complaints from family or their own employees, who are not its patients in the first place.

Even when applied to complaints by residents, HIPAA's Privacy Rule permits the disclosure of protected health information for purposes of civil litigation. A covered entity such as East Park "may disclose protected health information in the course of any judicial or administrative proceeding … [i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal." 45 CFR § 164.512(e)(1)(ii)(B). All that is required to permit such a disclosure is notice from the requesting party "that reasonable efforts have been made by such party to secure a qualified protective order." East Park was served with that notice when Ms. Criscione first requested a protective order and again when she requested another.

And these records are not protected by physician-patient privilege, as the privilege only covers communications made to a "physician, advanced practice registered nurse, or dentist," Ohio Rev. Code § 2317.02(B)(1), that are "necessary to enable a physician, advanced practice registered nurse, or dentist to diagnose, treat, prescribe, or act for a patient." Ohio Rev. Code § 2317.02(B)(5)(a). Complaints to East Park's administration about bedbugs or bad food or broken

air vents are not protected, as they are neither made to a physician, nurse, or dentist, nor are they necessary to enable a physician, nurse or dentist to diagnose, treat, prescribe, or act for a patient.

### C. Interrogatories 12 and 13

These interrogatories ask East Park to identify "every employee East Park terminated from April 1, 2017 forward" and "every agency aide East Park who was the subject of a Do Not Return request from April 1, 2017 forward." East Park objects that each request "seeks information that is irrelevant and is not proportional to the needs of this case."

It does not explain why this information is irrelevant or disproportional, and it has therefore waived both objections. But the information is relevant because former employees can testify about East Park's operations, its staffing levels, its cleanliness, and its policies. The information is also relevant because Ms. Criscione has alleged that East Park retaliated against her by restricting workers' ability to communicate with her, and this information will establish that East Park terminated workers who undermined its attempts to retaliate.

### CONCLUSION

Plaintiffs have attempted in good faith to obtain Defendants' voluntary compliance with their obligations to answer each interrogatory "fully in writing" and "under oath", Civ.R. 33, but Defendants continue to rest on baseless boilerplate objections. The Court should strike their objections and compel them to provide full responses to each interrogatory.

Respectfully submitted,

*/s/Brian D. Bardwell*
Speech Law LLC
Brian D. Bardwell (0098423)
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law

William A. Carlin (0009144)
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
Phone: 216-831-4935
Fax: 216-831-9526
wcarlinesq@aol.com

*Attorneys for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

### CERTIFICATE OF SERVICE

I certify that on July 15, 2023, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(f).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*