**Motion No.** 5108986

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**MOTION FOR...**
**August 7, 2023 19:06**

By: BRIAN BARDWELL 0098423

Confirmation Nbr. 2929999

GINA CRISCIONE, ET AL.

vs.

LAURA DIVINCENZO, ET AL.

CV 23 976445

**Judge:** NANCY MARGARET RUSSO

**Pages Filed:** 32

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **GINA CRISCIONE**, *et al.*<br>*Plaintiffs,*<br>v.<br>**LAURA DIVINCENZO**, *et al.*<br>*Defendants.* | Case No.: 23-CV-976445<br><br>Judge Nancy Margaret Russo |

**PLAINTIFFS' MOTION FOR SANCTIONS**

Plaintiffs respectfully move the Court for an order sanctioning Defendants for violating the Court's July 18 order compelling full responses to outstanding discovery demands.

**FACTS**

Plaintiffs first served discovery on Defendants on May 2, 2023, including a set of Rule 33 interrogatories directed to Defendant East Park Care Center, a set of interrogatories directed to Defendant Thurmer, and a set of Rule 34 requests for inspection directed to all Defendants. Responses were due on May 30. That date came and went, but Defendants had not responded to any of those requests.

As laid out in Plaintiffs' motions to compel, Defendants spent the next 40 days ignoring and dodging Plaintiffs' attempts to resolve the deficiencies in their discovery responses. They agreed to discuss those deficiencies only after the Court's original discovery deadline had passed, and even then, they refused to commit to providing any additional information or documents beyond what they had provided already.

Plaintiffs moved to compel responses to 25 requests for inspection and 11 interrogatories, and the Court granted those motions on July 18, ordering Defendants to fully respond to all outstanding discovery demands no later than July 19 at 4 p.m.

Two minutes before that deadline, Defendants transmitted a letter to Plaintiffs admitting that they had spoliated evidence and saying they could therefore only produce evidence they still had. Even then, they said, they would only comply with the Court's order to answer discovery to the extent they deemed compliance "appropriate."[1]

The responses provided that day only supplemented their responses to Requests for Inspection 26, 31, and 41.[2] They did not provide any further response for the remaining 22 requests for inspection, or for any of the 11 interrogatories, nor have they made any additional disclosures since then.

Plaintiffs thereafter notified the Court by phone that Defendants had failed to comply with its order and that the vast majority of their responses remained incomplete.

As laid out below, Defendants remain in violation of the Court's July 18 order.

## LAW & ARGUMENT

### I. Because they failed to obey the Court's July 18 order to provide discovery, Defendants are subject to sanctions.

A party is subject to sanctions any time the "party or a party's officer, director, or managing agent … fails to obey an order to provide or permit discovery."[3]

Here, the Court ordered Defendants to respond to all their outstanding discovery requests, but they have responded to only a small fraction of those requests. Their July 19 productions included an incomplete response to Request for Inspection 26, as well as apparently complete responses to Requests for Inspection 31 and 41. For the remainder, they have neither obeyed the

[1] M.Ockerman letter to B.Bardwell, attached as Ex. 62.

[2] Request 26 sought "the staffing records required by 42 C.F.R. 483.35(g)(1) from April 2017 through May 2020." Defendants some records responsive to this request following the Court's order, but they still have not produced the daily census of East Park's residents for January 2020 or May 2020.

[3] Civ. R. 37(B)(1).

Court's order, sought additional time to obey that order, nor sought a protective order excusing them from producing any of the requested information.

Defendants have failed to obey the court's order to provide discovery on all the remaining requests. Specifically:

- Defendant Thurmer remains in violation of the Court's order compelling responses to Interrogatories 1, 2, 9, 10, and 14.
- Defendant East Park remains in violation of the Court's order compelling responses to Interrogatories 1, 4, 5, 6, 12, and 13.
- Defendants remain in violation of the Court's order compelling responses to Requests for Inspection 5, 6, 9, 11, 13, 16, 17, 18, 19, 15, 20, 26, 27, 28, 29, 33, 34, 36, 47, 48, 49, 56, and 63.

Because Defendants have failed to comply with the Court's July 18 order, they are subject to sanctions under Rule 37(B).

## II. Because Defendants have violated the Court's order compelling discovery of facts related to the identities, conduct, and motives of employees involved in retaliating against Plaintiffs, the Court should enter an order establishing the facts of East Park's retaliation as alleged in the Complaint.

When a party fails to obey an order to provide or permit discovery, the Court may enter an order "[d]irecting that the matters embraced in the order or other designated facts shall be taken as established for purposes of the action as the prevailing party claims."[4]

Here, East Park's refusal to identify witnesses with information about key facts in the case justifies an order directing that facts related to those witnesses shall be taken as Plaintiffs claim, as East Park's discovery misconduct has thwarted Plaintiffs' efforts to marshal evidence necessary to prove the allegations in their complaint.

For instance, the Complaint makes numerous allegations of neglect and retaliation by East Park employees. Requests for Inspection 27 and 28 therefore sought lists of employees and

[4] Civ. R. 37(B)(1)(a).

contractors who could testify to the conditions at the nursing home and the motives for its officers' retaliatory acts. But Defendants have refused to produce them based only on unadorned boilerplate objecting that the names of its employees are not relevant or proportional to the needs of the case. Even after the Court ordered production of those lists, East Park continues to refuse.

Likewise, Ms. Criscione has alleged that Defendants made false statements to the City of Brook Park in seeking to imprison Ms. Criscione for criticizing them.[5] Those false statements include allegations that Ms. Criscione trespassed on East Park property and that Defendant Thurmer suffered severe mental distress because "people in the industry" saw Ms. Criscione's Facebook posts about her.[6] Ms. Criscione has therefore sought the identity of each person who allegedly saw her trespassing and each person "in the industry" who saw her Facebook posts, but Defendants again refused to provide contact information for any of those people, relying only on the same boilerplate objections.

Even if East Park were to produce all this information now, it would not cure the prejudice caused by their delay. The Court's discovery cutoff has come and gone, and Plaintiffs no longer have sufficient time to reach out to all these witnesses to seek their voluntary cooperation or serve subpoenas to depose them.

Because Defendants' violation of the Court's July 18 order has irreparably prejudiced Plaintiffs' ability to prove allegations critical to their case, the Court should enter an order directing that those allegations are established as Ms. Criscione has claimed. A proposed order laying out the allegations in question is attached.

---

[5] Amended Complaint, ¶¶ 128–133.
[6] Amended Complaint, ¶¶ 63–64.

## III. Because Defendants have violated the Court's order compelling discovery of facts related to their assets and liabilities, the Court should enter an order prohibiting Defendants from introducing evidence limiting their exposure to punitive damages.

When a party fails to obey an order to provide or permit discovery, the Court may enter an order "[p]rohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."[7]

Here, the Court explicitly directed the parties to proceed with discovery on punitive damages in its May 8 order bifurcating the trial, and Plaintiffs served discovery demanding evidence of Defendants' net worth. Specifically, Requests for Inspection 12 through 19 sought access to business plans, loan applications, contracts with service providers, tax returns, business ledgers, profit and loss statements, and bank statements.

Defendants made the same boilerplate relevance and proportionality objections to each request, but they agreed to produce tax returns and profit and loss statements "upon execution of a stipulated protective order." Despite that promise, they ignored requests to stipulate to a protective order. When the Court finally entered a protective order anyway, Defendants still did not produce those records. And when the Court ordered Defendants to produce those records, they still refused.

Plaintiffs also served a separate set of discovery demands related to punitive damages on July 6.[8] Responses were due on August 3, but Defendants have not responded to those requests in any way, and Plaintiffs therefore have no documents with which to establish any limits on punitive damages that could be imposed in this case.

---

[7] Civ. R. 37(B)(1)(b)–(c).

[8] Attached as Exhibits 63–65.

Because Defendants failed to obey the Court's July 18 order permitting discovery into their potential liability for punitive damages, the Court should enter an order prohibiting them from introducing evidence of loans, debts, liabilities or other facts that would limit their exposure to punitive damages under Ohio Rev. Code § 2315.21. A proposed order is attached.

## IV. Because Defendants have violated the Court's order compelling discovery of facts related to their affirmative defenses, the Court should enter an order striking those defenses and prohibiting Defendants from introducing evidence supporting them.

When a party fails to obey an order to provide or permit discovery, the Court may enter an order "[p]rohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" or "[s]triking pleadings in whole or in part."[9]

Here, Defendants have floated a raft of affirmative defenses—many with no discernible basis in fact—but they have refused to produce documents supporting those defenses and disobeyed the Court's order directing them to do so. For instance, they allege that they have been improperly served; that the Court lacks personal jurisdiction over some number of Defendants; that the claims at issue are subject to arbitration; that the claims are barred by the statute of limitations, waiver, estoppel, and laches; that Defendants are entitled to setoffs, credits, and apportionment; and that there were superseding or intervening causes for Ms. Criscione's injuries.[10]

Because Defendants did not produce those documents as part of their obligation to make initial disclosures under Rule 26(B)(3)(a)(ii), Plaintiffs explicitly requested them in Request for Inspection 5, which sought "documents supporting each affirmative defense you have asserted."

---

[9] Civ. R. 37(B)(1)(b)–(c).
[10] Answer to Amended Complaint, 13–19.

But Defendants objected that the request was "premature" because discovery is ongoing, and that the documents establishing their affirmative defenses were protected from disclosure. But even now—with discovery closed, and with an order compelling the disclosure of these documents—Defendants continue to refuse to produce them.

Plaintiffs are therefore without any understanding which defendant intends to prove at trial that the court lacks personal jurisdiction; which claims are barred by waiver or estoppel; which bills to Defendants remain outstanding; and which events are superseding causes of which injuries.

Because Defendants failed to obey the Court's July 18 order permitting discovery into their affirmative defenses, the Court should enter an order prohibiting them from supporting those defenses and striking its first through thirty-seventh defenses from its Answers. A proposed order is attached.

## V. Because Defendants have violated the Court's order compelling discovery, the Court should enter an order to pay Plaintiffs' reasonable expenses caused by their failure to make those disclosures voluntarily.

When a party fails to obey an order to provide or permit discovery, "the court shall order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure."[11] In the absence of special circumstances not applicable here, "the imposition of attorney fees for failure to timely provide discovery is mandatory."[12]

For instance, in *Roth v. Schildhouse*, No. 75617, 2000 Ohio App. LEXIS 2029 (8th Dist.), the husband in a divorce action refused to produce requested documents related to a child-

---

[11] Civ. R. 37 (B)(3). The rule provides exceptions to this mandatory fee-shifting provision, none of which are applicable here.

[12] *Shikner v. S & P Solutions*, 2006-Ohio-1339, ¶ 14 (8th Dist.)

support modification, so the wife moved to compel their production and requested attorney fees. While the court granted the motion to compel, it denied the motion for attorney fees, holding that the wife was required, but failed, to produce evidence of what fees would be reasonable. But the Eighth District reversed, holding that when a court orders a party to make discovery, "the award of reasonable expenses and attorney fees … is *mandatory* 'unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.'"

Because the Court here has already entered an order compelling Defendants to provide discovery, attorney's fees are mandatory unless Defendants' failure was substantially justified or other circumstances make an award of expenses unjust. Neither is true here. As the Court noted in its order compelling repsonses, if Defendants truly believed their refusal to produce discovery responses was justified, they could have and would have moved for a protective order. Instead, Defendants ignored Plaintiffs' attempts to jointly request a protective order and instead lodged boilerplate objections insisting that nearly every discovery demand was irrelevant and not proportional to the needs of the case, with no explanation why that was true. Their belated and rejected oppositions to Plaintiffs' motions to compel provide little in the way of justification for the vast majority of the requests made.

Because Defendants' failure to provide discovery—both voluntarily and after being ordered to do so—was not substantially justified and because there are no circumstances making such an order unjust, the Court should award Plaintiffs their expenses incurred in making the motion to compel and now in enforcing the order granting it. A proposed order is attached.

## CONCLUSION

Plaintiffs attempted in good faith to obtain Defendants' voluntary compliance with their discovery obligations, but Defendants have refused to cooperate in that process, and they now

refuse to comply with the Court's order directing them to do so. Their refusal has forced Plaintiffs to undertake substantial expense to secure that information and thwarted their ability to prepare for trial. The Court should grant Plaintiffs' motion for sanctions and cure those injuries by entering the attached order.

Respectfully submitted,

*/s/Brian D. Bardwell*
Speech Law LLC
Brian D. Bardwell (0098423)
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law

William A. Carlin (0009144)
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
Phone: 216-831-4935
Fax: 216-831-9526
wcarlinesq@aol.com

*Attorneys for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

## CERTIFICATE OF SERVICE

I certify that on August 7, 2023, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(f).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*



HANNA CAMPBELL & POWELL, LLP

July 19, 2023

***Via e-mail:*** brian.bardwell@speech.law
Brian D. Bardwell, Esq.
Speech Law, LLC
1265 West Sixth Street, Suite 400
Cleveland OH 44113-1326

**Re:** ***Gina Criscione, et al. v. Laura DiVincenzo, et al.***
**Cuyahoga County Court of Common Pleas Case No. CV 23 976445**

Dear Mr. Bardwell:

Attached is supplemental response to your Request for Production of Documents No. 26. We continue our attempts to locate additional responsive documents. However, as explained, the facility was sold and these Defendants did not retain these records.

Supplemental response to Request for Production No. 28: We have been able to identify potential agencies that we utilized. They include Anchor Medical Staffing, Select Ohio Staffing, LLC, and First Choice Medical Staffing. We are in the process of attempting to identify the individual aides, and will supplement.

Supplemental response to Request for Production No. 31: Are attached. We continue our attempts to locate additional responsive documents. However, as explained, the facility was sold and these Defendants did not retain these records.

Supplemental response to Request for Production No. 41: Are attached. We continue our attempts to locate additional responsive documents. However, as explained, the facility was sold and these Defendants did not retain these records.

We believe that we have complied with your requests to the extent that we can and is appropriate. If you choose to advise the court that we have not complied with the Motion to Compel, we ask you to also advise the Court that the Motion to Compel failed to reference our July 14, 2023 correspondence. Further, in your Motion to Compel it included discovery requests that were not discussed during the meet and confer, in accordance with Civ. R. 37(A).

Very truly yours,

HANNA, CAMPBELL & POWELL, LLP

Michael Ockerma

MO/amj
Attachments – Share File
<<HCP #1296240-v1>>

PLAINTIFF'S EXHIBIT 62

Michael Ockerman · 373[...]100 · Akron, Ohio 44333
(P) 330.670.7338 [...]kerman@hcplaw.net

Electronically Filed 08/07/2023 19:06 / MOTION / CV 23 976445 / Confirmation Nbr. 2929999 / BATCH

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **GINA CRISCIONE**, *et al.*<br>*Plaintiffs,*<br>v.<br>**LAURA DIVINCENZO**, *et al.*<br>*Defendants.* | Case No.: 23-CV-976445<br><br>Judge Nancy Margaret Russo |

**PLAINTIFF ESTATE OF DOROTHY MANDANICI'S REQUESTS FOR INSPECTION TO DEFENDANT EAST PARK CARE CENTER**

Under Civ. R. 34, Plaintiff Estate of Dorothy Mandanici requests that Defendant East Park Care Center respond to these requests for production within 28 days of service.

**INSTRUCTIONS**

1. **Definitions.** In answering each request, use the following definitions:

A. The word "**person**" means any natural person, firm, partnership, association, corporation (whether public or private), governmental agency or entity, joint venture, or any other form of business entity.

B. The term "**document**" or "**documents**" means the original or a copy, regardless of origin or location, of any writing or records of any type or description, whether official or unofficial, including, but not limited to, the original or any copy of any book, pamphlet, periodical, letter, memorandum, telegram, report, record, statement, study, inter- or intra-office communication, handwritten or other note, working paper, publication, permit, ledger and/or journal, whether general or special, chart, paper, graph, survey, index tape, disk, data sheet or data-processing card, or any other written, recorded, transcribed, filed, or graphic matter, however produced or reproduced, to which you have had access or now have access. "Document" or "documents" also includes any magnetically, mechanically, and/or electronically stored, maintained, and/or recorded data, whether the data consists of words, symbols, numbers, graphs, or other matters, including but not limited to email and text messages as well as messages on any social-media or other electronic platform, website, or application (e.g., messages in Facebook messenger, Tweets, Twitter direct messages, or Snapchat).

C. "**Identify**" means:

1. With respect to any individual person: to state, to the extent known, the person's name, [illegible] st known home address, last known home te[illegible] own business address, last known

PLAINTIFF'S EXHIBIT 63

business telephone number, last known employer, and last known job title. If you do not know the person's name, provide a physical description of the person instead.

2. With respect to a communication: the place of the communication, the date and time of the communication, the participants in the communication, and the substance of the communication.

D. "**And**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

E. The term "**current**" means as of the date of service of these request.

F. "**Any**" includes the word "all," and "**all**" includes the word "any."

G. "**Relate to**" and "**relating to**" mean regarding, concerning, containing, consisting of, referring to, reflecting, supporting, demonstrating, showing, identifying, mentioning, contradicting, prepared in connection with, used in preparation for, pertaining to, having any relationship to, evidencing, constituting evidence of, or being in any way legally, logically, or factually connected with the matter discussed.

2. For each request or part of a request that you object to as vague, please seek clarification as to the scope of the request.[1]

3. **Privileges:** For each request or part thereof that you refuse to answer on grounds of privilege, state:

A. The specific privilege asserted;

B. The basis for the privilege; and

C. The identity of the documents and/or information claimed to be privileged.

4. Plaintiff requests that, to preserve paper and reduce copying costs, where feasible, documents responsive to the requests below be provided through an online file-sharing service rather in hard copy. If Defendants do not have such a service available, Plaintiff can provide one free of charge. Plaintiff requests that, with the exceptions noted below, each page of each document be Bates-stamped for identification.

5. Some of these requests are directed to electronically stored information, including e-mails and word-processing documents stored on your computer(s). Where practical, responsive information should be produced in native format, not converted to images or printouts. Plaintiff does not require that such documents be produced with Bates stamps, provided each document has a unique file name.

6. Please organize responses to the requests for production of documents so that it can be determined which documents respond to which request.

[1] *See, e.g.*, *Bottoms v. Liberty Life Assur. Co. of Bos.*, No. 11-CV-01606-PAB-CBS, 2011 WL 6181423, at *7 (D. Colo. Dec. 13, 2011) ("The responding party is obligated to reasonably construe the discovery requests ... and cannot evade its obligations under Rules 33 and 34 by summarily dismissing an interrogatory or request for production as 'overbroad.'").

**REQUESTS FOR INSPECTION**

1. Produce monthly statements for all checking and/or savings accounts, including credit union accounts, certificates of deposit, 401(k) accounts and IRAs maintained by you, individually and/or jointly with any other or others, or any other accounts over which you have had signature authority in any other capacity (regardless of whether or not the account or accounts have been closed) from July 1, 2018 forward.

   **RESPONSE:**

2. Produce all monthly statements, receipts and records of all debit card, credit card and/or charge account held, used or maintained by you individually and/or jointly with any other or others, or any other accounts for which you were or are authorized to charge purchases to the accounts of another person or entity (regardless of whether or not the account or accounts have been closed), from July 1, 2018 forward.

   **RESPONSE:**

3. Produce all stock certificates, bond certificates, mutual funds certificates, and any other evidence of ownership or of any interest in any securities, investments, mutual funds, liquid asset funds, corporation, fund or trust fund naming you individually and/or jointly with any other or others, as the owner of the same from July 1, 2018 forward.

   **RESPONSE:**

4. Produce all federal, state, and local income tax returns filed by you individually or jointly with any others for tax years beginning January 1, 2017, and later, including accompanying schedules, attachments, worksheets used in preparing them, requests for tax extensions, and all 1099, K-1 (IRS Form 1065) and W-2 forms received for the same period.

   **RESPONSE:**

5. Produce all resumes, employment application forms, letters, notices or other papers relating to any effort on your part to investigate employment opportunities for yourself from July 1, 2018 forward.

   **RESPONSE:**

6. Produce all criminal warnings, warrants, indictments and/or accusations issued against you by any legal authority.

   **RESPONSE:**

7. Produce all personal financial statements and/or net worth statements submitted to any bank, lending institution, individual or any other entity from July 1, 2018 forward.

   **RESPONSE:**

8. Produce all promissory notes, stock option agreements, or other instruments evidencing any financial obligation due you now or in the future.

**RESPONSE:**

9. Produce all documents and/or letters received by you at any time from July 1, 2017 forward from any real estate agent, accountant, bank officer, stock broker, or any other person or entity, notifying you of the value of your interest in any corporation, trust, reversionary interest, or in any real or personal property or any other asset.

**RESPONSE:**

10. Produce all documents or other instruments creating a testamentary trust, *inter vivos* trust or other trust in which you are a beneficiary or may reasonably expect to receive some financial distribution now or in the future.

**RESPONSE:**

11. Any and all documents, memoranda, closing statements or writings relating to any interest you had or may have in real estate, whether as owner, co-owner, fiduciary, trust beneficiary (vested or contingent), partner, limited partner, shareholder, joint venturer, mortgagee, developer, manager or otherwise; and copies of all real estate mortgages held by you, or by any entity (including but not or otherwise; and copies of all real estate mortgages held by you, or by any entity (including but not limited to realty trusts, partnerships or corporations) in which you have or had a present or contingent interest from July 1, 2018 forward.

**RESPONSE:**

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

**CERTIFICATE OF SERVICE**

I certify that on July 6, 2023, this document was served on opposing counsel as provided by Civ.

R. 5(B)(2)(b)(f).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **GINA CRISCIONE**, *et al.*<br>*Plaintiffs*,<br>v.<br>**LAURA DIVINCENZO**, *et al.*<br>*Defendants.* | Case No.: 23-CV-976445<br><br>Judge Nancy Margaret Russo |

**PLAINTIFF ESTATE OF DOROTHY MANDANICI'S REQUESTS FOR INSPECTION TO DEFENDANT LAURA DIVINCENZO**

Under Civ. R. 34, Plaintiff Estate of Dorothy Mandanici requests that Defendant Laura DiVincenzo respond to these requests for production within 28 days of service.

**INSTRUCTIONS**

1. **Definitions.** In answering each request, use the following definitions:

A. The word "**person**" means any natural person, firm, partnership, association, corporation (whether public or private), governmental agency or entity, joint venture, or any other form of business entity.

B. The term "**document**" or "**documents**" means the original or a copy, regardless of origin or location, of any writing or records of any type or description, whether official or unofficial, including, but not limited to, the original or any copy of any book, pamphlet, periodical, letter, memorandum, telegram, report, record, statement, study, inter- or intra-office communication, handwritten or other note, working paper, publication, permit, ledger and/or journal, whether general or special, chart, paper, graph, survey, index tape, disk, data sheet or data-processing card, or any other written, recorded, transcribed, filed, or graphic matter, however produced or reproduced, to which you have had access or now have access. "Document" or "documents" also includes any magnetically, mechanically, and/or electronically stored, maintained, and/or recorded data, whether the data consists of words, symbols, numbers, graphs, or other matters, including but not limited to email and text messages as well as messages on any social-media or other electronic platform, website, or application (e.g., messages in Facebook messenger, Tweets, Twitter direct messages, or Snapchat).

C. "**Identify**" means:

1. With respect to any individual person: to state, to the extent known, the person's nam[illegible] last known home address, last known home [illegible] nown business address, last known

PLAINTIFF'S EXHIBIT 64

business telephone number, last known employer, and last known job title. If you do not know the person's name, provide a physical description of the person instead.

2. With respect to a communication: the place of the communication, the date and time of the communication, the participants in the communication, and the substance of the communication.

D. "**And**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

E. The term "**current**" means as of the date of service of these request.

F. "**Any**" includes the word "all," and "**all**" includes the word "any."

G. "**Relate to**" and "**relating to**" mean regarding, concerning, containing, consisting of, referring to, reflecting, supporting, demonstrating, showing, identifying, mentioning, contradicting, prepared in connection with, used in preparation for, pertaining to, having any relationship to, evidencing, constituting evidence of, or being in any way legally, logically, or factually connected with the matter discussed.

2. For each request or part of a request that you object to as vague, please seek clarification as to the scope of the request.[1]

3. **Privileges:** For each request or part thereof that you refuse to answer on grounds of privilege, state:

A. The specific privilege asserted;

B. The basis for the privilege; and

C. The identity of the documents and/or information claimed to be privileged.

4. Plaintiff requests that, to preserve paper and reduce copying costs, where feasible, documents responsive to the requests below be provided through an online file-sharing service rather in hard copy. If Defendants do not have such a service available, Plaintiff can provide one free of charge. Plaintiff requests that, with the exceptions noted below, each page of each document be Bates-stamped for identification.

5. Some of these requests are directed to electronically stored information, including e-mails and word-processing documents stored on your computer(s). Where practical, responsive information should be produced in native format, not converted to images or printouts. Plaintiff does not require that such documents be produced with Bates stamps, provided each document has a unique file name.

6. Please organize responses to the requests for production of documents so that it can be determined which documents respond to which request.

---

[1] *See, e.g.*, *Bottoms v. Liberty Life Assur. Co. of Bos.*, No. 11-CV-01606-PAB-CBS, 2011 WL 6181423, at *7 (D. Colo. Dec. 13, 2011) ("The responding party is obligated to reasonably construe the discovery requests ... and cannot evade its obligations under Rules 33 and 34 by summarily dismissing an interrogatory or request for production as 'overbroad.'").

**REQUESTS FOR INSPECTION**

1. Produce monthly statements for all checking and/or savings accounts, including credit union accounts, certificates of deposit, 401(k) accounts and IRAs maintained by you, individually and/or jointly with any other or others, or any other accounts over which you have had signature authority in any other capacity (regardless of whether or not the account or accounts have been closed) from July 1, 2018 forward.

   **RESPONSE:**

2. Produce all monthly statements, receipts and records of all debit card, credit card and/or charge account held, used or maintained by you individually and/or jointly with any other or others, or any other accounts for which you were or are authorized to charge purchases to the accounts of another person or entity (regardless of whether or not the account or accounts have been closed), from July 1, 2018 forward.

   **RESPONSE:**

3. Produce all stock certificates, bond certificates, mutual funds certificates, and any other evidence of ownership or of any interest in any securities, investments, mutual funds, liquid asset funds, corporation, fund or trust fund naming you individually and/or jointly with any other or others, as the owner of the same from July 1, 2018 forward.

   **RESPONSE:**

4. Produce all federal, state, and local income tax returns filed by you individually or jointly with any others for tax years beginning January 1, 2017, and later, including accompanying schedules, attachments, worksheets used in preparing them, requests for tax extensions, and all 1099, K-1 (IRS Form 1065) and W-2 forms received for the same period.

   **RESPONSE:**

5. Produce all resumes, employment application forms, letters, notices or other papers relating to any effort on your part to investigate employment opportunities for yourself from July 1, 2018 forward.

   **RESPONSE:**

6. Produce all criminal warnings, warrants, indictments and/or accusations issued against you by any legal authority.

   **RESPONSE:**

7. Produce all personal financial statements and/or net worth statements submitted to any bank, lending institution, individual or any other entity from July 1, 2018 forward.

   **RESPONSE:**

8. Produce all promissory notes, stock option agreements, or other instruments evidencing any financial obligation due you now or in the future.

**RESPONSE:**

9. Produce all documents and/or letters received by you at any time from July 1, 2017 forward from any real estate agent, accountant, bank officer, stock broker, or any other person or entity, notifying you of the value of your interest in any corporation, trust, reversionary interest, or in any real or personal property or any other asset.

**RESPONSE:**

10. Produce all documents or other instruments creating a testamentary trust, *inter vivos* trust or other trust in which you are a beneficiary or may reasonably expect to receive some financial distribution now or in the future.

**RESPONSE:**

11. Any and all documents, memoranda, closing statements or writings relating to any interest you had or may have in real estate, whether as owner, co-owner, fiduciary, trust beneficiary (vested or contingent), partner, limited partner, shareholder, joint venturer, mortgagee, developer, manager or otherwise; and copies of all real estate mortgages held by you, or by any entity (including but not or otherwise; and copies of all real estate mortgages held by you, or by any entity (including but not limited to realty trusts, partnerships or corporations) in which you have or had a present or contingent interest from July 1, 2018 forward.

**RESPONSE:**

Respectfully submitted,

*/s/Brian D. Bardwell*

Brian D. Bardwell (0098423)
Speech Law, LLC
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

**CERTIFICATE OF SERVICE**

I certify that on July 6, 2023, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(b)(f).

*/s/Brian D. Bardwell*

Brian D. Bardwell (0098423)
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **GINA CRISCIONE**, *et al.*<br>*Plaintiffs,*<br>v.<br>**LAURA DIVINCENZO**, *et al.*<br>*Defendants.* | Case No.: 23-CV-976445<br><br>Judge Nancy Margaret Russo |

**PLAINTIFF ESTATE OF DOROTHY MANDANICI'S REQUESTS FOR INSPECTION TO DEFENDANT SARA THURMER**

Under Civ. R. 34, Plaintiff Estate of Dorothy Mandanici requests that Defendant Sara Thurmer respond to these requests for production within 28 days of service.

**INSTRUCTIONS**

1. **Definitions.** In answering each request, use the following definitions:

A. The word "**person**" means any natural person, firm, partnership, association, corporation (whether public or private), governmental agency or entity, joint venture, or any other form of business entity.

B. The term "**document**" or "**documents**" means the original or a copy, regardless of origin or location, of any writing or records of any type or description, whether official or unofficial, including, but not limited to, the original or any copy of any book, pamphlet, periodical, letter, memorandum, telegram, report, record, statement, study, inter- or intra-office communication, handwritten or other note, working paper, publication, permit, ledger and/or journal, whether general or special, chart, paper, graph, survey, index tape, disk, data sheet or data-processing card, or any other written, recorded, transcribed, filed, or graphic matter, however produced or reproduced, to which you have had access or now have access. "Document" or "documents" also includes any magnetically, mechanically, and/or electronically stored, maintained, and/or recorded data, whether the data consists of words, symbols, numbers, graphs, or other matters, including but not limited to email and text messages as well as messages on any social-media or other electronic platform, website, or application (e.g., messages in Facebook messenger, Tweets, Twitter direct messages, or Snapchat).

C. "**Identify**" means:

1. With respect to any individual person: to state, to the extent known, the person's name, sex, approximate age, last known home address, last known hom[illegible] known business address, last known

PLAINTIFF'S EXHIBIT 65

business telephone number, last known employer, and last known job title. If you do not know the person's name, provide a physical description of the person instead.

2. With respect to a communication: the place of the communication, the date and time of the communication, the participants in the communication, and the substance of the communication.

D. "**And**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope.

E. The term "**current**" means as of the date of service of these request.

F. "**Any**" includes the word "all," and "**all**" includes the word "any."

G. "**Relate to**" and "**relating to**" mean regarding, concerning, containing, consisting of, referring to, reflecting, supporting, demonstrating, showing, identifying, mentioning, contradicting, prepared in connection with, used in preparation for, pertaining to, having any relationship to, evidencing, constituting evidence of, or being in any way legally, logically, or factually connected with the matter discussed.

2. For each request or part of a request that you object to as vague, please seek clarification as to the scope of the request.[1]

3. **Privileges:** For each request or part thereof that you refuse to answer on grounds of privilege, state:

A. The specific privilege asserted;

B. The basis for the privilege; and

C. The identity of the documents and/or information claimed to be privileged.

4. Plaintiff requests that, to preserve paper and reduce copying costs, where feasible, documents responsive to the requests below be provided through an online file-sharing service rather in hard copy. If Defendants do not have such a service available, Plaintiff can provide one free of charge. Plaintiff requests that, with the exceptions noted below, each page of each document be Bates-stamped for identification.

5. Some of these requests are directed to electronically stored information, including e-mails and word-processing documents stored on your computer(s). Where practical, responsive information should be produced in native format, not converted to images or printouts. Plaintiff does not require that such documents be produced with Bates stamps, provided each document has a unique file name.

6. Please organize responses to the requests for production of documents so that it can be determined which documents respond to which request.

---

[1] *See, e.g.*, *Bottoms v. Liberty Life Assur. Co. of Bos.*, No. 11-CV-01606-PAB-CBS, 2011 WL 6181423, at *7 (D. Colo. Dec. 13, 2011) ("The responding party is obligated to reasonably construe the discovery requests ... and cannot evade its obligations under Rules 33 and 34 by summarily dismissing an interrogatory or request for production as 'overbroad.'").

**REQUESTS FOR INSPECTION**

1. Produce monthly statements for all checking and/or savings accounts, including credit union accounts, certificates of deposit, 401(k) accounts and IRAs maintained by you, individually and/or jointly with any other or others, or any other accounts over which you have had signature authority in any other capacity (regardless of whether or not the account or accounts have been closed) from July 1, 2018 forward.

   **RESPONSE:**

2. Produce all monthly statements, receipts and records of all debit card, credit card and/or charge account held, used or maintained by you individually and/or jointly with any other or others, or any other accounts for which you were or are authorized to charge purchases to the accounts of another person or entity (regardless of whether or not the account or accounts have been closed), from July 1, 2018 forward.

   **RESPONSE:**

3. Produce all stock certificates, bond certificates, mutual funds certificates, and any other evidence of ownership or of any interest in any securities, investments, mutual funds, liquid asset funds, corporation, fund or trust fund naming you individually and/or jointly with any other or others, as the owner of the same from July 1, 2018 forward.

   **RESPONSE:**

4. Produce all federal, state, and local income tax returns filed by you individually or jointly with any others for tax years beginning January 1, 2017, and later, including accompanying schedules, attachments, worksheets used in preparing them, requests for tax extensions, and all 1099, K-1 (IRS Form 1065) and W-2 forms received for the same period.

   **RESPONSE:**

5. Produce all resumes, employment application forms, letters, notices or other papers relating to any effort on your part to investigate employment opportunities for yourself from July 1, 2018 forward.

   **RESPONSE:**

6. Produce all criminal warnings, warrants, indictments and/or accusations issued against you by any legal authority.

   **RESPONSE:**

7. Produce all personal financial statements and/or net worth statements submitted to any bank, lending institution, individual or any other entity from July 1, 2018 forward.

   **RESPONSE:**

8. Produce all promissory notes, stock option agreements, or other instruments evidencing any financial obligation due you now or in the future.

**RESPONSE:**

9. Produce all documents and/or letters received by you at any time from July 1, 2017 forward from any real estate agent, accountant, bank officer, stock broker, or any other person or entity, notifying you of the value of your interest in any corporation, trust, reversionary interest, or in any real or personal property or any other asset.

**RESPONSE:**

10. Produce all documents or other instruments creating a testamentary trust, *inter vivos* trust or other trust in which you are a beneficiary or may reasonably expect to receive some financial distribution now or in the future.

**RESPONSE:**

11. Any and all documents, memoranda, closing statements or writings relating to any interest you had or may have in real estate, whether as owner, co-owner, fiduciary, trust beneficiary (vested or contingent), partner, limited partner, shareholder, joint venturer, mortgagee, developer, manager or otherwise; and copies of all real estate mortgages held by you, or by any entity (including but not or otherwise; and copies of all real estate mortgages held by you, or by any entity (including but not limited to realty trusts, partnerships or corporations) in which you have or had a present or contingent interest from July 1, 2018 forward.

**RESPONSE:**

Respectfully submitted,

*/s/Brian D. Bardwell*

Brian D. Bardwell (0098423)
Speech Law, LLC
1265 West Sixth Street, Suite 400
Cleveland, OH 44113-1326
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

**CERTIFICATE OF SERVICE**

I certify that on July 6, 2023, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(b)(f).

*/s/Brian D. Bardwell*

Brian D. Bardwell (0098423)
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| GINA CRISCIONE, *et al.* *Plaintiffs,* v. LAURA DIVINCENZO, *et al.* *Defendants.* | Case No.: 23-CV-976445<br>Judge Nancy Margaret Russo |
|---|---|

**PROPOSED ORDER GRANTING PLAINTIFFS' MOTION FOR SANCTIONS**

The Court finds that Plaintiffs repeatedly sought to obtain discovery voluntarily from the Defendants, but that Defendants have failed to cooperate in those efforts. The Court finds that Plaintiffs properly served interrogatories and requests for inspection on Defendants and that Defendants failed to properly respond to those requests, failed to seek a protective order excusing them from responding, and violated this Court's July 18 order directing them to respond.

The Court therefore sanctions Defendants under Civ.R. 37 for failing to cooperate with discovery, as laid out below.

**I. Because Defendants violated the court's July 18 order, facts relevant to the discovery demands in question shall be taken as established for purposes of the action.**

The Court finds that Plaintiffs sought relevant information aimed at obtaining testimony from East Park's employees and contractors about (a) the conditions facing Ms. Mandanici and other East Park residents; (b) Ms. Criscione's interactions with East Park and its agents; and (c) East Park's motives in withholding Ms. Mandanici's medical records, withholding Ms. Criscione's property, and seeking criminal charges against Ms. Criscione. The Court further finds that Defendants failed to respond to those discovery demands, failed to seek a protective

order excusing them from doing so, and failed to obey the Court's order that they do so. The Court further finds that given the limited time remaining before trial, the delay in producing those documents has unfairly prejudiced Plaintiffs' ability to prove these facts.

As a sanction, the Court therefore directs that the facts at issue related to those discovery demands shall be taken as established for purposes of the action as Plaintiffs have alleged. Specifically, the Court orders that the following facts are established for purposes of this action:

1) East Park was short-staffed on multiple occasions during Ms. Mandanici's residence.[13]
2) East Park employees used Ms. Criscione to perform work or services, including to fetch fresh linens, pull supplies, assist her mother in the bathroom, and supervise nearby patients while nurses ran other errands.[14]
3) Ms. Criscione noticed that various issues with her mother's care were going unaddressed after Ms. DiVincenzo's arrival, and she began hearing about problems from East Park staff members and from the families of other residents.[15] For instance:
    a) Ms. Mandanici's dentures repeatedly went missing. On one occasion, an aide found them in another patient's mouth; on another occasion, Ms. Criscione found them embedded in her mother's back.
    b) The air conditioner in Ms. Mandanici's room would blow black chunks of mold into her bed.
    c) East Park regularly left Ms. Mandanici unattended for so long that Ms. Criscione and her sister would find her sitting in urine. On dozens of occasions, she had been left unattended so long that the urine had soaked through her adult diaper, through her clothes, and into her chair or bed.
    d) Because Ms. Mandanici was left stationary in her own urine for so much time and with such frequency, she developed severe pressure ulcers on her buttocks.
    e) Employees repeatedly left urine-soaked clothes lying around Ms. Mandanici's room and mixed in with other laundry.
    f) Ms. Criscione repeatedly discovered fecal matter on toilet lids, sheets, and other surfaces when she entered the room.
    g) Staff routinely placed compression socks on Ms. Mandanici improperly, causing edema in her legs and threatening to aggravate her atrial fibrillation.

[13] Amended Complaint, ¶ 22.

[14] Amended Complaint, ¶¶ 23–28.

[15] Amended Complaint, ¶ 31.

h) Staff repeatedly failed to properly dry Ms. Mandanici after her showers, leading to yeast infections that spread across her groin.

i) On one occasion, Ms. Criscione found her mother sitting in her wheelchair while still tangled in the harness from her Hoyer lift, which was wedged in her buttocks and twisted between her legs.

j) On another occasion, Ms. Criscione discovered large bruises on her mother's legs. Although staff initially said Ms. Mandanici had bumped into something, Ms. Criscione later learned that aides had injured her mother while improperly restraining her. Because the bruises were not properly treated, one of them eventually began oozing blood.

k) Although dementia patients require rigid schedules and familiar caregivers, East Park continued to cut staff so sharply that Ms. Mandanici eventually received care primarily from rotating agency aides. On more than one occasion, using unfamiliar aides resulted in Ms. Mandanici panicking during a shower and injuring her arm.

l) Eventually, aides began refusing to give patients food or even water on request. East Park allowed Ms. Mandanici to become so dehydrated that Ms. Criscione and her sister were eventually forced to call an ambulance to transport her to a hospital.

m) East Park repeatedly prescribed and overprescribed drugs for Ms. Mandanici. Ms. Criscione complained about those drugs and warned that those drugs would cause unacceptable side effects. She demanded to be notified before any changes in her mother's prescriptions, but East Park continued to increase medication without consent and aggravated her conditions.

4) Ms. Criscione was aware of many of these issues through her own personal observation, but many employees were also discreetly alerting her to other problems.[16]

5) On behalf of Ms. Mandanici, Ms. Criscione repeatedly reported these issues directly to East Park and demanded better care.[17]

6) Many of East Park's employees and contractors likewise reported suspected cases of neglect to East Park supervisors.[18]

7) Rather than resolving these problems, the East Park Defendants began to retaliate.[19]

8) East Park retaliated against workers who reported neglect at its facilities by taking adverse employment actions against them.[20]

9) East Park likewise retaliated against Ms. Mandanici and Ms. Criscione.[21]

---

[16] Amended Complaint, ¶ 32.

[17] Amended Complaint, ¶ 33.

[18] Amended Complaint, ¶ 35

[19] Amended Complaint, ¶ 36.

[20] Amended Complaint, ¶ 37.

[21] Amended Complaint, ¶ 38.

10) They began by attempting to cut Ms. Criscione off from her mother and from the staff members caring for her.[22]

11) Around March 2020, Defendant Thurmer called a meeting with East Park staff members and instructed them not to communicate with Ms. Criscione.[23]

12) Defendant Thurmer ordered them to stop taking Ms. Criscione's calls, to block her on social media, to avoid her in personal interactions, and to refuse to put her phone calls through to her mother.[24]

13) Defendant Thurmer went as far as taking employees' phones and deleting Ms. Criscione's number to ensure they couldn't report any more problems to her.[25]

14) Ms. Criscione sought to continue closely monitoring her mother's condition, but she was severely limited in her ability to do so.[26]

15) East Park prohibited Ms. Criscione from entering the facility and instructed employees not to connect Ms. Criscione's phone calls to her mother. Ms. Criscione was relegated to visiting her mother through a bedroom window.[27]

16) Acting on behalf of Ms. Mandanici, Ms. Criscione alerted East Park officials to these concerns, warning that isolating her mother threatened to accelerate her cognitive decline and cause all manner of other physical problems.[28]

17) East Park ignored those warnings, and its employees continued to limit Ms. Criscione's ability to contact her mother.[29]

18) East Park furthered its retaliation around April or May 2020 by initiating eviction proceedings against Ms. Mandanici, relying on false statements that she was a threat to its nurses and false statements about her medical history, symptoms, and treatment.[30]

19) The isolation from her daughter left Ms. Mandanici feeling alone, abandoned, and confused.[31]

20) Both her physical and cognitive condition began to decline rapidly—and predictably—as Ms. Criscione raced to find a new home for her mother before East Park's eviction date.[32]

---

[22] Amended Complaint, ¶ 39.

[23] Amended Complaint, ¶ 40.

[24] Amended Complaint, ¶ 41.

[25] Amended Complaint, ¶ 42.

[26] Amended Complaint, ¶ 43.

[27] Amended Complaint, ¶ 47.

[28] Amended Complaint, ¶ 50.

[29] Amended Complaint, ¶ 51.

[30] Amended Complaint, ¶ 52.

[31] Amended Complaint, ¶ 53.

[32] Amended Complaint, ¶ 54.

21) All the while, East Park continued to endanger Ms. Mandanici's health by keeping her isolated and by failing to provide her adequate food and water.[33]

22) In the last eight to ten weeks of Ms. Mandanici's stay at East Park, that lack of food and water caused her to lose approximately a quarter of her body weight.[34]

23) Even after Ms. Mandanici died, East Park and its officials continued to retaliate against her and her daughter for blowing the whistle on them.[35]

24) They continued to refuse to produce medical records that would have allowed Ms. Criscione to evaluate the quality of care they provided.[36]

25) They confiscated property that Ms. Criscione had placed in her mother's room and never returned it to her, despite her demands.[37]

26) Months after Ms. Mandanici's death, Defendant DiVincenzo discovered that Ms. Criscione had reported the conditions at East Park to the Ohio Department of Health and discussed them online.[38]

27) Based on those communications, Defendant DiVincenzo and Defendant Thurmer conspired with officials at the City of Brook Park to silence Ms. Criscione. Ms. Criscione does not know the dates on which the Defendants entered into this conspiracy.[39]

28) Defendant DiVincenzo complained to the City on September 28, 2020, that Ms. Criscione had attacked Ms. Thurmer's reputation and professional standing, and that 'people in the industry' had seen her posts.[40]

29) Defendant DiVincenzo falsely stated [to the City of Brook Park] that Ms. Criscione had returned to drive around East Park months after her mother's death.[41]

30) Defendant DiVincenzo sought to have Ms. Criscione prosecuted for telecommunications harassment based on her online statements.[42]

31) Defendant DiVincenzo then directed Defendant Thurmer to prepare a written statement claiming that she felt 'very threatened' by Ms. Criscione's public disclosures that East Park was neglecting its patients.[43]

---

[33] Amended Complaint, ¶ 55.

[34] Amended Complaint, ¶ 56.

[35] Amended Complaint, ¶ 59.

[36] Amended Complaint, ¶ 60.

[37] Amended Complaint, ¶ 61.

[38] Amended Complaint, ¶ 62.

[39] Amended Complaint, ¶ 63.

[40] Amended Complaint, ¶ 64.

[41] Amended Complaint, ¶ 68.

[42] Amended Complaint, ¶ 69.

[43] Amended Complaint, ¶ 72.

32) Based on those complaints, Defendant City of Brook Park initiated a criminal prosecution of Ms. Criscione.[44]

33) Based on her protected speech, the City and its officers approved criminal charges against Ms. Criscione: one count of telecommunications harassment and one count of menacing by stalking.[45]

34) The East Park Defendants' wrongful acts, neglect, or default caused Ms. Mandanici's death, along with pain and suffering before her death.[46]

35) The East Park Defendants' negligent and intentional conduct resulted in violations of these and other rights Ms. Mandanici enjoyed under the Nursing Home Bill of Rights.[47]

36) Ms. Mandanici suffered damages as a result of [that] conduct.[48]

37) Defendants acted maliciously in instituting or continuing Ms. Criscione's criminal prosecution.[49]

38) They manufactured allegations against her in an effort to silence her and protect their business.[50]

39) Defendants perverted [the criminal proceedings against Ms. Criscione] to accomplish an ulterior purpose for which the proceeding was not designed—including the purpose to silence Ms. Criscione, protect their reputation, and generate additional profits.[51]

40) Ms. Mandanici and Ms. Criscione each made good-faith reports of suspected abuse, neglect, or exploitation of a resident at East Park.[52]

41) Both complained about the quality of care East Park was providing, as that care threatened to and did result in serious physical harm to East Park's residents.[53]

42) Defendants retaliated against Ms. Mandanici and Ms. Criscione for making those good-faith reports of suspected abuse, neglect, or exploitation.[54]

43) That retaliation included isolating Ms. Mandanici from her daughter, refusing to produce her medical records, confiscating Ms. Criscione's personal property, and filing criminal charges against Ms. Criscione.[55]

---

[44] Amended Complaint, ¶ 73.

[45] Amended Complaint, ¶ 75.

[46] Amended Complaint, ¶ 94.

[47] Amended Complaint, ¶ 103.

[48] Amended Complaint, ¶ 104.

[49] Amended Complaint, ¶ 106.

[50] Amended Complaint, ¶ 107.

[51] Amended Complaint, ¶ 114.

[52] Amended Complaint, ¶ 119.

[53] Amended Complaint, ¶ 120.

[54] Amended Complaint, ¶ 121.

[55] Amended Complaint, ¶ 122.

44) Ms. Mandanici authorized the installation and use of an electronic-monitoring device in her room.[56]

45) Shortly after learning about that decision, Defendants initiated proceedings to discharge Ms. Mandanici.[57]

46) The decision to discharge Ms. Mandanici and prosecute her daughter was in retaliation for that decision.[58]

47) Defendants knowingly made false statements to public officials at … the City of Brook Park during an official proceeding with purpose to mislead them in performing their official functions. Specifically, Defendants knowingly made false statements to police and prosecutors that Ms. Criscione had been harassing Defendant Thurmer and had trespassed at East Park.[59]

48) Defendants knowingly used a materially false or fraudulent writing with malice, bad faith, wantonness, or recklessness, in an attempt to influence the public servants at … the City of Brook Park in the discharge of its duties.[60]

49) Defendants knowingly solicited another to deprive Ms. Criscione of her right to freely speak, write, and publish her sentiments, including by their request that the City of Brook Park and its officers criminally charge Ms. Criscione for criticizing them and by asking the Ohio Department of Health to approve its eviction of Ms. Mandanici.[61]

50) Defendants knowingly aided or abetted another in depriving Ms. Criscione of her right to freely speak, write, and publish her sentiments, including by participating in the City's investigation and prosecution.[62]

51) Defendants conspired with another to deprive Ms. Criscione of her right to freely speak, write, and publish her sentiments, including by coordinating with the City in its efforts to investigate and prosecute her and by coordinating with the Ohio Department of Health to evict Ms. Mandanici.[63]

52) Defendants caused an innocent or irresponsible person to deprive Ms. Criscione of her right to freely speak, write, and publish her sentiments, including by causing the Ohio Department of Health to approve a retaliatory eviction, and by causing the Berea Municipal Court to bring her up on charges and restrain her from speaking about Defendants.[64]

---

[56] Amended Complaint, ¶ 125.

[57] Amended Complaint, ¶ 126.

[58] Amended Complaint, ¶ 127.

[59] Amended Complaint, ¶ 130.

[60] Amended Complaint, ¶ 133.

[61] Amended Complaint, ¶ 138.

[62] Amended Complaint, ¶ 139.

[63] Amended Complaint, ¶ 140.

[64] Amended Complaint, ¶ 141.

53) Defendants knew that subjecting Ms. Criscione to a criminal investigation and prosecution would cause her serious emotional distress.[65]

54) Defendants' conduct—including but not limited to perverting the criminal-justice system to cover up their neglect, protect their reputations, and increase their profits—was extreme and outrageous.[66]

55) Defendants' conduct proximately caused Ms. Criscione serious emotional distress.[67]

## II.     Because Defendants violated the Court's July 18 order, they are prohibited from supporting the defenses relevant to the discovery demands in question.

The Court finds that Plaintiffs sought relevant information aimed at discovery of the factual basis for affirmative defenses asserted in Defendants' Answer and Answer to the Amended Complaint. The Court further finds that Defendants failed to respond to those discovery demands, failed to seek a protective order excusing them from doing so, and failed to obey the Court's order that they do so. The Court further finds that given the limited time remaining before trial, the delay in producing those documents has unfairly prejudiced Plaintiffs' ability to address those defenses.

As a sanction, the Court therefore prohibits Defendants from supporting those defenses and from introducing matters supporting those defenses into evidence.

## III.    Because Defendants violated the Court's July 18 order, they are prohibited from introducing evidence limiting their exposure to punitive damages.

The Court finds that Plaintiffs sought relevant information aimed at discovery of Defendants' payroll and net worth for purposes of establishing any applicable limits on punitive damages. The Court further finds that Defendants failed to respond to those discovery demands, failed to seek a protective order excusing them from doing so, and failed to obey the Court's order that they do so. The Court further finds that given the limited time remaining before trial,

---

[65] Amended Complaint, ¶ 148.

[66] Amended Complaint, ¶ 149.

[67] Amended Complaint, ¶ 150.

the delay in producing those documents has unfairly prejudiced Plaintiffs' ability to address those questions.

As a sanction, the Court therefore prohibits Defendants from introducing any evidence limiting their exposure to punitive damages.

**IV. Because Defendants violated the Court's July 18 order, the defenses relevant to the discovery demands in question are stricken.**

The Court finds that Plaintiffs sought relevant information aimed at discovery of the factual basis for affirmative defenses asserted in Defendants' Answer and Answer to the Amended Complaint. The Court further finds that Defendants failed to respond to those discovery demands, failed to seek a protective order excusing them from doing so, and failed to obey the Court's order that they do so. The Court further finds that given the limited time remaining before trial, the delay in producing those documents has unfairly prejudiced Plaintiffs' ability to address those defenses.

As a sanction, the Court therefore strikes the First through Thirty-Seventh Separate Defenses from Defendants' Answer to the Amended Complaint.

**V. Because Defendants violated the Court's July 18 order, they are ordered to pay all reasonable expenses, including attorney's fees, caused by their failure.**

The Court finds that Plaintiffs sought relevant information aimed at discovery of the factual basis for affirmative defenses asserted in Defendants' Answer and Answer to the Amended Complaint. The Court further finds that Defendants failed to respond to those discovery demands, failed to seek a protective order excusing them from doing so, and failed to obey the Court's order that they do so. The Court further finds that their discovery misconduct caused Plaintiffs to incur reasonable expenses, including attorney's fees, in attempting to arrange

meet-and-confers and conduct motion practice aimed at securing facts necessary to litigate their case.

As a sanction, the Court therefore orders Defendants to pay Plaintiffs' reasonable expenses incurred in making their motions to compel and motion for sanctions, including attorney's fees. Plaintiff shall submit a statement of fees within 30 days of this order.

SO ORDERED.

JUDGE NANCY MARGARET RUSSO

Date