IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GINA CRISCIONE,** *et al.*, <br> *Plaintiffs,* <br> v. <br> **LAURA DIVINCENZO,** *et al.*, <br> *Defendants*. | Case No.: 1:24-cv-01446-PAB <br><br> Judge Pamela A. Barker <br><br> Magistrate Judge James E. Grimes Jr. |
| **GINA CRISCIONE AND ESTATE OF DOROTHY MANDANICI'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ORAL ARGUMENT REQUESTED)** | |

Plaintiffs Gina Criscione and Estate of Dorothy Mandanici respectfully oppose Defendants' motion for summary judgment. As laid out below, the motion generally ignores the Rule 56 standard, failing to cite any rule-compliant evidence in the record demonstrating the absence of a genuine issue of material fact, instead merely hypothesizing that Ms. Criscione has no evidence with which to prove her case. Because that approach inverts the standard for motions for summary judgment, the Court should deny this one in its entirety.

TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iv

Issues Presented ................................................................................................................1

Summary of Argument .......................................................................................................2

Facts ...................................................................................................................................3

Standard of Review............................................................................................................8

Law & Argument ...............................................................................................................9

I.     Because the Court has already rejected Defendants' statute-of-limitations arguments, the Court should not enter summary judgment against Ms. Criscione on Claims 1–4.............9

II.    Because Defendants have not presented any evidence showing the absence of a genuine issue of material fact, the Court should not enter summary judgment against Ms. Criscione on Claim 3. .................................................................................................10

III.   Because the evidence demonstrates that the state abandoned her prosecution due to a lack of probable cause, the Court should not enter summary judgment against Ms. Criscione on Claim 5............................................................................................................11

IV.   Because the evidence creates a genuine issue of material fact on each element, the Court should not enter summary judgment against Ms. Criscione on Claim 6. .........................13

V.    Because claims for liabilities created by statute are subject to a six-year statute of limitations, the Court should not enter summary judgment against Ms. Criscione on Claims 7, 8, 9 or 10...........................................................................................................15

VI.   Because the evidence shows that Defendants retaliated against her after using her services, the Court should not enter summary judgment against Ms. Criscione on Claim 7.........................................................................................................................................17

     A.     Defendants have not proved the absence of a genuine issue as to whether Ms. Criscione was "used by" Defendants "to perform … work or services."................17

     B.     Defendants have not proved the absence of a genuine issue as to whether they retaliated against Ms. Criscione based on her protected activity.............................19

VII.   Because there is no evidence that Defendants were not false or were privileged, the Court should not enter summary judgment against Ms. Criscione on Claims 8 or 9. .................21

VIII. Because Defendants identify no deficiencies in its pleading, the Court should not enter summary judgment against Ms. Criscione on Claim 10...................................................23

IX.   Because Defendants have admitted to all the elements of conversion, the Court should not enter summary judgment against Ms. Criscione on Claim 11. ..........................................24

X.    Because Defendants have offered no evidence precluding it, the Court should not enter summary judgment against Ms. Criscione on Claim 12...................................................26

     A.     A reasonable jury could find that Defendants' conduct was extreme and outrageous. ...........................................................................................................................27

     B.     A reasonable jury could find that Ms. Criscione suffered serious emotional harm..30

XI.   Because Defendants have identified no evidence precluding it, the Court should not enter summary judgment against Ms. Criscione on Claim 18..................................................31

A.    Because she is a member of a clearly defined class of exercising their First
       Amendment right to criticize East Park's misconduct, 42 U.S.C. § 1985(3) protects
       Ms. Criscione against conspiracies against her civil rights. ....................................31

B.    Because she is a member of a "class of one," Ms. Criscione is protected against
       conspiracies against civil rights under 42 U.S.C. § 1985(3)....................................34

XII.  Because Ms. Criscione has not raised "a claim for punitive damages," the Court should
       not enter summary judgment against Ms. Criscione on that imaginary claim..................35

XIII. To the extent any claim would fail because Ms. Criscione has failed to produce sufficient
       evidence, the Court should defer consideration of Defendants' motion for summary
       judgment. ..........................................................................................................36

XIV. The Court should schedule this motion for an oral argument before granting any part of it.
       37

Conclusion .............................................................................................................37

Certificate of Service .............................................................................................38

TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Ash v. Ash*, 72 Ohio St. 3d 520 (1995)........................................................ 15

*Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972)............................................ 35

*Baltimore & Ohio Railroad Co. v. O'Donnell*, 49 Ohio St. 489 (1892) ..................................... 28

*Bedford v. Se. Pennsylvania Transp. Auth.*, 867 F. Supp. 288 (E.D. Pa. 1994) ...................... 35

*Brandley v. Keeshan*, 64 F.3d 196 (5th Cir. 1995) ...................................... 16

*Bryant v. City of Cincinnati Fire Dep't*, 2025 WL 860931 (S.D. Ohio Mar. 19, 2025)............ 18

*Buddenberg v. Weisdack*, 161 Ohio St.3d 160 (2020)................................... 25

*Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973) ................................... 35, 36

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................... 11

*Coleman v. Beachwood*, 2009 WL 3387948 (8th Dist.)............................... 30

*Demsey v. Haberek*, 2017 WL 1407378 (8th Dist.)................................... 32

*Figgie v. Figgie*, 173 N.E.3d 122 (8th Dist. 2021) .................................... 27

*Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972)..................................... 11

*Fortman v. Rottier*, 8 Ohio St. 548 (1858)........................................... 14, 15

*Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867 (N.D. Ohio 2024)............... 18

*Garza v. Clarion Hotel*, Inc., 119 Ohio App.3d 478 (1st Dist. 1997) ......................... 15

*Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1975)........................ 36

*Griffin v. Breckenridge*, 403 U.S. 88 (1971).......................................... 34

*Harris v. Cunix*, 187 N.E.3d 582 (10th Dist. 2022) .................................. 18

*Harris v. United States*, 422 F.3d 322 (6th Cir. 2005) ............................... 15

*Hershey v. Edelman*, 187 Ohio App. 3d 400 (10th Dist. 2010)....................... 25

*Hulsmeyer v. Hospice of Sw. Ohio, Inc.*, 142 Ohio St. 3d 236 (2014) ................ 20

*Hulsmeyer v. Hospice of Sw. Ohio, Inc.*, 998 N.E.2d 517 (1st Dist. 2013) .............. 20

*Hunter v. Caliber Sys., Inc.*, 220 F.3d 702 (6th Cir. 2000)........................... 11

*Jacobson v. Kaforey*, 149 Ohio St.3d 398 (2016)..................................... 25

*Kesterson v. Kent State Univ.*, 345 F. Supp. 3d 855 (N.D. Ohio 2018)............... 37

*Lapin v. Taylor*, 475 F. Supp. 446 (D. Haw. 1979) .................................... 35

*Laskar v. Hurd*, 972 F.3d 1278 (11th Cir. 2020) ...................................... 16

*Lively v. Donald Dunning, D.D.S., Inc.*, 2013 WL 1385237 (8th Dist.) ................ 30

*M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497 (1994)........................... 25

*McLean v. Int'l Harvester Co.*, 817 F.2d 1214 (5th Cir. 1987)...................... 35

*Melanowski v. Judy*, 102 Ohio St. 153 (1921)......................................... 15

*New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989) ............ 35

*Phung v. Waste Mgt., Inc.*, 71 Ohio St. 3d 408 (1994)............................... 29

*Pierce v. Woyma*, 2010 WL 4684722 (8th Dist.)...................................... 30

*Sacco v. High Country Indep. Press, Inc.*, 271 Mont. 209 (1995)................... 16

*Schaad v. Alder*, 176 Ohio St.3d 158 (2024) .......................................................... 25

*Scott v. Patterson*, 2003 WL 21469363 (8th Dist.).................................................. 26

*Shelton v. Cuyahoga Metro., Hous. Auth.,* 2024 WL 4336371 (N.D. Ohio Sept. 27, 2024)........ 18

*Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011) .................................................. 39

*Simpson v. Voiture Nationale*, 2021 WL 2627705 (8th Dist.)........................................ 27

*Spinelli v. United States*, 393 U.S. 410 (1969) ..................................................... 15

*Stewart v. Sonneborn*, 98 U.S. 187 (1878) ......................................................... 15

*Trautz v. Weisman*, 819 F. Supp. 282 (S.D.N.Y. 1993).............................................. 35

*Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015) .................................................... 35

## Statutes ...................................................................................... Page

42 U.S.C. § 1985(3) ........................................................................... 34–38

Ohio Rev. Code § 153.03(A)(4) ................................................................. 21

Ohio Rev. Code § 173.38(A)(13) ............................................................... 21

Ohio Rev. Code § 1311.01(D) .................................................................. 21

Ohio Rev. Code § 2125.02 ..................................................................... 13

Ohio Rev. Code § 2305.06 ..................................................................... 13

Ohio Rev. Code § 2305.07 ................................................................. 13, 18

Ohio Rev. Code § 2305.10 ..................................................................... 13

Ohio Rev. Code § 2305.16 ..................................................................... 13

Ohio Rev. Code § 2307.60(A)(1) ............................................................... 18

Ohio Rev. Code § 2921.03 ................................................................. 24, 25

Ohio Rev. Code § 2921.13 ................................................................. 24, 25

Ohio Rev. Code § 3721.24(A) .................................................................. 20

Ohio Rev. Code § 4113.61(F)(2) ............................................................... 21

Ohio Rev. Code § 5116.01(J) .................................................................. 21

Ohio Rev. Code 2305.07(B) ................................................................ 18, 19

Ohio Rev. Code 2305.113 ..................................................................... 12

Ohio Rev. Code 2921.03(C) ................................................................... 25

Ohio Rev. Code 3721.22 ...................................................................... 21

Ohio Rev. Code Chapter 3721 ................................................................. 21

Ohio Rev. Code § 2307.60............................................................... 18, 19, 25

Ohio Rev. Code § 3721.24 ................................................................ 20, 21

## Rules ........................................................................................ Page

Fed. R. Civ. P. 56............................................................................ 39

## ISSUES PRESENTED

1.  The Court has previously rejected Defendants' arguments that Ms. Criscione has raised medical claims that required dismissal due to a one-year statute of limitations. Defendants now make the same arguments on summary judgment, but point to no evidence to support them. Should the Court change its mind based on no new information?

2.  Defendants argue that there is no evidence that they had a contract with Plaintiffs or that Plaintiffs were injured when they breached it, but they point to nothing in the record to support that conclusion. Should the Court grant summary judgment based on their bare denial of liability?

3.  A claim for malicious prosecution requires termination of the charges that indicates the accused's innocence, but only when the accused has an opportunity to actually prove her innocence. Defendants concede that Ms. Criscione's criminal charges were dismissed for lack of probable cause. Has Ms. Criscione created a genuine issue of whether the case terminated in her favor?

4.  Defendants argue that there is no evidence that they perverted the proceedings against Ms. Criscione, but point to nothing in the record to support their conclusion. Should the Court grant summary judgment based on their bare denial of liability?

5.  Claims for liabilities created by statute are subject to a six-year statute of limitations. Claims 7, 8, 9, and 10 seek to recover on liabilities created by various statutes. Should the Court reject those claims if they were filed more than *one* year after they accrued?

6.  Nursing homes are subject to liability if they retaliate against anyone they have used to perform work for reporting neglect. After spending years asking Ms. Criscione to perform work caring for her mother and other patients, Defendants sought criminal charges against Ms. Criscione when they learned she had reported them to the Ohio Department of Health. Should the Court let Defendants off the hook because Ms. Criscione was not their contractor?

7.  The Ohio General Assembly has abrogated the common-law privilege for false testimony in official proceedings through the statutory enactment of liability based on exactly such circumstances. Ms. Criscione seeks damages based on Defendants' false statements to the various law-enforcement officials. Should the Court grant summary judgment based on immunity that no longer exists?

8.  Defendants claim Ms. Criscione has failed to allege a viable claim for interference with civil rights, but point to nothing in the record to support their conclusion. Should the Court grant summary judgment based on their bare denial of liability?

9.  A claim for conversion requires proof of ownership, interference with property rights, and damages, and the return of property is not a defense. Defendants admit to taking Ms. Criscione's property, but they say that she eventually got it back. Should the Court grant them summary judgment based on a defense the Ohio Supreme Court rejects?

10.  A claim for intentional infliction of emotional distress requires proof that Defendants intended to inflicted serious emotional distress, that they caused that distress, and that they did so through conduct that was extreme and outrageous. In the wake of her

mother's death due to their own neglect, Defendants forced Ms. Criscione to defend herself against criminal charges for criticizing them. Could a reasonable jury find that outrageous?

11.    A claim for conspiracy against civil rights requires proof that the plaintiff was a member of a clearly defined group, and that the defendants conspired with others to interfere with exercise of their constitutional rights. The evidence shows that Defendants retaliated against a group of people—including Ms. Criscione—who were opposed to its neglect of its patients. Can her claim survive?

### SUMMARY OF ARGUMENT

Defendants' motion for summary judgment is, in reality, little more than a dressed-up motion to dismiss. Indeed, it copy/pastes certain arguments directly from its overruled motion to dismiss, it resurrects others with different phrasing, and it raises a variety of new arguments that the rest of Ms. Criscione's claims should be "dismissed" because her Complaint's allegations are insufficient as a matter of law. While there are a few occasions where Defendants actually argue for summary judgment based on a lack of evidence, they almost invariably do so either based on a pure conclusion that no evidence exists, without pointing to anything in the record to support that conclusion, or based on legal rules that they are likewise unable to support with reference to any case, rule, or statute.

In the end, the entire motion fails, for three main reasons:

- Their statute of limitations arguments against Claims 1 through 4 fail because they are the same arguments the Court rejected in its order denying their motion to dismiss. None of them are supported here with any evidence, and there is therefore no reason for the court to revisit its previous decision.

- The statute of limitations arguments against Claims 7 through 10 fail because they are premised on some theory—largely unexplained—that they were subject to a one-year statute of limitations. That theory is only explained with respect to one of the claims, but it has also been thoroughly discredited by multiple decisions in the Ohio Courts of Appeals and in the federal district courts.

- The remaining arguments fail because they presented almost entirely without reference to any evidence in the record establishing the absence of a genuine issue of material fact. And in the few cases where Defendants bother to cite to any evidence,

they fail to acknowledged obvious evidence undermining their arguments, or their arguments can be overcome by evidence attached to this motion.

FACTS

**East Park Care Center is a "prison" with shockingly low quality of care."**

Defendant East Park—formerly owned by Defendant DiVincenzo and operated by Defendant Sara Thurmer—is a nursing home whose employees liken it to a "prison"[1] with shockingly low quality of care."[2]

When Ms. DiVincenzo and her husband purchased the facility, they sought to increase profits by cutting costs and raising prices wherever they could. They directed Defendant Thurmer to cut their employees' hours and reduce spending on supplies.[3] Rather than going through medical-equipment vendors for supplies like gloves and face masks, the administrator just looked for the best deal available on Amazon.[4] Although she could not increase prices on residents who paid through Medicaid, she could—and did–neglect them and focus instead on private-pay patients who they could saddle with additional costs.[5]

As a result of aggressive cost-cutting, the facility had high employee turnover.[6] It was frequently understaffed, bounced its employees' paychecks, did not purchase the medical supplies they needed to care for residents, and refused to provide personal protection equipment or follow "basic health protocols" when COVID-19 swept through.[7]

---

[1] Affidavit of Tricia Tessmer, ECF #42-1, ¶ 5.

[2] Affidavit of Jason Frederick, ECF #42-2, ¶ 12.

[3] Deposition of Sara Thurmer, ECF #38-1, 74:2–75:2.

[4] Deposition of East Park Care Center, 366:11–367:22.

[5] Frederick Aff., ¶ 10.

[6] Tessmer Aff., ¶ 8; Frederick Aff., ¶ 9.

[7] Tessmer Aff., ¶ 4–5.

East Park's residents fared no better than its employees. Its director of maintenance admits to seeing firsthand "the poor treatment of residents and their families."[8] They had to contend with "problems with bedbugs, cockroaches, and spiders."[9] Because of the inadequate care, families often found that they needed to call East Park multiple times daily to complain about problems or ensure that their loved ones were being cared for properly.[10] Although Defendant Thurmer held herself out as "completely available" to address such concerns,[11] she was secretly working to thwart communications from residents and family members she identified as "problems."[12] Once they were so designated, Defendant Thurmer would direct staff to lie about her availability or stop answering their phone calls.[13]

By cutting them out, East Park was able to perpetuate its neglect of its patients. Staff members would scream and swear at residents.[14] When residents begged for food or water, employees would refuse their requests.[15] At least one employee brought concerns about these conditions to Defendant Thurmer, but she told him to mind his own business.[16]

**Ms. Criscione admits her mother to East Park while waiting for a better option to come available.**

The problems at East Park affected Plaintiff Gina Criscione and her mother, Dororthy Mandanici, the same as everyone else. As Ms. Mandanici's dementia progressed, Ms. Criscione

---

[8] Frederick Aff., ¶ 3.

[9] Tessmer Aff., ¶ 5.

[10] Frederick Aff., ¶ 4.

[11] Thurmer statement, ECF #37-1, PageID #1446.

[12] Frederick Aff., ¶ 5.

[13] Frederick Aff., ¶ 5.

[14] Frederick Aff., ¶ 7.

[15] Frederick Aff., ¶ 7.

[16] Frederick Aff., ¶ 11.

began looking for residential care for her. She put her mother on a waiting list at Mt. Alverna Village and admitted her to East Park in the meantime.

Throughout her mother's stay, Ms. Criscione was a regular presence at East Park. She typically visited several times a week, getting to know other residents and their families, and assisting staff with errands as requested, and she typically called her mother before or after each meal.[17] Because of her perpetual oversight of her mother's care, she soon noticed the same kinds of problems that its employees had reported. The air conditioning was blowing out black chunks of mold.[18] Her mother was repeatedly being left in her bed or chair sitting in puddles of her own urine.[19] Her mother was developing pressure ulcers.[20] Aides were leaving fecal matter on the surfaces in her room.[21] There were bugs in her room.[22] Aides were failing to properly assist her mother with showers.[23] Employees' failure to provide water was leaving her mother dehydrated.[24] Her mother was being overmedicated.[25]

**East Park retaliates against Ms. Criscione for reporting its abuse and neglect.**

Recognizing that Ms. Criscione's persistent demands threatened to undermine their neglect-based business model, Ms. DiVincenzo and Ms. Thurmer began a retaliation campaign designed to shut her up. East Park cut Mrs. Criscione off from her mother by directing staff

---

[17] Tessmer Aff., ¶¶ 9–11.

[18] Deposition of Gina Criscione, ECF #37-1, 214:2–215:8.

[19] Criscione Dep., 219:18–24.

[20] Criscione Dep., 136:6–8.

[21] Criscione Dep., 219:18–24.

[22] Criscione Dep., 132:3–6.

[23] Criscione Dep., 225:3–10.

[24] Criscione Dep., 131:1–4.

[25] Criscione Dep., 177:5–7.

members to stop communicating with Ms. Criscione,[26] by directing staff to stop letting Ms. Criscione's call her mother,[27] by refusing to produce copies of her mother's medical records,[28] and then by evicting her mother from the nursing home just as COVID-19 was setting in.[29] Defendants fired their nurse practitioner, Denise Kroesen, who was critical of changes under Ms. Thurmer, had been close to Ms. Criscione, and refused to disconnect from her on Facebook.[30]

Ms. Criscione moved her mother to a new nursing home, but it was too late. Ms. Mandanici died from sepsis soon after, as a result of pressure ulcers that East Park had failed to treat.[31] Distraught over her mother's death, Ms. Criscione sought to publicize the abysmal conditions at East Park. She told her Facebook friends about problems there, left a negative review for the nursing home on Google, and picketed on a sidewalk near the facility.[32]

East Park saw Ms. Criscione's criticisms as a threat to its business and attempted to shut it down. Ms. DiVincenzo sent an e-mail to Sgt. Harold Duncan at the Brook Park Police Department, complaining that while her mother was still a resident at East Park, Ms. Criscione sent text messages to Ms. Thurmer.[33] Ms. DiVincenzo also complained that Ms. Criscione was talking about East Park on Facebook, and that employees thought they had seen Ms. Criscione drive through East Park's parking lot on a Sunday morning.[34]

---

[26] Criscione Dep., 193:24–194:8.

[27] Criscione Dep., 98:15–25.

[28] Criscione Dep., 147:2–6.

[29] Thurmer Dep., 43:19–44:8.

[30] Criscione Dep., 99:17–100:6.

[31] Shoag Report, ECF #42-3.

[32] Criscione Dep., Ex. L.

[33] East Park Dep., Ex. 5.

[34] East Park Dep., Ex. 5.

Ms. Thurmer then swore out a complaint charging Ms. Criscione with menacing by stalking because she posted "multiple negative messages to a website."[35] She swore out another complaint charging Ms. Criscione with telecommunications harassment because she posted messages to social media "to harass and annoy" Ms. Thurmer.[36]

Based on these charges, the Berea Municipal Court issued a temporary restraining order against Ms. Criscione.[37] Ms. Criscione submitted a brief seeking to dismiss the charges. That brief included an affidavit from another resident's daughter, who testified that East Park had subjected her mother to the same terrible conditions. It included an affidavit from a former nurse who confirmed that Gina only called as frequently as she did because employees would "deliberately avoid her" by refusing to pick up her calls or call her back.[38] It also included an affidavit from Jason Frederick, East Park's director of maintenance, who confirmed that the problems Ms. Criscione was complaining about were part of a broader pattern of problems at the home.[39]

A day later, the Court dismissed the criminal complaints without prejudice.[40]

Defendants DiVincenzo and Thurmer fired Mr. Frederick days later[41] and then went back to their lives as usual, but the effects of the prosecution lingered for Mrs. Criscione. She was left saddled with tens of thousands of dollars in attorney's fees for her criminal defense,[42] and she

---

[35] East Park Dep., Ex. 1.

[36] East Park Dep., Ex. 2.

[37] Criscione Dep., 156:8–14.

[38] Tessmer Aff., ¶ 10.

[39] Frederick Aff., ¶¶ 4–8.

[40] ECF #35-3.

[41] Ms. Criscione learned about this development only after her state-court case was dismissed. She has sought an affidavit from Mr. Frederick, but has learned that he is unwilling to testify due to a nondisclosure agreement Defendants required him to sign in connection with his termination.

[42] Affidavit of Subodh Chandra, ECF #42-4, ¶¶ 7–8.

has continued to struggle with anxiety and depression as a result of the criminal charges against her.[43]

## STANDARD OF REVIEW

A district court may not grant a motion for summary judgment under Rule 56 unless the moving party first satisfies its heavy initial burden of showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

For instance, in *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972), a prisoner brought 1983 claims against officers for ignoring 17 hours of complaints about head injuries that eventually required surgery and caused lasting brain damage. The trial court granted summary judgment for the defendants, holding that they were entitled to judgment because the plaintiff had failed to rebut affidavits showing that officers had actually provided medical care at some point during that 17-hour window. But the Sixth Circuit reversed, holding that unrebutted affidavits are insufficient to trigger summary judgment unless they actually "negate … the essential allegations of the complaint":

> It is true that the affidavits controvert appellant's contention that he did not receive medical care for approximately seventeen hours. What they do show is that the time lapse was twelve hours. It is further true that they tend to show that *the day shift* … acted properly and with some sensitivity to Fitzke's plight. These affidavits do not, however, deny the appellant's allegations regarding Fitzke's treatment at the time of his arrest.

> *Fitzke at* 1078.

Only after the moving party has satisfied this initial burden does *any* burden fall to the nonmoving party, who can defeat the motion by identifying "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Until then, though, "the non-moving party has *no obligation to produce anything*, even if the nonmoving party

---

[43] Criscione Dep., 191:7–17.

would have the ultimate burden of persuasion." *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir. 2000) (emphasis added).

## LAW & ARGUMENT

I.     **Because the Court has already rejected Defendants' statute-of-limitations arguments, the Court should not enter summary judgment against Ms. Criscione on Claims 1–4.**

Despite labeling their most recent filing as a "motion for summary judgment," Defendants are in truth simply seeking another bite at dismissal on a Rule 12(b)(6) standard on many claims, literally pasting their arguments from their motion to dismiss into their motion for summary judgment.[44] But those arguments cannot succeed, for two reasons:

1.     The Court has already rejected their statute-of-limitations defense on Rule 12. For instance, Defendants argued that Claim 1 is time-barred by Ohio's one-year statute of limitations for medical claims, and the Court held that Ms. Criscione's allegations "are not subject to the one-year … statute of limitations … and therefore were timely asserted."[45]

2.     While the Court appeared to limit that decision to its analysis of the Complaint "at the pleading stage," Defendants' motion for summary judgment cites to literally *no evidence whatsoever* to undercut those allegations on a Rule 56 analysis, pointing instead at the exact same allegations from the Complaint that the Court already said had adequately pleaded the claims.

Defendants' timeliness arguments on Claims 2, 3, and 4 are little better. Although some of these arguments have new form, they have no new substance: they simply rephrase the old argument that these claims are likewise barred under Ohio's one-year statute of limitations or its

---

[44] *Compare*, ECF #15 ("A claim for medical negligence, including a survivorship claim, must be commenced within one year of the date upon which the cause of action accrued. R.C. 2305.113 … ") *with* ECF #35("A claim for medical negligence, including a survivorship claim, must be commenced within one year of the date upon which the cause of action accrued. … ").

[45] Order, ECF #22-1, 16.

four-year statute of repose. But again, the Court has already rejected that argument in its Rule 12 decision, and Defendants again cite *no evidence whatsoever* to demonstrate that Ms. Criscione would be unable to prove liability on any theory outside the scope of those limits. There is therefore neither any argument or evidence that should change the Court's original analysis:

- Claim 1 remains subject at worst to the four-year statute of limitations in Ohio Rev. Code § 2305.10 for injuries to person or property.

- Claim 2 remains subject at worst to the two-year statute of limitations in Ohio Rev. Code § 2125.02 for wrongful deaths.

- Claim 3 remains subject at worst to the eight-year statute of limitations in Ohio Rev. Code § 2305.06 for breach of a written contract.

- Claim 4 remains subject at worst to the six-year statute of limitations in Ohio Rev. Code § 2305.07 for actions on liabilities created by statute.[46]

Because Defendants have not identified any evidence establishing the absence of a genuine issue of material fact that would preclude Ms. Criscione from establishing that her claims are subject to those limits, the Court should hold that Claims 1, 2, 3, and 4 are not time barred.

## II. Because Defendants have not presented any evidence showing the absence of a genuine issue of material fact, the Court should not enter summary judgment against Ms. Criscione on Claim 3.

Defendants offer two fallback arguments on Claim 3 for breach of contract, arguing they are entitled to summary judgment:

---

[46] While Defendants argue that these claims must have accrued before Ms. Mandanici was discharged on May 22, 2020, they offer no evidence of that discharge date, and they ignore that all her time limits were therefore tolled until her death, Ohio Rev. Code § 2305.16, as *their own evidence* establishes beyond dispute that she was "of unsound mind." Criscione Dep., ECF # 37-1, 22:10–12 ("Q. She had been diagnosed with vascular dementia; is that right? A. Correct."); DiVincenzo Aff., ECF #35-2 "[S]he has a major neurocognitive disorder."; Thurmer Dep., ECF #38-1 (characterizing Ms. Mandanici has having "end-stage dementia").

1. because Ms. Criscione "failed to establish that a contract existed and the provisions allegedly breached;" and

2. because Ms. Criscione has "no evidence that the alleged breaches caused bodily injury or that the breaches were such that serious emotional disturbance was a likely result."

But again, Defendants offer *no evidence whatsoever* to support these conclusions. And if they were true, certainly they would be easy enough to support; Ms. DiVincenzo needed only mention in her affidavit that she took in Ms. Mandanici without a contract and that East Park never caused Ms. Mandanici any bodily injury. She didn't.

There is therefore only one question: is it reasonable to draw an inference in Ms. Criscione's favor that Defendants cared for Ms. Mandanici pursuant to a contract? Of course, that is the *only* reasonable inference to draw, as the Court would otherwise need to assume that Defendants spent three years tending to Ms. Mandanici on some kind of gratuitous lark.

Because Defendants have not identified any evidence establishing the absence of a genuine issue of material fact that would preclude Ms. Criscione from establishing that a contract existed, that that contract was breached, or that damages resulted, the Court should not grant summary judgment on Claim 3.

## III. Because the evidence demonstrates that the state abandoned her prosecution due to a lack of probable cause, the Court should not enter summary judgment against Ms. Criscione on Claim 5.

Defendants argue that Ms. Criscione cannot satisfy the favorable-termination or malice elements on Claim 5 for malicious prosecution because "the criminal case was dismissed due to a procedural defect" and therefore does not "indicate[] that the accused is innocent."

This argument fails for four reasons:

1. First, while the rule may be different in malicious-prosecution cases brought under Section 1983, Ohio law only requires an indication of the accused's innocence

"where the plaintiff in fact had … his day in court upon that question." *Fortman v. Rottier*, 8 Ohio St. 548, 552–53 (1858). Because that favorable-termination requirement is only a "general rule," the Ohio Supreme Court instructs that "[w]here the reason of the rule ceases, the rule itself is not to be applied." *Id.*

2. Second, Defendants' own case endorses liability on facts like these, holding that "abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused." *Ash v. Ash*, 72 Ohio St. 3d 520, 522 (1995). Here, there is no dispute that the state declined to refile the charges after they were dismissed without prejudice, and it therefore abandoned the prosecution.

3. Third, Defendants provide no evidence demonstrating the absence of a genuine issue on the favorable-termination requirement. Instead, they affirmatively submitted evidence showing that the Complaints were dismissed because "[a]t no time prior to the issuance of the summons or arraignment was probable cause established."[47] Defendants may shrug this off as a "procedural defect," but probable cause is not some arcane technicality; it is the chief substantive requirement for bringing criminal charges. And if probable cause requires "only the probability, and not a prima facie showing, of criminal activity," *Spinelli v. United States*, 393 U.S. 410, 419 (1969), a finding that the facts never established probable cause means that there was *no probability* that Ms. Criscione committed any crime, *i.e.*, the facts indicate that she is innocent.

4. Fourth, Defendants provide no evidence demonstrating the absence of a genuine issue on the malice requirement. They simply offer a conclusory statement that "there is no evidence of malice," without pointing to any evidence or anything at all to support their conclusion. Moreover, they themselves have peppered the record with evidence on the malice element, including Ms. Criscione's recitation of their lies to police and prosecutors, Criscione Dep., 167:13–169:6, and their proof that the criminal charges were dismissed for lack of probable cause, ECF #35-3. In the absence of probable cause for a prosecution, both federal and state law allow that "the legal inference may be drawn that the proceedings were actuated by malice." *Melanowski v. Judy*, 102 Ohio St. 153 (1921).[48]

---

[47] ECF #35-3.

[48] *See also*, *Stewart v. Sonneborn*, 98 U.S. 187, 194 (1878) ("Malice … may be inferred by the jury from want of probable cause."); *Harris v. United States*, 422 F.3d 322, 327–28 (6th Cir. 2005) ("Malice 'may

Defendants also reraise their previously rejected timeliness argument, saying Ms. Criscione cannot bring this claim because she first filed it more than two years after the charges were filed. But Ms. Criscione has never pinned her malicious-prosecution claim on the initial dismissal; instead, she has consistently alleged—and this Court has agreed—that her prosecution terminated in her favor not when it was dismissed without prejudice, but instead when the statute of limitations expired without the discovery of any evidence warranting refiled charges. ECF #22-1, 16–19.[49]

Because Defendants have not identified any evidence establishing the absence of a genuine issue of material fact on any element of her claim for malicious prosecution, the Court should not grant summary judgment against Ms. Criscione on Claim 5.

## IV. Because the evidence creates a genuine issue of material fact on each element, the Court should not enter summary judgment against Ms. Criscione on Claim 6.

Defendants seek summary judgment on Claim 6 for abuse of process, but they again make no apparent effort to produce the evidence necessary to foreclose a genuine issue of material fact on any of its elements.

Accepting their statement of law as true for purposes of this motion, a jury would need to find three things to be true to return a verdict for Ms. Criscione:

1. a legal proceeding was set in motion in proper form with probable cause;

---

be inferred from the absence of probable cause' in appropriate circumstances.") (quoting *Garza v. Clarion Hotel*, Inc., 119 Ohio App.3d 478 (1st Dist. 1997)).

[49] *See also*, *Laskar v. Hurd*, 972 F.3d 1278 (11th Cir. 2020) ("[A] dismissal for untimeliness qualifies as a favorable termination"); *Brandley v. Keeshan*, 64 F.3d 196 (5th Cir. 1995) ("An acquittal, an order of dismissal based on the running of the statute of limitations on the crime, or an order of dismissal reflecting an affirmative decision not to prosecute are examples of such a termination."); *Sacco v. High Country Independent Press, Inc.*, 271 Mont. 209, 896 P.2d 411 (1995) ("The fact that … the offense alleged in the amended complaint then fell outside the statute of limitations and was dismissed reflects on the merits of the original complaint.").

2. the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and

3. that direct damage has resulted from the wrongful use of process.

On the first element, Defendants argue that Ms. Criscione cannot demonstrate that the charges against her were "proper" because she testified that they "were not appropriate," but they ignore that Defendant Thurmer then created a factual dispute on this question, as she testified to the contrary when asked if the charges were "proper."[50]

On the second element, Defendants argue that Ms. Criscione has "not presented any evidence that these Defendants perverted the process to accomplish an ulterior purpose." But again, they are attempting to flip Rule 56 on its head. It is not Ms. Criscione's job to prove her allegations in advance of their motion for summary judgment; it is their motion's job to present evidence demonstrating that a jury could not believe those allegations. But they offer no such evidence, and they therefore fail to demonstrate the absence of a genuine issue of material fact.

On the third element, Defendants argue that Ms. Criscione cannot establish damages, but yet again, they have not presented any evidence demonstrating the absence of a genuine issue on this question. They cite Ms. Criscione's testimony that she has a long history of medical treatment—not surprising for a 70-year-old woman—and that she does not know what portion, if any, of the legal fees she is claiming as damages were actually connected to her pursuit of a civil claim. But none of that testimony demonstrates the absence of damages; it is merely evidence that Defendants might use to argue against damages.

Moreover, Defendants have affirmatively created a genuine dispute by submitting an expert report attesting to the fees incurred. Their argument that the report fails to opine on

---

[50] Thurmer Dep., 62:7–25.

whether the fees were caused by the prosecution is contradicted by the plain language of the report itself, which says Ms. Criscione's counsel "worked continuously" on her criminal defense from October 19, 2020 through March 11, 2021, leaving a balance of $30,101.22.[51] Defendants' own evidence, therefore, provides sufficient grounds for a reasonable jury to award damages of at least that amount.[52]

Because Defendants have not identified any evidence establishing the absence of a genuine issue of material fact on any element of her claim for abuse of process, the Court should not grant summary judgment against Ms. Criscione on Claim 6.

## V. Because claims for liabilities created by statute are subject to a six-year statute of limitations, the Court should not enter summary judgment against Ms. Criscione on Claims 7–10.

"An action upon a liability created by statute other than a forfeiture or penalty shall be brought within six years after the cause of action accrued." Ohio Rev. Code § 2305.07. Nonetheless, Defendants argue that Claim 10 is time-barred because "the statute of limitations for claims asserted under R.C. § 2307.60 is one year," and that Claims 7, 8, and 9 are therefore also barred under the same statute of limitations. Their argument fails for three reasons:

1. Most importantly, Claim 10 is not governed by a one-year statute of limitations. It seeks relief under Ohio Rev. Code § 2307.60(A)(1), and "R.C. 2307.60(A)(1) is a remedial statute subject to the six-year statute of limitations in R.C. 2305.07(B)." *Harris v. Cunix*, 187 N.E.3d 582, ¶ 27 (10th Dist. 2022).[53] Defendants' argument to the contrary relies on an outdated line of decisions that preceded *Harris* and were almost uniformly devoid of any reasoning supporting them. Since the 10th District's comprehensive analysis—later bolstered by *Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 884–87 (N.D. Ohio 2024)—courts have acknowledged and followed

---

[51] ECF #35-1, Ex. 1.

[52] Furthermore, Ms. Criscione's defense counsel has since clarified the breakdown in fees between the criminal and civil matters. See Chandra Aff., ¶ 7.

[53] *See also, Bryant v. City of Cincinnati Fire Dep't*, No. 1:24-CV-119, 2025 WL 860931, at *20 (S.D. Ohio Mar. 19, 2025) (collecting cases).

the "recent trend following the Ohio Court of Appeals in *Harris*." *Shelton v. Cuyahoga Metro., Hous. Auth.*, No. 1:23-CV-483, 2024 WL 4336371, at *9 (N.D. Ohio Sept. 27, 2024).

2. Second, even if the Court accepted that claims under Ohio Rev. Code § 2307.60 were subject to a one-year statute of limitations, that would have no effect on Claim 7's allegation of whistleblower retaliation under § 3721.24. How Defendants purport to connect those two statutes is anyone's guess, as their motion offers not a single word of analysis explaining how a statute of limitations governing civil actions for criminal acts would have any application to claims under a statute that creates its own independent civil remedy but imposes no criminal liability.

3. Third, Defendants' argument is equally inapplicable to Claims 8 and 9. Ohio Rev. Code § 2307.60 says nothing about claims under §§ 2921.13 or 2921.03, and each of those statutes includes its own language explicitly creating its own cause of action, distinct from the one § 2307.60 makes available. Again, Ms. Criscione and the Court can only guess why those separate causes of action might be governed by a statute of limitations for § 2307.60; Defendants never bother to explain their logical leap, and the reasoning in the only cases they cite in connection with this issue—that § 2307.60 has a one-year time limit because it "contemplates a penalty"—has no relevance to these *remedial* statutes, which have no penalty provisions and allow damages only to the extent they were "incurred as a result of the commission of the offense."

Fortunately, the question of what statute of limitations applies to these claims requires nothing more than straightforward application of the statute's plain text. Ohio Rev. Code § 2305.07(B) establishes a six-year statute of limitations for claims seeking to recover for "a liability created by statute." Here, Ohio Rev. Code §§ 2307.60, 2921.03, 2921.13 or 3721.24 are statutes, and Claims 7–10 seek to recover for the liability those statutes create. Each claim is therefore subject to a six-year statute of limitations.

Because Defendants have not provided any evidence demonstrating that all their violations of theses statutes occurred more than six years before Ms. Criscione filed suit, they cannot satisfy their burden of demonstrating the absence of a genuine issue on this question.

VI.    **Because the evidence shows that Defendants retaliated against her after using her services, the Court should not enter summary judgment against Ms. Criscione on Claim 7.**

Ohio Rev. Code § 3721.24(A) creates a statutory cause of action to protect against

retaliation for "for reporting suspected abuse or neglect of long-term-care-facility and

residential-care-facility residents." *Hulsmeyer v. Hospice of Sw. Ohio, Inc.*, 142 Ohio St. 3d 236,

245 (2014). Relevant to this case, the statute requires a plaintiff to prove:

1.  that a person retaliated;

2.  against an employee or another individual used by the person … to perform any work or services;

3.  who, in good faith, makes or causes to be made a report of suspected abuse, neglect, or exploitation of a resident or misappropriation of the property of a resident.

Ohio Rev. Code § 3721.24(A).

A.    **Defendants have not proved the absence of a genuine issue as to whether Ms. Criscione was "used by" Defendants "to perform … work or services."**

Defendants claim Ms. Criscione cannot recover for whistleblower retaliation because she

is outside the scope of the protection of the statute. By their reading, § 3721.24 forbids retaliating

against an "employee or subcontractor" but permits retaliation against anyone else who reports

that East Park is abusing, neglecting or exploiting its residents.

But again, Defendants make this claim without the support of any law or even argument.

Although the statute explicitly makes its relief available to any "individual *used by* the person …

to perform any work or services," Defendants insist that "it is clear" that the statute is actually

somehow limited to employees or subcontractors.

What makes this so clear? No one knows, because again, Defendants don't trouble

themselves to explain why the statute doesn't mean what it says. The one case they do offer,

*Hulsmeyer v. Hospice of Sw. Ohio, Inc.*, 998 N.E.2d 517 (1st Dist. 2013), says nothing to support

their theory. In that case, a hospice worker sued the owner of a nursing home that pressured her employer to fire her for reporting abuse at the nursing home. Reading § 3721.24 alongside other statutes requiring nursing-home workers to report abuse to the Department of Health, the trial court dismissed the case because the plaintiff had reported to her boss, but not to the Department of Health. But the First District reversed, holding that it was error to read that requirement into the statute when the plain language of the statute unambiguously forbade retaliation irrespective of who the plaintiff had reported to:

> Had the legislature meant to limit the protection afforded to only reports of suspected abuse or neglect made to the Director of Health, it could have easily done so by either directly inserting the words "to the Director of Health" after the word "report," by referencing R.C. 3721.22 in conjunction with report, or by referring to the report made as one specified under R.C. Chapter 3721. The legislature, however, did not employ these words and we may not add them to the statute.

*Hulsmeyer*, ¶ 24.

The same logic applies to the scope of individuals covered. The General Assembly already knows that subcontractors exist,[54] so if it meant to limit the protection of § 3721.24 to an "employee or subcontractor," it would have used those words instead of "employee or another individual used by the person." Or it could have written that relief was limited to "an employee or another individual *paid by* the person." But the legislature did not write those words, and the Court therefore may not add them to the statute. It deliberately chose to expand relief beyond employees and subcontractors to any "individual used … to perform any work or services," and Defendants do not even attempt to argue that Ms. Criscione falls outside that class.

While the parties seem to agree that she was never an "employee" in the traditional sense, Defendants offer no evidence to dispute Ms. Criscione's testimony that she was "used by

---

[54] *See, e.g.*, Ohio Rev. Code § 153.03(A)(4); Ohio Rev. Code § 173.38(A)(13); Ohio Rev. Code § 1311.01(D); Ohio Rev. Code § 4113.61(F)(2); Ohio Rev. Code § 5116.01(J).

[Defendants] to perform any work or services." Indeed, undisputed evidence shows that she was, in fact, "used by" East Park to perform "tasks that would normally be performed by a nurse's aide,"[55] such as cutting her mother's food, feeding her, helping her mother to and from the bathroom, sanitizing her mother's bedroom, laundering her mother's clothes, and putting bibs on other residents at meal times.[56] And while both Defendant DiVincenzo and Defendant Thurmer insist that East Park *shouldn't have* used Ms. Criscione for those tasks, they freely admit that they don't actually know whether it happened.[57]

In the absence of any evidence conclusively demonstrating that Ms. Criscione's testimony is false, Defendants cannot satisfy their burden of demonstrating the absence of a genuine issue on this question.

### B. Defendants have not proved the absence of a genuine issue as to whether they retaliated against Ms. Criscione based on her protected activity.

Defendants also argue that Ms. Criscione cannot prevail on Claim 7 because she was not "retaliated against" within the meaning of the statute.

But again, Defendants offer neither law nor evidence to support their argument. They say that the types of retaliation Ms. Criscione was subjected to are not "within the type of retaliatory action contemplated by the statute, i.e., discharge, demotion." But retaliating by discharging her mother[58] is exactly the kind of retaliation that they just conceded to be cognizable, and the remaining acts—such as isolating Ms. Criscione's mother,[59] refusing to produce her medical

---

[55] Affidavit of Denise Kroesen, ECF #42-5, ¶ 10.

[56] Affidavit of Yolanda Odom, ECF #42-6, ¶¶ 4–9.

[57] East Park Dep., Vol. I 310:18–314:7; Thurmer Dep., 35:20–36:5.

[58] Thurmer Dep., 43:19–44:1.

[59] Criscione Dep., 102:14–103:9.

records,[60] confiscating Ms. Criscione's personal property,[61] and filing criminal charges against Ms. Criscione[62]—are likewise cognizable, as Defendants concede that the statute also includes a catch-all provision prohibiting "any other action intended to retaliate."

Defendants' argument that Ms. Criscione cannot demonstrate a causal connection fares no better. Setting aside their attempt to—again—place the burden on Ms. Criscione by denying the existence of any evidence on this question, there is both circumstantial and direct evidence on causation.

Defendants concede that causation may be inferred based on the "temporal proximity between the two events," so a reasonable jury could conclude that the protected activities were close enough to support that inference. Ms. Criscione testified that she twice reported East Park to the Ohio Department of Health, beginning at some point in 2020 while her mother remained a resident there,[63] and the retaliatory actions complained of all likewise occurred in that year. Defendants offer no evidence whatsoever showing that Ms. Criscione will be unable to persuade a reasonable jury at least one of her reports was close enough in time to at least one adverse action to support an inference of causation.

More importantly, Defendants created a paper trail establishing direct evidence of causation. Exhibit L to the Criscione transcript shows Defendant DiVincenzo explicitly requesting criminal charges based on Ms. Criscione's public reports of neglect at East Park. It shows that Ms. DiVincenzo sought to have Ms. Criscione criminally prosecuted for posts disclosing her reports to the Department of Health and sharing to the public her report that East

---

[60] Criscione Dep., 151:1–21.
[61] East Park Dep., 222:4–223:20.
[62] ECF #35-3.
[63] Criscione Dep., 198:17–200:22.

Park left her mother "bruised and dehydrated and with injuries," her report that her mother "went from 130 pounds to 97 pounds," her report that her mother received "poor care," and her report that her mother was was "isolated" and barred from "communicating with famil[y]."

Despite submitting their own evidence of causation—both circumstantial and direct—Defendants offer no explanation why that evidence should not be believed nor why a reasonable jury would be unable to accept it, and they therefore cannot satisfy their burden of demonstrating the absence of a genuine issue on this question.

Because Defendants have not identified any evidence establishing the absence of a genuine issue of material fact on any element of her claim for whistleblower retaliation, the Court should not grant summary judgment against Ms. Criscione on Claim 7.

## VII. Because there is no evidence that Defendants were not false or were privileged, the Court should not enter summary judgment against Ms. Criscione on Claims 8 or 9.

Under Ohio Rev. Code § 2921.03, "[n]o person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the person's the duties of the public servant, party official, attorney, or witness." Under Ohio Rev. Code § 2921.13, "[n]o person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when … [t]he statement is made in any official proceeding [or] with purpose to incriminate another."

Both statutes create civil causes of action allowing any person injured by a violation to recover damages. Ms. Criscione relies on them to bring Claims 8 and 9, premised on Defendants' false statements in official proceedings before the Ohio Department of Health, as well as their

false statements to the City of Brook Park and the Berea Municipal Court, which were made with a purpose to incriminate her.

Notably, Defendants do not dispute that any of those statements were false—let alone point to any evidence to that effect—instead, they merely argue that those statements were privileged. But the privilege they have identified, laid out in *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497 (1994), is a common-law privilege for common-law claims, rooted in the courts' sense of "public policy," *M.J. DiCorpo* at 505.

But the courts' policy judgments cannot override the General Assembly's. *Schaad v. Alder*, 176 Ohio St.3d 158 (2024) ("The court can not usurp the legislative function by substituting its judgment for that of the legislative body.") (cleaned up). In enacting statutes like §§ 2307.60, 2921.03 and 2921.13, the General Assembly manifested a policy judgment plainly contrary to that articulated in *DiCorpo* and an explicit intent to restore the liability the courts had limited in that line of cases. The Ohio Supreme Court has already acquiesced on this conflict, as its limitations on civil liability for criminal conduct "relied on case law that the legislature had abrogated, as indic[a]ted by the legislative history of R.C. 2307.60." *Jacobson v. Kaforey*, 149 Ohio St.3d 398, ¶ 57 (2016) (Kennedy, J., concurring).[64]

And even if absolute privilege were a viable defense to claims under § 2921.03 and § 2921.13, Defendants would still carry the burden to demonstrate the absence of a genuine issue of material fact as to whether all their false statements fell within that privilege. Here, they have not pointed to any evidence whatsoever, and it therefore remains possible that Ms. Criscione

---

[64] At least one of Defendants' cases, *Hershey v. Edelman*, 187 Ohio App. 3d 400 (10th Dist. 2010), suggests that Ms. Criscione may not pursue a civil remedy under § 2921.03 or § 2921.13 unless Defendants were first charged with or convicted of those offense criminally. That rule is no longer good law, as the Ohio Supreme Court has since held that "R.C. 2921.03(C) … does not require a criminal conviction as a prerequisite for civil liability," relying on reasoning that neatly applies to § 2921.13, as well. *Buddenberg v. Weisdack*, 161 Ohio St.3d 160 (2020).

could present evidence—and a jury could accept—that Defendants injured her through false statements that were not made in a privileged setting. Among the most obvious examples would be their statements to police, as "initial police work is investigatory and not a judicial proceeding contemplated by *DiCorpo*." *Scott v. Patterson*, 2003 WL 21469363, ¶ 12 (8th Dist.).[65]

Because Defendants have not identified any evidence establishing the absence of a genuine issue of material fact on any element of her claims for falsification or intimidation, the Court should not grant summary judgment against Ms. Criscione on Claims 8 or 9.

## VIII.  Because Defendants identify no deficiencies in its pleading, the Court should not enter summary judgment against Ms. Criscione on Claim 10.

Defendants argue that Claim 10 must fail because Ms. Criscione's complaint "does not allege sufficient facts to support a claim that Plaintiffs suffered damages as a result of any alleged interference with civil rights."

Where, exactly, are the Complaint's failings on that point? Again, Defendants never bother to elaborate on this assertions, never bother to address the facts that *are* alleged in the Complaint, and never bother to say why those allegations are insufficient. Because they aren't specific enough? Because they don't allege an interference with civil rights? Because there were no damages?

In the end, it doesn't matter, because the Complaint overcomes all those objections. It explicitly alleges:

- that Defendants "conspired with officials at the City of Brook Park to silence Ms. Criscione," ¶ 60;

---

[65] Defendants admit, for instance, to telling the police that Ms. Criscione had trespassed on their property, East Park Dep., 105:16–107:22, while Ms. Criscione has testified that she was at home watching a livestream of Sunday Mass. Criscione Dep., 109:14–18.

- that their conspiracy was intended to retaliate against her for exercising her "First Amendment right to criticize Ms. Thurmer's reputation and professional standing" and to "picket against East Park," Complaint, ¶¶ 60–64; and

- that Ms. Criscione "suffered injuries" as a result, because their conduct "limited her ability to freely travel and to advocate against East Park," "caused Ms. Criscione severe emotional distress," caused "repeated visits to medical professionals to manage resulting heart and blood-pressure problems," and forced her to incur "tens of thousands of dollars in attorneys' fees defending herself against the criminal charges." Complaint, ¶¶ 88–92.

So why do Defendants believe the Complaint is deficient? They never say, so no one knows.[66] The Court should reject such an "undeveloped and half-hearted argument." *Barens v. Parma City School District*, No. 1:22-cv-00103-PAB, ECF #35, at *49 (N.D. Ohio Feb. 27, 2023). Defendants have not identified any evidence establishing the absence of a genuine issue of material fact on any element of her claim for interference with civil rights, so the Court should not grant summary judgment against Ms. Criscione on Claim 10.

## IX. Because Defendants have admitted to all the elements of conversion, the Court should not enter summary judgment against Ms. Criscione on Claim 11.

"The elements of a conversion are: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Figgie v. Figgie*, 173 N.E.3d 122, ¶ 11–12 (8th Dist. 2021).

Defendants do not dispute that all these elements are satisfied. They admit that Ms. Criscione installed a clock with a camera and memory card in her mother's room;[67] they admit

---

[66] Defendants do include a citation to *Simpson v. Voiture Nationale La Societe Des Quarante Hommes*, 2021 WL 2627705, ¶ 29 (8th Dist.), but they never explain how that case, which held that a court of appeals has no jurisdiction to review a dismissal without prejudice, has any bearing on this one.

[67] East Park Dep., 222:4–9 ("Q. Okay. So Gina installed a clock in her mother's room, right? A. Yes. Q. And that clock had a digital video camera in it? A. My understanding, yes").

that they confiscated it for violating her mother's roommate's privacy despite having no evidence that she actually had a roommate;[68] they admit that their lawyer warned them Ms. Criscione was allowed to install the camera;[69] they admit that Ms. Criscione demanded its return;[70] and they admit that they refused her demands.[71]

Instead, Defendants simply allege that because "[t]he property that forms the basis of Plaintiffs' conversion claim has been returned," they can no longer be held liable. Again, Defendants are simply inventing new laws for themselves. They offer no authority for the proposition that the eventual return of stolen property—by law enforcement, and not by the tortfeasor who stole it[72]—extinguishes a conversion claim, likely because Ohio courts have always rejected this theory.

The Ohio Supreme Court addressed just such an issue more than 125 years ago in *Baltimore & Ohio Railroad Co. v. O'Donnell*, 49 Ohio St. 489, 498 (1892). There, the plaintiff store owner brought a conversion claim against the defendant railroad for diverting a shipment of guns and ammunition he had ordered. The railroad argued that it could not be held liable because it had tendered the shipment four months after diverting it, but the trial court refused to instruct the jury that the plaintiff could not recover based on that delivery. The Ohio Supreme Court affirmed that judgment, holding that once a plaintiff's property is converted, "it is no defense to his action for their value, that they were tendered to him after the conversion":

> After the conversion has taken place, the owner is under no obligation to receive the property. … So that, if there was a conversion of the plaintiff's goods by the

---

[68] East Park Dep., 224:18–226:9 ("Q. … What I'm asking though is whether you have any evidence that she did?" … A. No, because we couldn't find it.).

[69] East Park Dep., 372:3–373:10 ("[T]he advice was that it was not illegal.").

[70] East Park Dep., 233:13–15 ("Q. All right. So Gina asked for the clock back, right? A. Yes.").

[71] East Park Dep., 235:16–18 ("[D]id Sara give Gina her clock back? A. No.").

[72] Criscione Dep., 164:11–16 ("Somebody took it up to the police station and dropped it off. … No, I — well, I don't remember how it went down, I really don't.")

> defendant … his right of action for their value was complete; and any loss of the goods occuring after the conversion, must fall upon the defendant. No tender of the goods after the conversion, nor refusal to accept them, could cast the loss upon the plaintiff, because he was not then obliged to receive them.

The facts here require the same result. Despite their obligation to make an affirmative showing that there is no genuine dispute as to an essential element, they offer no evidence disputing any of the essential elements. They merely point to evidence showing that—just like the defendant in *B&O Railroad v. O'Donnell*—Ms. Criscione eventually recovered the property they stole.

And even if the law did allow tortfeasors to steal property as long as they eventually gave it back, there would remain a genuine issue of material fact on this Claim 11 because Defendant DiVincenzo denies having ever returned the memory card to Ms. Criscione.[73]

Because Defendants have not established the absence of a genuine issue of material fact on any element of her claim for conversion, the Court should not grant summary judgment against Ms. Criscione on Claim 11.

## X. Because Defendants have offered no evidence precluding it, the Court should not enter summary judgment against Ms. Criscione on Claim 12.

"In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt., Inc.*, 71 Ohio St. 3d 408, 410 (1994).

Defendants do not dispute the first element—that they intended to cause Ms. Criscione serious emotional distress—arguing only that their conduct was not extreme and outrageous as a

---

[73] East Park Dep., 239:17–20 ("We never gave her the memory card back.").

matter of law, and that Ms. Criscione cannot prove that she suffered serious emotional distress. Both arguments fail.

### A. A reasonable jury could find that Defendants' conduct was extreme and outrageous.

Deciding whether conduct is extreme and outrageous is a fact-intensive inquiry, but the Eighth District generally holds that when the claim is based on a false criminal charges, the extremeness and outrageousness of a defendant's conduct is a question for the jury.

For instance, in *Lively v. Donald Dunning, D.D.S., Inc.*, 2013 WL 1385237, ¶ 29 (8th Dist.), a dental receptionist sued her former employer for initiating felony-theft charges against her shortly after she made allegations threatening his professional license. The trial court granted summary judgment for the employer, holding that there was no evidence that doing so was outrageous. But the Eighth District reversed, holding that the facts specific to her case—such as the nature of the relationship between the plaintiff and the defendant, the defendants' knowledge that the charges might not be justified, and the consequences suffered by the plaintiff—made outrageousness a question for the jury: "Whether this constitutes 'extreme and outrageous' conduct cannot be determined as a matter of law, particularly when there are material issues of fact as to whether appellees lacked probable cause to initiate the criminal proceedings against Lively."

Because false allegations can take on so many forms, courts typically take the same cautious approach. They accept that such allegations are sufficient at the pleading stage. *See*, *e.g.*, *Pierce v. Woyma*, 2010 WL 4684722, ¶ 28 (8th Dist.) (reversing dismissal of IIED claims premised on allegations of obstructing official business against a witness who "did nothing" at a crime scene). And if the allegations are borne out by credible evidence, courts hold that such decisions are better decided by a jury. *See*, *e.g.*, *Coleman v. Beachwood*, 2009 WL 3387948, ¶ 29

(8th Dist.) (holding allegations of a false criminal allegations "are sufficient to demonstrate the existence of genuine issues of material fact relating to appellant's claim for intentional infliction of emotional distress.").

Following these standards, Ms. Criscione should easily advance to a jury, as Defendants have already produced evidence that they instituted criminal charges against her without probable cause, ECF #35-3, and there is evidence of countless factors compounding the extremeness and outrageousness of their conduct.[74] As discussed above, this includes evidence that:

- Defendants spent years relying on Ms. Criscione's constant presence to perform work that would otherwise have been performed by paid staff.

- When Ms. Criscione began complaining about persistent problems with deteriorating conditions, neglect, and malpractice, Defendants ordered their staff to stop speaking with Ms. Criscione, to stop taking her calls, to block her on social media, and to avoid her in personal interaction.

- Even worse, despite knowing that Ms. Criscione made an effort to visit or speak with her mother multiple times daily, Defendants ordered staff to stop connecting her calls to her mother.

- And to keep any errant employees from running afoul of these rules, Defendants took their employees' phones and deleted Ms. Criscione's number.

- As her access dwindled, Ms. Criscione requested her mother's medical records to continue monitoring her care, but Defendants refused to produce them.

- When they discovered that Ms. Criscione had installed a camera to monitor her mother's care, Defendants stole it and refused to give it back.

---

[74] While Defendants seem to imply that Ms. Criscione only believes there were five events giving rise to this claim, their list is not a complete list of the events she identified in her deposition, as she also noted one of their instances of tampering with evidence in support of the charges (Criscione Dep., 184:12–13), nor did she ever represent that the list she did offer was exhaustive (Criscione Dep., 189:1–2).

- As Ms. Criscione persisted in her attempts to keep a watchful eye on her mother's care, Defendants initiated eviction proceedings against her, based on false statements about her medical history, symptoms, and treatment.

- And even before those proceedings were underway, Defendants acted as though Ms. Criscione's mother was already gone, failing to feed and hydrate her, resulting in a loss of nearly a quarter of her body weight in the last two months of her stay at East Park.

- And even after her mother was evicted, dead, and buried, Defendants would not relent. When they learned that she had reported their neglect to the Ohio Department of Health, they lied to the police, falsely claiming that Ms. Criscione had threatened them and trespassed on their property.

- Because of their lies, Ms. Criscione, who should have been allowed to grieve her mother's death, instead spent the next six months fighting charges over Defendants' allegation that she committed a crime "by posting multiple negative messages to a website in regards to the Administrator of the East Park Nursing Home Care Center."

While it might be understandable if Defendants were to deny the truth of those allegations or dispute the evidence, it beggars belief to maintain that such conduct amounts only to "annoyances, petty oppressions, or other trivialities" and cannot be considered outrageous.[75] Defendants' analysis on this point relies primarily on *Demsey v. Haberek*, 2017 WL 1407378 (8th Dist.), where a psychiatric patient alleged his sister had falsely reported to the police that he was out of touch with reality, threatening to kill family members, and behaving erratically. The trial court dismissed the claim and the Eighth District affirmed, holding that because the complaint included copies of medical records concluding that he was, in fact, out of touch with reality, threatening to kill family members, and behaving erratically, the plaintiff could not prove any set of facts entitling him to relief on his claim.

---

[75] Mot. for Summ. J., 30–31.

But such a decision does little to support Defendants' argument. *Demsey* did not contradict the Eighth District's previous holdings that false police reports create a jury question as to the "extreme and outrageous" element; it merely held that *true* police reports do not create such a question.

Unlike *Demsey*, Ms. Criscione has marshaled more than enough evidence from which a jury could conclude Defendants' conduct was extreme and outrageous. Defendants' motion does not purport to show that a jury could not credit that evidence; it merely argues that they it is insufficient as a matter of law. Because the Eighth District rejects their one-size-fits-all rule insulating false police reports from liability, Defendants have failed to prove the absence of a genuine issue as to whether their conduct was extreme or outrageous.

### B. A reasonable jury could find that Ms. Criscione suffered serious emotional harm.

Defendants also argue they are entitled to summary judgment on this claim because Ms. Criscione has "not presented evidence of serious mental anguish," but yet again, they are attempting to impermissibly invert the burden of proof. It is not Ms. Criscione's job to prove her case in advance of their motion for summary judgment; it is their motion's job to prove she will be unable to make her case.

Their motion does no such thing. It says that Ms. Criscione has not produced any medical records or bills, but it provides no evidence to that effect; it merely cites defense counsel's unsworn assertion to that effect during Ms. Criscione's deposition. It then flatly concludes there is "no evidence of serious emotional distress," but it offers no evidence to support that assertion.

Besides being insufficient to carry their burden or Rule 56, both assertions are misrepresentations of the record. For reasons unknown, Defendants seem to have simply chosen not to disclose:

- that Ms. Criscione testified as to the extent of her emotional injuries;[76]

- that Ms. Criscione provided Defendants with an authorization requestion medical records on their own, and then independently gathered and produced medical records in response to their request;[77] or

- that they are in possession of an assessment from Ms. Criscione's treating psychologist that "her severe anxiety and depression were caused by a seemingly specious criminal complaint that was filed against her."[78]

And in ignoring all this evidence, they have likewise failed to explain why a jury could not accept all of it as true. Because Defendants have not identified any evidence establishing the absence of a genuine issue of material fact on any element of her claim for intentional infliction of emotional distress, the Court should not grant summary judgment against Ms. Criscione on Claim 12.

**XI.    Because Defendants have identified no evidence precluding it, the Court should not enter summary judgment against Ms. Criscione on Claim 18.**

    **A.    Because she is a member of a clearly defined class of exercising their First Amendment right to criticize East Park's misconduct, 42 U.S.C. § 1985(3) protects Ms. Criscione against conspiracies against her civil rights.**

A conspiracy claim under 42 U.S.C. § 1985(3) must allege the existence of some "class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). While the complaint in *Griffin* alleged a conspiracy based on prototypical race-based animus, courts have relied on *Griffin*'s broad conception of § 1985(3)'s equal-protection safeguards to expand the statute's protection to all manner of classes

---

[76] *See, e.g.*, Criscione Dep., 41:21–22 ("What I'm going through here makes me very upset and distraught"); 189:5–13 ("Q. Did you have medical treatment because of the distress? A. Like I said -- yes. Q. What conditions, what medical conditions have you had because of this emotional distress? A. I have generalized anxiety, PTSD.").

[77] Most recently on July 30, 2023, at 3:10 p.m., as CRISCIONE_009907-CRISCIONE_010177

[78] Declaration of George F. Klemperer, Ph.D., ECF #42-7, Ex. A.

within the ambit of normal American anti-discrimination law, including victims of conspiracies on the basis of "race, ethnicity, religion, and/or national origin,"[79] sex,[80] gender,[81] disability,[82] "political beliefs or associations,"[83] and—most importantly—whistleblowing activity.[84]

The Sixth Circuit's approach to this issue has been particularly expansive. Relying on the Supreme Court's focus on protecting "rights secured by the law to all," it has permitted § 1985(3) claims even for a class defined as a "white middle class family." *Azar v. Conley*, 456 F.2d 1382, 1384 (6th Cir. 1972). Given that low bar, it should not be surprising that the Sixth Circuit gives at least as much protection to classes of people engaged in First Amendment–protected activity: "[Section] 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)." *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973).

In *Cameron* , the plaintiff sued Sheriff Brock and two deputies, alleging they conspired to arrest him without probable cause because he had accused the sheriff of misconduct. After the jury returned a plaintiff's verdict finding the sheriff "conspired to deprive the appellee … of the protection of the First Amendment," the sheriff appealed, arguing that the plaintiff was not a member of a class protected under § 1985(3). But the Sixth Circuit affirmed, holding that the

---

[79] *Turkmen v. Hasty*, 789 F.3d 218, 252 (2d Cir. 2015).

[80] *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir. 1989).

[81] *Bedford v. Se. Pennsylvania Transp. Auth.*, 867 F. Supp. 288, 294 (E.D. Pa. 1994).

[82] *Trautz v. Weisman*, 819 F. Supp. 282, 295 (S.D.N.Y. 1993).

[83] *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987).

[84] *Lapin v. Taylor*, 475 F. Supp. 446, 450 (D. Haw. 1979) ("[W]histle blowers as defined herein are a 'class' within the meaning of s 1985(3).").

elements were satisfied where "the purpose of the deprivation was to halt or discourage anti-Brock activity."[85]

And in *Glasson v. City of Louisville*,[86] police stole and destroyed an anti-war protestor's sign because they determined it was "detrimental" to President Nixon, whose motorcade was approaching. The trial court dismissed the protestor's § 1985(3) claim, saying there was "no evidence that their action was motivated by a class-based invidious discriminatory animus."[87] The Sixth Circuit reversed, holding that a plaintiff can recover on proof of the defendants' intent to draw a line between those whose opinions it endorses and those whose opinions it rejects when making charging decisions: "Appellees drew a line that was not merely invidious but one that also struck at the very heart of the protection afforded all persons by the First and Fourteenth Amendments."[88]

Like in *Glasson*, the evidence shows that Ms. Criscione spoke out about her opposition to East Park's misconduct, and that criticism resulted in a conspiracy to undermine her First Amendment right. And like in *Cameron*, Ms. Criscione was a member of a class of people critical of East Park, and that conspiracy was the result of Ms. Criscione standing on the wrong side of the clearly defined line between persons making positive comments about East Park and persons making negative comments about East Park.

As in *Cameron* and *Glasson*, then, Ms. Criscione has alleged that she was a member of a class of people—along with her mother, Mr. Frederick, and Ms. Kroesen—critical of East Park and that she was denied the protection of the First Amendment because of her membership in

---

[85] *Cameron*, 473 F.2d at 610.
[86] 518 F.2d 899 (6th Cir. 1975), *overruled by Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228 (6th Cir. 2015).
[87] *Glasson*, 518 F.2d at 903 (cleaned up).
[88] *Glasson*, 518 F.2d at 912.

that class. Defendants have identified no evidence to prove that the conspiracy does not exist, that the class does not exist, or that the class's exercise of its rights was not the basis for their retaliation, and they have therefore failed to carry their burden to demonstrate the absence of a genuine issue on this question.

### B. Because she is a member of a "class of one," Ms. Criscione is protected against conspiracies against civil rights under 42 U.S.C. § 1985(3).

To establish "class of one" protection, "a plaintiff must demonstrate 'that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' ... Where a plaintiff succeeds in identifying similarly situated individuals, plaintiff must also (1) refute every conceivable basis that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will." *Kesterson v. Kent State Univ.*, 345 F. Supp. 3d 855, 878 (N.D. Ohio 2018).

In *Kesterson*, a college softball player brought a class-of-one claim against her coach, alleging retaliation for reporting that the coach's son had raped her, while a player who was raped by someone other than the coach's son faced no retaliation. The coach argued that other differences between those reports justified her their disparate treatment, but the district court held that she was not entitled to summary judgment, as a jury could nonetheless find that the coach was motivated by animus or ill will.

Ms. Criscione's Complaint also passes this test. It alleges (1) the existence of similarly situated people; (2) a difference in how Defendants treated those similarly situated people and how they treated Ms. Criscione; and (3) that the basis for that difference was First Amendment retaliation.[89] And it satisfies either prong of the last piece of the test, as it alleges that there was

---

[89] Complaint, ¶ 180–83.

no probable cause supporting the charges against Ms. Criscione (which is the only rational basis for initiating a criminal prosecution),[90] and that the charges were motivated by animus or ill will.[91]

Again, Defendants identify no evidence undermining any of these allegations, and they have therefore failed to carry their burden to demonstrate the absence of a genuine issue on this question. Because there was no rational basis for treating her differently than people with different messages online, and because she was part of a class of people who had come together in a common purpose to criticize East Park, Ms. Criscione is protected by § 1985's provisions prohibiting conspiracies against civil rights.

## XII. Because Ms. Criscione has not raised "a claim for punitive damages," the Court should not enter summary judgment against Ms. Criscione on that imaginary claim.

Defendants claim they are entitled to summary judgment on Plaintiffs' claim for punitive damages because "a claim for punitive damages cannot stand alone."[92] Perhaps they are correct, but it is unclear what that has to do with this case, as Ms. Criscione has never raised such a claim—in this action, or in state court. Each claim instead specifies a specific cause of action, either statutory or recognized at common law. Because it appears to be boilerplate pasted in from a motion in some unrelated case, the Court should deny as moot Defendants' motion for summary judgment on the phantom "claim for punitive damages."

---

[90] Complaint, ¶ 114.
[91] Complaint, ¶ 183.
[92] Defendants' Mot. for Summary Judgment, 34.

**XIII.  To the extent any claim would fail because Ms. Criscione has failed to produce sufficient evidence, the Court should defer consideration of Defendants' motion for summary judgment.**

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56.

For instance, in *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011), a First Amendment plaintiff sought to delay summary judgment because the defendants had not responded to any of his discovery demands. The district court granted summary judgment anyway, holding that the plaintiff had failed to sufficiently identify what discovery he needed or why. But the Sixth Circuit reversed, holding that denying the motion was an abuse of discretion because the disputed discovery demands were already in the record and had "obvious potential" to inform its decision on summary judgment.

Here, Ms. Criscione's declaration offers several grounds for additional discovery:

- Defendants have never produced an abundance of evidence she requested in discovery in state court;

- Defendants' delays in producing any discovery have thwarted her ability to conduct any follow-up discovery based on the information they did produce;

- the attorney she hired to handle her leading claims is in the wind, and has not gathered the expert reports he promised her; and

- she has discovered a new witness supporting her class-based discrimination theory, but that witness will not testify voluntarily.[93]

---

[93] Declaration of Gina Criscione, ECF #42-8, ¶¶ 4–8.

If the Court believes Ms. Criscione has failed to demonstrate a genuine issue of material fact on any of her claims, it should therefore permit her to conduct additional discovery aimed at those issues before granting summary judgment.

## XIV. The Court should schedule this motion for an oral argument before granting any part of it.

Ms. Criscione has raised many claims, and Defendants have filed a sprawling motion for summary judgment raising 16 different arguments. Because it is neither possible nor practical within the Court's current page limits to account for every piece of evidence entitling her to relief, Ms. Criscione respectfully requests that the Court set the motion for an oral argument before granting summary judgment on any of her claims. Doing so will allow the parties more fully address the evidence available in response to any issues the Court identifies as particularly important and avoid the injustice of an unfavorable judgment due to the failure to anticipate any specific piece of evidence that might become relevant as the Court's review unfolds.

### CONCLUSION

Defendants' motion is a largely evidence-free litany of mere denials of liability. Because they have failed—indeed, rarely even attempted—to carry their burden of proving the absence of a genuine issue of material fact, the Court should not enter summary judgment on any of Ms. Criscione's claims and should instead allow her to proceed to discovery or trial.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*

**CERTIFICATE OF SERVICE**

This case was assigned to the standard track. This case exceeds the standard 20-page limit for dispositive-motion briefing but is within the 40-page limit that Ms. Criscione sought leave on January 9, 2026, ECF #41.

**CERTIFICATE OF SERVICE**

I certify that on January 9, 2026, this document was served on opposing counsel as provided by Fed. R. Civ. P. 5(b)(2)(E).

/s/Brian D. Bardwell
Brian D. Bardwell (0098423)
*Attorney for Plaintiffs Gina Criscione and Estate of Dorothy Mandanici*