IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GINA CRISCIONE, et al. | ) | CASE NO. 1:24-CV-01446 |
| | ) | |
| Plaintiffs | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | **DEFENDANTS' MOTION TO STRIKE** |
| | ) | **IMPROPER ATTACHMENTS WHICH** |
| LAURA DiVINCENZO, et al. | ) | **FAIL TO COMPLY WITH FEDERAL** |
| | ) | **CIVIL RULE 56** |
| Defendants | ) | |

Defendants East Park Retirement Community, Inc., Laura DiVincenzo and Sara Thurmer hereby submit their Motion to Strike Improper Attachments which fail to Comply with Federal Civil Rule 56.

**I.   INTRODUCTION**

Pending before this Court is Defendants' Motion for Summary Judgment, which was filed on November 26, 2025. Plaintiffs filed their Brief in Opposition on January 10, 2026. Plaintiffs submitted the following eight documents in connection with their Brief in Opposition to Defendants' Motion for Summary Judgment:

1. Affidavit of Tricia Tessmer [Doc # 42-1, PageID # 2181-82];
2. Affidavit of Jason Frederick [Doc # 42-2, PageID # 2183-84];
3. Mark K. Shoag, M.D.'s expert report [Doc # 42-3, PageID # 2185-91];
4. Affidavit of Subodh Chandra [Doc # 42-4, PageID # 2192];
5. Affidavit of Denise Kroesen [Doc # 42-5, PageID # 2193-94];
6. Affidavit of Yolanda Odom [Doc # 42-6, PageID # 2195-97];
7. Declaration of George F. Klemperer, Ph.D. [Doc # 42-7, PageID # 2198-2203]; and
8. Affidavit of Gina Criscione [Doc # 42-8, PageID # 2204-05].

Of these eight documents, seven fail to meet the requirements of Fed.R.Civ.P. 56(c), and thus, must be stricken.

## II. FACTUAL BACKGROUND

### A. Only One of Plaintiffs' Attachments Complies with Fed.R.Civ.P. 56(c).

The Affidavit of Subodh Chandra satisfies the requirements of Fed.R.Civ.P. 56(c); however, the remainder of Plaintiffs' attachments do not satisfy the requirements of Fed.R.Civ.P. 56(c).

### B. The Affidavits Attached to Plaintiffs' Brief in Opposition Are Not Based on Personal Knowledge and Contain Facts That Are Inadmissible in Evidence.

Plaintiffs have attached four affidavits from former and current East Park Care Center ("East Park") employees and one affidavit from Plaintiff Gina Criscione ("Plaintiff"). The contents of these affidavits are either outside the personal knowledge of the affiant or are based on inadmissible hearsay.

All the affidavits attached affirm, in some form, that the affiant has personal knowledge of the facts set forth in the affidavit and are competent to testify to those matters. This, however, is insufficient to demonstrate personal knowledge.

For example, Yolanda Odom – in her sworn affidavit – affirms that as a bath aide for Decedent Dorothy Mandanici ("Decedent"), Plaintiff would "often sit with her mother to cut her food and help her eat in her last year at East Park." [Doc. #42-6, PageID #2195 at ¶ 5]. How would a bath aide know what occurs in the dining room? There are no facts in Ms. Odom's affidavit that outline specifically how she would have personal knowledge of Decedent's eating habits.

Additionally, most of the affidavits attached contain facts that are inadmissible in evidence. For example, Jason Frederick's affidavit contains inadmissible hearsay. His affidavit discusses the alleged low quality care East Park provided to its residents. When he addressed it with the HR Director and Sara Thurmer, he was told to "mind his business." [Doc # 42-2, PageID # 2183-84 at ¶ 11]. This is clearly an out-of-court statement that does not fall within any of the hearsay exceptions provided in the Federal Rules of Evidence.

Any portion of any affidavit or declaration, attached by Plaintiffs in their Brief in Opposition, that does not comply with Fed.R.Civ.P. 56(c) must be stricken.

### C. The Expert Reports Attached to Plaintiffs' Brief in Opposition Are Inadmissible in Evidence, and Therefore, Do Not Comply With Fed.R.Civ.P. 56(c).

Plaintiffs have attached two expert reports to their Brief in Opposition. Mark B. Shoag, M.D. authored a report, dated July 11, 2023, pertaining to Decedent's alleged pressure ulcers, which includes photographs of the alleged ulcers [Doc # 42-3, PageID # 2185-91]. George F. Klemperer, Ph.D.'s expert report is attached to his signed declaration [Doc # 42-7, PageID # 2198-2203]. Although it is titled a declaration, Dr. Klemperer's declaration also incorporates and references the opinions made in his report dated July 31, 2023. Therefore, not only did Plaintiffs attach Dr. Klemperer's expert report, but his signed declaration imitates a separate report.

Expert reports are neither admissible in evidence nor are they satisfactory evidence under Fed.R.Civ.P. 56(c). Accordingly, Dr. Shoag's expert report and the photographs attached to it, and Dr. Kemplerer's declaration and his expert report attached to it must be stricken.

### D. George F. Klemperer's Declaration Does Not Comply with 28 U.S.C. § 1746.

Dr. Klemperer's unsworn declaration states, "I declare the above to be **true** under penalty of perjury of the laws of the United States of America." (emphasis added). 28 U.S.C. § 1746 explicitly states that the declarant must declare under penalty of perjury that the foregoing is **true and correct**. Dr. Klemperer's declaration does not meet this requirement and must be stricken.

## II. LAW AND ARGUMENT

### A. Legal Standard.

#### 1. This Court has broad discretion to grant Defendants' Motion to Strike.

"A court has broad discretion in determining whether to grant a motion to strike." *Spencer v. Cleveland Clinic Found.*, No. 1:21-CV-01909, 2022 WL 2954175, at *12 (N.D. Ohio

July 26, 2022), *citing McKinney v. Bayer Corp.*, No. 10-CV-224, 2010 WL 2756915 (N.D.Ohio July 12, 2010). As such, federal courts in this Circuit "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter," Fed.R.Civ.P. 12(f), including "a memorandum in violation of its local rules." *Novak v. Federspiel*, No. 1:21-CV-12008, 2023 WL 1094545, at *21 (E.D.Mich. Jan. 27, 2023), *citing Newman v. Univ. of Dayton*, No. 3:17-CV-179, 2017 WL 4076517, at *3 (S.D.Ohio Sept. 14, 2017). Correlatively, in *Newman*, the district court noted that the Sixth Circuit had recognized that "a district court has broad discretion to manage its docket"—including by striking a memorandum in violation of its local rules. *Id*. at *3, *citing*, *inter alia*, *Am. C.L. Union of Kentucky v. McCreary Cnty., Ky.*, 607 F.3d 439, 451 (6th Cir. 2010) (holding that "based on the district court's power to manage its own docket, the court had ample discretion to strike Defendants' late renewed motion for summary judgment"), *citing Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); *see also Martinez v. United States*, 865 F.3d 842, 844 (6th Cir. 2017)(affirming district court's order striking memorandum exceeding the 20-page limit set forth in local rule); *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 516 (6th Cir. 2003)("[T]rial courts have inherent power to control their dockets.").

Some judges in the Northern District of Ohio have reached the same conclusion. Although Rule 12(f) only applies to pleadings, a court has "the inherent authority to strike non-pleadings in order to manage its docket." *Spencer v. Cleveland Clinic Found.*, No. 1:21-CV-01909, 2022 WL 2954175, at *12 (N.D.Ohio July 26, 2022), *White v. City of Cleveland*, No. 1:17-CV-01165, 2020 WL 4207668, at *3 (N.D.Ohio July 22, 2020), and *Sec'y of U.S. Dep't of Lab. v. Kavalec*, No. 1:19-CV-00968, 2020 WL 3977347, at *11 (N.D.Ohio July 14, 2020), <u>all</u> *citing Taylor v. JP Morgan Chase Bank*, N.A., No. 3:15-CV-509-HBG, 2018 WL 5777497 (E.D. Tenn. Nov. 2, 2018). "[T]rial courts make use of their inherent power to control their dockets, *Anthony,* 339 F.3d at 516, when determining whether to strike documents or portions of

documents." *A Metal Source, LLC v. All Metal Sales, Inc.*, No. 1:14-CV-01020-DAP, 2016 WL 245981, at *3 (N.D.Ohio Jan. 21, 2016), *citing Zep Inc. v. Midwest Motor Supply Co.*, 726 F. Supp.2d 818, 822 (S.D.Ohio 2010).

### 2. **A party opposing that a fact can be genuinely disputed must support the assertion with evidence that complies with Fed.R.Civ.P. 56(c).**

The Federal Rules of Civil Procedure are clear as to the type of evidence that can and cannot be considered when deciding whether to grant or deny a motion for summary judgment:

> (c) PROCEDURES.
>
> (1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, **including depositions, documents, electronically stored information, affidavits or declarations, stipulations** (including those made for purposes of the motion only)**, admissions, interrogatory answers, or other materials**; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c) (emphasis added). The statute lays out the exclusive list of evidence that may be used to prove that a fact can or cannot be genuinely disputed.

### B. **An Affidavit or Declaration Submitted With a Motion for Summary Judgment Must Be Made on Personal Knowledge, Set Out Facts Admissible in Evidence, and Show the Affiant is Competent to Testify to the Matters Set Forth in the Affidavit.**

In order for a court to consider an affidavit or declaration attached to a motion for summary judgment, the affidavit or declaration must satisfy the three following requirements:

> (1) [I]t "shall be made on personal knowledge"; (2) it "shall set forth such facts as would be admissible in evidence" at the time of trial; and (3) it "shall show affirmatively that the affiant is competent to testify to the matters stated therewith." Fed. R. Civ. Pro. 56(e). Additionally, "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id*.

*Giles v. University of Toledo*, 241 F.R.D. 466 (N.D.Ohio 2007).

An affidavit that does not satisfy these requirements is subject to a motion to strike and will not be considered by the Court in ruling upon a motion for summary judgment. *Id.*, *citing Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 954 (S.D.Ohio 2000). "In resolving a motion to strike, the Court should use 'a scalpel, not a butcher knife.'" *Giles*, *quoting Perez v. Volvo Car Corp.*, 247 F.3d 303, 315–16 (1st Cir.2001). "Thus, it is appropriate for the Court to strike portions of affidavits that do not satisfy the requirements of Rule 56(e)." 11 *James Wm. Moore, Federal Practice* § 56.14[1][d] (Matthew Bender 3d ed.), n. 46 and 47.

1. **<u>Personal knowledge</u>**.

When a party attaches an affidavit or declaration to a motion for summary judgment, she must be able to demonstrate that the facts set forth are based on her personal knowledge. *Giles* at 469, *citing Sperle v. Michigan Dep't of Corrections*, 297 F.3d 483, 495 (6th Cir.2002); *Smartt v. Clifton*, No. C–3–96–389, 1997 WL 1774874, at *11 (S.D.Ohio 1997); Fed. R. Civ. Pro. 56(e). It is not enough that an affidavit is based on mere information or belief; rather, it must be based on facts the affiant **knows** to be true. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950), *overruled on other grounds* by *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

"In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience and established by specific facts." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1355 n. 2 (6th Cir.1996); *Harrah's Entertainment, Inc. v. Ace American Ins. Co.*, 100 Fed.Appx. 387, 394 (6th Cir.2004) (a court should strike affidavits that do nothing more than reach legal conclusions); *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir.1998) ("[a]lthough 'personal knowledge' may include inferences and opinions, those inferences must be substantiated by specific facts").

### a. Tricia Tessmer's Affidavit (¶¶ 4-5, 9-11, and 13-14).

In Ms. Tessmer's affidavit, she affirms she was an employee at East Park for approximately five years; however, the affidavit fails to mention what position she held, what responsibilities she was delegated, etc. Averring to be an employee for some period of time without specifying a role is insufficient to establish personal knowledge of the following facts set forth in her affidavit:

> 4. I quit in 2020 because the center, under the management of Administrator Sara Thurmer, refused to provide PPE **for all her staff members** to protect against COVID-19. I was simultaneously working for a second nursing home at the time, and management there was uncomfortable with me working at East Park given its failure to adhere to basic health protocols.
>
> 5. I can vouch for the truth of many of Gina Criscione's complaints about East Park's neglect for its residents and employees. We had problems with bedbugs, cockroaches, and spiders that were frequently left unresolved. **Our paychecks bounced**. We were frequently understaffed, and nurses left the residents for half of their shifts to sleep in their cars. We often did not have medical supplies our residents needed. Working at East Park is like working in a prison.
>
> 6. From my professional experience working for other nursing homes, I know that these problems are unnecessary and avoidable.
>
> 9. Gina regularly called our front desk to ask who was working on a given shift and ensure that her mother was not neglected. Gina also liked to call and wish her mother a good night. Although Gina called more often than the average family member, her call volume was not unheard-of.
>
> 10. When Gina wanted to check on her mother's care, **she frequently had to call more than once, because nurses would deliberately avoid her**, either by failing to call her back with the information she needed or by refusing to pick up the phone altogether.
>
> 11. When Gina wanted to wish her mother goodnight, **she frequently had to call more than once**, because staff members were not always available to go to her mother's room to help connect them. The normal protocol in that situation would be to have Gina call back after a few minutes and try again until we could connect her.
>
> 13. Gina's calls to our main number, 216-267-7229, should have had no effect on Sara Thurmer. **Sara did not answer that number, and virtual1y all those calls would come and go without Sara knowing anything about them**. I don't know of Gina ever calling that number to ask for Sara, or to say anything about her.

14. In my time at East Park, Sara Thurmer never said or did anything that made me think Gina was calling her too frequently. **She never showed any signs that she felt distressed, threatened, harassed, intimidated, or abused by Gina**. Everyone understood that Gina's only motivation in calling us was to protect her mother.

For example, paragraphs 9 through 11 indicate that Ms. Criscione would regularly call the front desk to check on her mother but would frequently need to call more than once because nurses would deliberately avoid her calls or fail to connect her to her mother. What position did Ms. Tessmer hold while at East Park? How did that position give her the opportunity to learn the frequency of Plaintiff's calls and the reason for her calls? Ms. Tessmer's affidavit is lacking sufficient facts demonstrating personal knowledge.

Further, simply being an employee at a facility does not demonstrate how Ms. Tessmer knew Plaintiff would call East Park's main number. It also does not demonstrate how Ms. Tessmer was put in a situation where she would ever observe Ms. Thurmer in distress or feeling threatened, harassed, intimidated, or abused,

Therefore, Paragraphs 4-5, 9-11, and 13-14 of Tricia Tessmer's affidavit must be stricken for lack of personal knowledge.

### b.      Jason Frederick's Affidavit (¶¶ 4-6 and 8-12).

In Mr. Frederick's affidavit, he avers that he has been the Director of Maintenance at East Park for seven months.[1] He alleges he has seen firsthand the poor treatment towards residents and their family members. But, again, his affidavit fails to demonstrate he knows any of the following is happening:

> 4. I do not personally know Gina Criscione, but I have noticed that her complaints match the patterns I see here. **Families find it necessary to call East Park and the administrator several times a day**. But after the employees find out who is calling, they **purposefully evade** family members' phone calls.

---

[1] Jason Frederick is no longer employer at East Park Care Center.

> 5. I know that the administrator and HR employee have directed staff to lie about their availability and not to answer certain phone calls. Sara Thurmer has labeled certain residents or family members as "problems," a designation that precedes ignored phone calls.
>
> 6. When families finally get a hold of employees, **employees are often rude and inaccessible**, even though it is their job to communicate with the residents' families.
>
> 9. There is **excessive turnover among employees here**, and this revolving door causes confusion for the residents.
>
> 10. At East Park, there are discrepancies in how we treat people who pay out of pocket, and those who use Medicaid/Medicare. **Often times, residents on Medicaid/Medicare get poorer treatment**.

As the Director of Maintenance, how would he know what residents are on Medicaid or Medicare? As the Director of Maintenance, how would he know the turnover rate for the **entire** nursing home? Does he frequently monitor staff while they are on the phone with family members? Without more specificity, it cannot be assumed that Mr. Frederick observed these acts firsthand. Simply working at East Park is insufficient. Therefore, Paragraphs 4-6 and 8-12 of Jason Frederick's affidavit should be stricken for lack of personal knowledge.

    c.  <u>**Yolanda Odom's Affidavit (¶¶ 5-9).**</u>

In Ms. Odom's affidavit, she avers that she was an STNA at East Park from 2011 to 2021, then began working at East Park again in 2023. When Decedent was a resident at East Park, Ms. Odom was her bath aide. Outside of what occurred during Decedent's scheduled shower days, during which Decedent received a shower from Ms. Odom, Ms. Odom's affidavit does not demonstrate how she has personal knowledge of the following:

> 5. Gina often sat with her mother to cut her food and help her eat in her last year at East Park. This is supposed to be the work of an STNA.
>
> 6. Gina often put bibs on residents when it was time for them to eat. This is supposed to be the work of an STNA.
>
> 7. Gina often helped her mother to and from the bathroom. This is supposed to be the work of an STNA.

> 8. Gina often wiped down, sanitized, and tidied up her mother's room. This is supposed to be the work of East Park's housekeeping staff.
>
> 9. Gina often chose to take her mother's clothes home to launder them. This is usually the work of East Park's laundry employees.

Because she is an STNA at East Park, Ms. Odom may have personal knowledge regarding an STNA responsibilities. But that is the extent of her personal knowledge as it relates to the above Paragraphs. She has not demonstrated firsthand knowledge or observations of Plaintiff feeding her mother, putting a bib on her mother, or helping her mother to and from the bathroom. Based on this affidavit, Ms. Odom's only interaction with Plaintiff and Decedent was Ms. Odom's capacity as a bath aide. She does not assert any other circumstances in which she encountered either Plaintiff or Decedent. Therefore, Paragraphs 5-9 of Yolanda Odom's affidavit must be stricken for lack of knowledge.

### d. <u>Gina Criscione's Affidavit (¶¶ 4-6)</u>.

Plaintiff attached her own affidavit laying out procedural facts of the two state cases that preceded this one. In Paragraphs 4-6, Ms. Criscione states "my understanding is that …"

> 4. For reasons I do not know, Attorney Carlin has essentially disappeared from the case. I have not heard from since 2023, and **my understanding** is that Attorney Bardwell has repeatedly attempted to secure his assistance, to no avail.
>
> 5. Although he was responsible for gathering expert reports in the federal case, **my understanding** is that he has either never done so or has failed to turn over whatever he may have gathered.
>
> 6. Although he was responsible for obtaining certain testimony from other witnesses, **my understanding** is that he has either never done so or has failed to turn over whatever he may have gathered.

Without substantiating facts, mere "understanding" cannot establish personal knowledge. *Giles* at 469. Therefore, Paragraphs 4-6 of Gina Criscione's affidavit must be stricken for lack of knowledge.

### 2. <u>Facts admissible in evidence</u>.

Not only does an affidavit need to be based on personal knowledge, but it must set forth facts that are **admissible in evidence**. Fed.R.Civ.P. 56(c)(4). (emphasis added). Plaintiffs have

attached affidavits that contain evidence that is irrelevant, hearsay, and legal conclusions by a lay witness. All of these items are inadmissible in evidence and must be stricken.

### a. **Irrelevant evidence is not admissible.**

Fed.R.Evid. 401 provides that evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Irrelevant evidence is inadmissible. Fed.R.Evid 402.

Plaintiffs have brought claims for Survivorship (Claim 1); Wrongful Death (Claim 2); Breach of Contract (Claim 3); Violations of the Nursing Home Bill of Rights (Claim 4); Malicious Prosecution (Claim 5); Abuse of Process (Claim 6); Whistleblower Retaliation (Claim 7); Falsification (Claim 8); Intimidation (Claim 9); Interference with Civil Rights (Claim 10); Conversion (Claim 11); and Intentional Infliction of Emotional Distress (Claim 12); Some of Plaintiffs' attached affidavits contain statements irrelevant to any of these claims.

### 1) *Tricia Tessmer's Affidavit (¶¶ 4-5).*

In Ms. Tessmer's affidavit, she asserts the following:

> 4. I quit in 2020 because the center, under the management of Administrator Sara Thurmer, refused to provide PPE for all her staff members to protect against COVID-19. **I was simultaneously working for a second nursing home at the time, and management there was uncomfortable with me working at East Park given its failure to adhere to basic health protocols**.
>
> 5. I can vouch for the truth of many of Gina Criscione's complaints about East Park's neglect for its residents and employees. We had problems with bedbugs, cockroaches, and spiders that were frequently left unresolved. **Our paychecks bounced.** We were frequently understaffed, and nurses left the residents for half of their shifts to sleep in their cars. We often did not have medical supplies our residents needed. **Working at East Park is like working in a prison**.

Paragraphs 4 and 5 are irrelevant to any of Plaintiffs' claims. For example, whether Ms. Tessmer's second employer was uncomfortable with her working at East Park, whether

employee's paychecks bounced, or whether working at East Park is "like working in a prison" is completely irrelevant to any claim asserted against these Defendants. Therefore, Paragraphs 4-5 of Tricia Tessmer's Affidavit should be stricken because they are irrelevant to any of Plaintiffs' claims

### 2) *Jason Frederick's Affidavit (¶ 12).*

Mr. Frederick states in his affidavit that "Due to the shockingly low quality of care I have seen at East Park Care Center, I would never admit [my mother-in-law] here." [Doc # 42-2, PageID # 2183-84 at ¶ 12]. This is irrelevant to Plaintiffs' case. Mr. Frederick's opinion about where he would send his mother-in-law has nothing to do with the care and treatment Decedent received from East Park or any of the claims asserted against Defendants. Therefore, Paragraph 12 of Jason Frederick's affidavit should be stricken because it is irrelevant to any of Plaintiffs' claims.

### b. **Hearsay is inadmissible in evidence.**

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay is not admissible except as provided by the Federal Rules of Evidence. *Giles*, 241 F.R.D. 466, 471. Courts cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion. *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273 (6th Cir.1997).

### 1) *Jason Frederick's Affidavit (¶11).*

Mr. Frederick avers that when he brought up concerns about the quality of care for residents, the HR Director and Administrator have told him to "mind his business." [Doc # 42-2, PageID # 2183-84 at ¶11]. This is an out-of-court statement being asserted to prove Plaintiffs' claim that Defendants were more concerned with profit over quality of care. This does not fall

under any hearsay exception and is inadmissible hearsay. Therefore, Paragraph 11 of Jason Frederick's affidavit must be stricken.

### c. Lay witnesses may not offer legal conclusions.

A witness may testify to matters he or she has personal knowledge of and is competent to testify to. Fed.R.Evid. 601, 602. While a witness can testify to what he or she observed or facts within his or her personal knowledge, the witness may not provide a legal conclusion.

#### 1) Tricia Tessmer's Affidavit (¶¶ 6 and 15).

Ms. Tessmer avers that the problems complained of by Ms. Criscione and other family members were "unnecessary and avoidable." [Doc # 42-1, PageID # 2181-82 at ¶ 6]. She further asserts that "it appears Sara and Lauran DiVincenzo are retaliating against Gina for complaining about the poor quality of care at East Park." *Id*. at ¶ 15. Neither statement is admissible testimony from a lay witness, and therefore, should not be set forth in an affidavit.

For example, if a trial were to be conducted regarding the issue of Sara Thurmer and Laura DiVincenzo allegedly retaliating against Ms. Criscione, the jury would apply the facts presented during trial to the elements of retaliation given to them by the judge. It would not be up to the determination of a lay witness, like Ms. Tessmer, whether Sara Thurmer or Laura DiVincenzo harassed Ms. Criscione. Therefore, Paragraphs 6 and 15 of Tricia Tessmer's affidavit must be stricken as they improperly assert a legal conclusion that is inadmissible in evidence.

#### 2) Jason Frederick's Affidavit (¶ 8).

Mr. Frederick avers that, "Given the low quality of care, it is reasonable for families to contact East Park several times a day to ensure their loved ones are getting proper care. **This is not harassment.**" [Doc # 42-2, PageID # 2183-84 at ¶ 8]. Again, this is a legal conclusion that Mr. Frederick cannot make as a lay witness. Whether a family member calling multiple times a

day is harassment would be an issue for the jury to decide. Therefore, Paragraph 8 of Jason Frederick's affidavit must be stricken as they improperly assert a legal conclusion that is inadmissible in evidence.

C. **Any Evidence that Would not be Admissible in Evidence Does Not Comply With Fed.R.Civ.P. 56(c).**

Expert reports cannot be considered as evidence for a motion for summary judgment. "[I]t is uncontestable that expert reports are inadmissible at trial." *Malee v. Anthony & Frank Ditomaso, Inc.*, No. 1:16CV490, 2018 WL 1805402 at *2 (N.D.Ohio Apr. 16, 2018). Inadmissible evidence may not be considered for a motion for summary judgment. Therefore, neither Dr. Shoag's expert report [Doc # 42-3, PageID # 2185-91] nor Dr. Klemperer's declaration [Doc # 42-7, PageID # 2198-2203] is inadmissible in evidence and cannot be considered with Plaintiffs' Brief in Opposition.

Further, Fed.R.Civ.P. 56(c) explicitly lists what materials may be used in a motion for summary judgment. Expert reports are not included in that list. Therefore, Dr. Shoag's expert report [Doc # 42-3, PageID # 2185-91] and Dr. Klemperer's declaration [Doc # 42-7, PageID # 2198-2203] must be stricken as improper evidence under Fed.R.Civ.P. 56(c).

D. **Unsworn Declarations Must Comply with 28 U.S.C. § 1746 to be Considered by the Court in Support of a Motion for Summary Judgment.**

In order for a declaration to be treated as evidence for summary judgment, the declaration must comply with 28 U.S.C. § 1746. *Gonzales v. Brevard*, 531 F.Supp.2d 1019 (W.D. Wisconsin 2019). 28 U.S.C. § 1746 provides that an unsworn declaration may be used to support a matter, like a motion for summary judgment, so long as it is subscribed, in writing, as true under penalty of perjury, and dated, "**in substantially the following form**:"

> If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is **true and correct**. Executed on (date). (Signature)".

28 U.S.C. § 1746(2). (emphasis added). The statute only provides alternative language for "declare." It does not provide alternative language for "true and correct."

Here, Dr. Klemperer's declaration does not comply with the statute. It fails to declare the declaration's contents are true **and correct**. Therefore, Dr. Klemperer's unsworn declaration should be stricken for failing to comply with 28 U.S.C. § 1746.

## IV. CONCLUSION

For the reasons set forth herein, the exhibits attached to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment must be stricken.

Respectfully submitted,

*/s/ Emily R. Yoder*
Emily R. Yoder (0084013)
**HANNA, CAMPBELL & POWELL, LLP**
3737 Embassy Parkway, Suite 100
Akron OH 44333
(330) 670-7612 (T) * (330) 670-7453 (FAX)
eyoder@hcplaw.net

Attorney for Defendants

## CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on January 30, 2026, my office sent, via electronic mail and the Court's electronic filing system, a copy of the foregoing ***Defendants' Motion to Strike Improper Attachments Which Fail to Comply With Federal Civil Rule 56*** to counsel for Plaintiff.

*/s/ Emily R. Yoder*
Emily R. Yoder (0084013)
Attorney for Defendants
East Park Retirement Community, Inc.,
Laura DiVincenzo and Sara Thurmer

<<HCP #1442437-v1>>